APPEALCR

# U.S. District Court
# Eastern District of Virginia – (Alexandria)
# CRIMINAL DOCKET FOR CASE #: <u>1:25–mj–00568–WEF</u>–1

Case title: USA v. Peck, III

Date Filed: 09/30/2025

Date Terminated: 01/07/2026

---

Assigned to: Magistrate Judge
William E. Fitzpatrick

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Robert Thomas Peck, III**<br>*TERMINATED: 01/07/2026* | represented by | **Lauren Rosen**<br>Federal Public Defender<br>Eastern District of Virginia<br>1650 King Street<br>Suite 500<br>Alexandria, VA 22314<br>703–600–0819<br>Email: <u>lauren_rosen@fd.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender* |

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| 18 USC 113(a)(4) Assault by beating, striking, or wounding (1) | Forty Five (45) Days incarceration–to run concurrent w/Count 2; One (1) Year Supervised Release; No Fine Imposed; Mandatory $25.00 S/A |
| 18 USC 113(a)(5) Simple Assault (2) | Forty Five (45) Days incarceration– to run concurrent with Count 1; No Fine Imposed; Mandatory $10.00 S/A |

**<u>Highest Offense Level (Opening)</u>**

Misdemeanor

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

**<u>Highest Offense Level (Terminated)</u>**

None

| **<u>Complaints</u>** | **<u>Disposition</u>** |
|---|---|

18:113(a)(4) Knowingly
Assaulting Another Person by
Striking, Beating, or Wonding
Within the Special Aircraft and
Territorial Jurisdiction of the
United States , 18:113E.M

**Plaintiff**

**USA**                                  represented by  **Allie Marie McKnight**
DOJ–USAO
2100 Jamieson Ave
Alexandria, VA 22314
703–236–3855
Email: allie.mcknight@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**April Nicole Russo**
DOJ–USAO
Sausa Unit
2100 Jamieson Street
Alexandria, VA 22304
703–299–3919
Email: april.russo@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2025 | 1 | COMPLAINT as to Robert Thomas Peck, III. (dzir) (Entered: 09/30/2025) |
| 09/30/2025 | 2 | AFFIDAVIT by USA as to Robert Thomas Peck, III in re 1 Complaint (dzir) (Entered: 09/30/2025) |
| 09/30/2025 | 4 | Redacted Criminal Case Cover Sheet (dzir) (Entered: 09/30/2025) |
| 09/30/2025 | 5 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED – government and defense counsel) as to Robert Thomas Peck, III. (stewart, mariel) (Entered: 09/30/2025) |
| 09/30/2025 | | PC Arrest of Robert Thomas Peck, III (tfitz, ) (Entered: 09/30/2025) |
| 09/30/2025 | 6 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: USA appeared through Allie McKnight. Deft appeared: Whitney Minter–Duty FPD present. Initial Appearance as to Robert Thomas Peck, III held on 9/30/2025. Deft informed of rights, charges and penalties. Court to appoint counsel–FPD. Due Process Order read and signed in open court. USA does not seek detention at this time. Bench Trial set for 11/18/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. Motions due; 11/7/25; Responses due 11/12/25; Replies due 11/14/25. Bond set with conditions to be met; Deft remanded to USMS pending |

| | | |
|---|---|---|
| | | approved 3rd party custodian by PTS.(Tape #FTR.)(tfitz, ) (Entered: 09/30/2025) |
| 09/30/2025 | 7 | CJA 23 Financial Affidavit by Robert Thomas Peck, III (tfitz, ) (Entered: 09/30/2025) |
| 09/30/2025 | 8 | Due Process Protections Act Order as to Robert Thomas Peck, III. Signed by Magistrate Judge William E. Fitzpatrick on 9/30/25. (tfitz, ) (Entered: 09/30/2025) |
| 09/30/2025 | | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Robert Thomas Peck, III. Lauren Rosen for Robert Thomas Peck, III appointed. Ordered by Magistrate Judge William E. Fitzpatrick on 9/30/25. (tfitz, ) (Entered: 09/30/2025) |
| 09/30/2025 | 9 | (Unsigned) ORDER Setting Conditions of Release as to Robert Thomas Peck, III (1) PR BOND (pending an approved 3rd party custodian). Ordered by Magistrate Judge William E. Fitzpatrick on 9/30/25. (tfitz, ) (Entered: 10/01/2025) |
| 10/02/2025 | 10 | MOTION to Modify Conditions of Release by Robert Thomas Peck, III. (Rosen, Lauren) (Entered: 10/02/2025) |
| 10/02/2025 | 11 | Notice of Hearing Date re 10 MOTION to Modify Conditions of Release (Rosen, Lauren) (Entered: 10/02/2025) |
| 10/02/2025 | | Set Deadlines re Motion 10 MOTION to Modify Conditions of Release . Motion Hearing set for 10/3/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (nneb) (Entered: 10/02/2025) |
| 10/02/2025 | 12 | RESPONSE in Opposition by USA as to Robert Thomas Peck, III re 10 MOTION to Modify Conditions of Release (McKnight, Allie) (Entered: 10/02/2025) |
| 10/03/2025 | 13 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Motion Hearing as to Robert Thomas Peck, III held on 10/3/2025 re 10 MOTION to Modify Conditions of Release. US appeared through: Allie McKnight and Tony Roberts. Deft appeared w/counsel Lauren Rosen. Defendant's 10 Motion to Modify Conditions of Release – Granted. 3rd Party Custodian condition stricken from bond and defendant to be released immediately upon processing by USMS.(Court Reporter: FTR.)(tarm) (Entered: 10/03/2025) |
| 10/03/2025 | 14 | ORDER For the reasons stated from the bench and for good cause shown, the Defendant's Motion to Modify Conditions of Release is GRANTED. The Defendant Robert Thomas Peck, III, shall be released from custody immediately upon processing by the United States Marshals Service. Signed by Magistrate Judge William E. Fitzpatrick on 10/3/25. (tarm) (Entered: 10/03/2025) |
| 10/03/2025 | 15 | BOND Setting Conditions of Release as to Robert Thomas Peck, III (1); PR Bond. Signed by Magistrate Judge William E. Fitzpatrick on 10/3/25. (tarm) Modified to edit text on 10/8/2025 (tfitz, ). (Entered: 10/03/2025) |
| 10/03/2025 | | PR Bond Entered as to Robert Thomas Peck, III (tarm) (Entered: 10/03/2025) |
| 10/15/2025 | 16 | MOTION to Modify Conditions of Release *JOINT MOTION* by USA as to Robert Thomas Peck, III. (Attachments: # 1 Proposed Order)(McKnight, Allie) (Entered: 10/15/2025) |
| 10/16/2025 | 17 | ORDER granting 16 MOTION to Modify Conditions of Release *JOINT MOTION* filed by USA as to Robert Thomas Peck, III (see Order for details). Signed by Magistrate Judge William E. Fitzpatrick on 10/15/2025. (swil) (Entered: 10/16/2025) |
| 10/27/2025 | 18 | |

| | | |
|---|---|---|
| | | CRIMINAL INFORMATION as to Robert Thomas Peck, III (1) count(s) 1, 2. (tfitz, ) (Entered: 10/28/2025) |
| 11/07/2025 | 19 | First MOTION to Continue *by consent* by USA as to Robert Thomas Peck, III. (Attachments: # 1 Proposed Order)(McKnight, Allie) (Entered: 11/07/2025) |
| 11/10/2025 | 20 | ORDER granting 19 Motion to Continue to December 16, 2025 as to Robert Thomas Peck, III. See order for further details. Signed by Magistrate Judge William E. Fitzpatrick on 11/10/2025. (lgue, ) (Entered: 11/12/2025) |
| 11/12/2025 | | Bench Trial reset for 12/16/2025at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (lgue, ) (Entered: 11/12/2025) |
| 11/19/2025 | 21 | MOTION for Electronic Device Application by USA as to Robert Thomas Peck, III. (McKnight, Allie) (Main Document 21 replaced on 11/19/2025) (Dest, ). (Main Document 21 replaced to correct pdf fillable form on 11/19/2025) (Dest). (Entered: 11/19/2025) |
| 11/19/2025 | 22 | ORDER granting 21 MOTION for Electronic Device Application as to Robert Thomas Peck, III (1). Signed by Magistrate Judge William E. Fitzpatrick on 11/19/2025. (Dest) (Entered: 11/19/2025) |
| 11/20/2025 | 23 | Subpoenas issued for Bench Trial set for 12/16/2025 at 10:00 a.m. (10 Blank Subpoenas − 20 Sets). (Dest) (Entered: 11/20/2025) |
| 12/01/2025 | 24 | MOTION to Suppress *statements* by Robert Thomas Peck, III. (Rosen, Lauren) (Entered: 12/01/2025) |
| 12/08/2025 | 25 | Second MOTION to Continue *Response and Reply 2 days with CONSENT* by USA as to Robert Thomas Peck, III. (Attachments: # 1 Proposed Order)(McKnight, Allie) (Entered: 12/08/2025) |
| 12/08/2025 | 26 | This matter coming on the government's MOTION TO CONTINUE the motions deadlines for the response and the reply in this case for two days. For the reasons cited therein. the Court grants the Motion. The response motions deadlines currently set for December 8, 2025, are reset to December 10, 2025, and replies due no later than December 12, 2025, with argument to be scheduled if the Court deems it necessary. Signed by Magistrate Judge William E. Fitzpatrick on 12/8/25. (tfitz, ) (Entered: 12/09/2025) |
| 12/10/2025 | 27 | RESPONSE in Opposition by USA as to Robert Thomas Peck, III re 24 MOTION to Suppress *statements* (Attachments: # 1 Supplement)(McKnight, Allie) (Entered: 12/10/2025) |
| 12/11/2025 | 28 | LETTER to the Court received from Ruth Peck as to Robert Thomas Peck, III. (Attachments: # 1 Envelope) (Dest) (Entered: 12/12/2025) |
| 12/12/2025 | 29 | Reply by Robert Thomas Peck, III re 27 Response in Opposition (Rosen, Lauren) (Entered: 12/12/2025) |
| 12/12/2025 | 30 | MOTION to Dismiss *pursuant to the Due Process Protection Act* by Robert Thomas Peck, III. (Rosen, Lauren) (Entered: 12/12/2025) |
| 12/14/2025 | 31 | [STRICKEN PER ECF. NO 33] RESPONSE by USA as to Robert Thomas Peck, III re 28 Letter (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2)(McKnight, Allie) Modified to add text on 12/15/2025 (tfitz, ). (Entered: 12/14/2025) |

| 12/15/2025 | 32 | MOTION to Seal *ECF No. 31, Gov't's Response to Victim's Letter* by USA as to Robert Thomas Peck, III. (Attachments: # 1 Proposed Order)(McKnight, Allie) (Entered: 12/15/2025) |
| 12/15/2025 | 33 | This matter is before the Court on its own initiative. On December 12, 2025, the Court received an uncounseled letter directly from the alleged victim in this case. The Court, finding such direct communication from a potential witness and alleged victim prior to trial to be inappropriate, forwarded the letter to all counsel of record. The government now files a "Response to Victim's Letter" 31 in which it seeks to explain to the Court its decision to prosecute this case. Whether to move forward with a criminal case is generally a decision that rests with the Executive Branch. The government's submission does not address a pending motion and is therefore unnecessary. Accordingly, it is ORDERED that the government's "Response to Victim's Letter" 31 be struck from the docket. It is further ORDERED that the government's motion to seal its response 32 is DENIED as moot. Signed by Magistrate Judge William E. Fitzpatrick on 12/15/25. (tfitz, ) (Entered: 12/15/2025) |
| 12/15/2025 | 34 | RESPONSE in Opposition by USA as to Robert Thomas Peck, III re 30 MOTION to Dismiss *pursuant to the Due Process Protection Act* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(McKnight, Allie) (Entered: 12/15/2025) |
| 12/16/2025 | 35 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: USA appeared through Allie McKnight/Dahoud Askar. Deft appeared w/counsel Lauren Rosen/Shannon Quill. Deft argues Motion to Dismiss 30 ; USA objects–Motion Denied. Motion to Suppress 24 argued by Deft; USA objects; USA calls (4) witnesses; Cross–examination–Motion Denied. Bench Trial as to Robert Thomas Peck, III held on 12/16/2025. Opening statement by USA; Gov't calls witnesses; Cross–examination of witnesses; USA Exhibits admitted: 1A–1E and 2A–2D. Gov't rests. Deft argues oral Rule 29 Motion; USA objects; Motion–Denied. Both Parties present closing arguments. Court Verdict: Guilty as to Count 1 & Count 2. Victim Statement given in open court. Joint request to continue for Sentencing–Granted; Parties agree–No PSR needed. Sentencing set for 1/6/2026 at 11:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. Deft continued on the same conditions of Pretrial Services previously imposed. (Court Reporter Tonia Harris.)(tfitz, ) (Main Document 35 replaced on 12/16/2025) (tfitz, ). Modified to add text on 12/16/2025 (tfitz, ). (Entered: 12/16/2025) |
| 12/31/2025 | 36 | Position on Sentencing by USA as to Robert Thomas Peck, III (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(McKnight, Allie) (Entered: 12/31/2025) |
| 01/02/2026 | 37 | MOTION to Seal *Position on Sentencing and Exhibit* by Robert Thomas Peck, III. (Attachments: # 1 Proposed Order)(Rosen, Lauren) (Entered: 01/02/2026) |
| 01/02/2026 | 38 | Position on Sentencing by Robert Thomas Peck, III (Attachments: # 1 Exhibit Letters)(Rosen, Lauren) (Entered: 01/02/2026) |
| 01/02/2026 | 39 | ORDER granting 37 MOTION to Seal Position on Sentencing *and Exhibit* as to Robert Thomas Peck, III (1). (See Order for further details). Signed by Magistrate Judge William E. Fitzpatrick on 1/2/2026. (Dest) (Entered: 01/05/2026) |
| 01/05/2026 | 40 | Under Seal Position on Sentencing, filed by Robert Thomas Peck, III. (Attachments: # 1 Exhibit 1) (Dest) (Entered: 01/05/2026) |

| 01/06/2026 | 41 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: USA appeared through Allie McKnight. Deft appeared w/counsel Lauren Rosen. Sentencing held on 1/6/2026 for Robert Thomas Peck, III (1). The following Sentence is imposed by the Court: Count 1, Forty Five (45) Days incarceration–to run concurrent w/Count 2; One (1) Year Supervised Release; No Fine Imposed; Mandatory $25.00 S/A. Count 2, Forty Five (45) Days incarceration– to run concurrent with Count 1; No Fine Imposed; Mandatory $10.00 S/A. Deft requests to self surrender in one week; USA does not object–DENIED; Deft remanded. (Tape #FTR.)(tfitz, ) (Entered: 01/06/2026) |
|---|---|---|
| 01/07/2026 | 42 | JUDGMENT as to Robert Thomas Peck, III (1), Count(s) 1, Forty Five (45) Days incarceration–to run concurrent w/Count 2; One (1) Year Supervised Release; No Fine Imposed; Mandatory $25.00 S/A; Count(s) 2, Forty Five (45) Days incarceration– to run concurrent with Count 1; No Fine Imposed; Mandatory $10.00 S/A. Signed by Magistrate Judge William E. Fitzpatrick on 1/7/26. (tfitz, ) (Entered: 01/07/2026) |
| 01/07/2026 | 43 | Sealed Statement of Reasons as to Robert Thomas Peck, III. Signed by Magistrate Judge William E. Fitzpatrick on 1/7/26. (tfitz, ) (Entered: 01/07/2026) |
| 01/15/2026 | 45 | MOTION to Amend/Correct *judgment* by Robert Thomas Peck, III. (Rosen, Lauren) (Entered: 01/15/2026) |
| 01/20/2026 | 46 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Robert Thomas Peck, III (Rosen, Lauren) (Entered: 01/20/2026) |

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | |
| ROBERT THOMAS PECK III, | ) | Case No.   1:25-MJ-568 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___September 29, 2025___ in the county of ___Loudoun___ in the ___Eastern___ District of ___Virginia___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 United States Code, Section 113(a)(4). | Knowingly assaulted another person by striking, beating, or wounding within the special aircraft and territorial jurisdiction of the United States. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SAUSA Allie McKnight / AUSA April Russo

Marc Gastaldo; Special Agent; FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   ___September 30, 2025___

_____
*Judge's signature*

City and state:   ___Alexandria, VA___

Hon. William E. Fitzpatrick, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

ROBERT THOMAS PECK III,

*Defendant*.

Case No. 1:25-MJ-568

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Marc Gastaldo, being duly sworn, depose and state:

1.      I am currently employed as a Special Agent of the Federal Bureau of Investigation ("FBI") and have been since July 5, 2020. Prior to my employment as a Special Agent, I was an Investigative Specialist working covert surveillance investigations for the FBI for five years. I was also a sworn Law Enforcement Officer in the Loudoun County Sheriff's Office for eight years prior to joining the FBI. Throughout my career, I have participated in investigations of, among other things, violent crimes, explosive device detection and identification, espionage, international and domestic terrorism, and other federal and state offenses, including the execution of arrest warrants and search warrants. I am currently assigned to the Washington Field Office of the FBI, where I investigate violations of federal law that occur within the airport environment and on-board aircraft. I am familiar with the relevant federal statutes, including under Titles 18 and 49 of the United States Code, and have conducted numerous investigations into offenses that have occurred upon an aircraft.

2.      This affidavit is submitted in support of a criminal complaint and an arrest warrant for ROBERT THOMAS PECK III ("PECK III"), who, within the special aircraft and territorial jurisdiction of the United States, knowingly assaulted another person by striking, beating, or wounding, in violation of Title 18, United States Code, Section 113(a)(4).

3.      The facts set forth in this statement of probable cause are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit contains information necessary to support probable cause and is not intended to include each and every fact or matter observed by me or known to the United States.

## SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE

4.      On September 29, 2025, at approximately 10:52 A.M., the FBI was contacted by the Metro Washington Airport Authority Police Department ("MWAA") regarding an alleged domestic assault aboard United Airlines Flight 545 flying nonstop from Orlando/MCO to Dulles International Airport/IAD.

5.      According to the VICTIM ("V1"), at approximately ten minutes into the flight, PECK III, sitting in seat 39A, was engaged in a verbal argument with V1, seated in 39C. During this argument, PECK III reached across a toddler, who was seated in 39B, and grabbed the right hand of V1. PECK III forcibly pulled V1's right hand up to his mouth and inserted multiple of V1's fingers into his mouth and bit down with force. V1's right hand sustained injuries to include broken skin and bleeding on the right ring finger, near the fingernail. Your affiant later observed this injury, as depicted below. ("FIG 1").

2



FIG 1

6.      V1 struggled and pulled her hand back to her lap as PECK III continued to quietly verbally berate her. PECK III told her that he should have slit her throat, and that he was going to punch her in the face.

7.      When PECK III observed that V1's fingers were bleeding he told V1 that he was going to bite her again. As PECK III continued to become more agitated, he quickly reached across the toddler in seat 39B and grabbed V1's right arm in the bicep area. PECK III grabbed her arm with such force that two finger sized bruises could clearly be seen on V1's arm after the flight had landed in Dulles International Airport. Your affiant later observed this injury, as depicted below. ("FIG 2").



FIG 2

8. Upon landing at Dulles International Airport, V1 notified a flight attendant about the assault and requested medical assistance for her injuries.

9. MWAA Fire and Rescue responded to the scene and checked V1's injuries and recommended she visit a hospital for x-rays of her hand. V1 declined and advised that she would seek medical attention at her local hospital. During an interview, after being advised of his rights, PECK III admitted to both grabbing V1's arm and biting V1's fingers.

## **CONCLUSION**

10.    Based upon the foregoing, I submit there is probable cause to believe that on or about September 29, 2025, in the Eastern District of Virginia, the defendant, PECK III, on an aircraft in the special aircraft jurisdiction of the United States, namely United Airline Flight 545 flying nonstop from Orlando/MCO to Dulles International Airport/IAD, did commit assault by beating, striking, or wounding, in violation of Title 18 United States Code, Section 113(a)(4).

Respectfully submitted,

Marc Gastaldo
Special Agent
Federal Bureau of Investigations

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on September 30, 2025.

The Honorable William E. Fitzpatrick
United States Magistrate Judge
Alexandria, Virginia

**Criminal Case Cover Sheet**

FILED: REDACTED 14

**U.S. District Court**

**Place of Offense:**

☐ **Under Seal**

**Judge Assigned:** Hon. Fitzpatrick

City: Dulles

Superseding Indictment:

**Criminal No.**

County: Loudoun

Same Defendant:

New Defendant:

Magistrate Judge Case No. 1:25-MJ-568

**Arraignment Date:**

Search Warrant Case No.

R. 20/R. 40 From:

**Defendant Information:**

**Defendant Name:** Robert Thomas Peck III

Alias(es):

☐ Juvenile   FBI No.

**Address:**

Employment:

**Birth Date:** XX/XX/1992   **SSN:**   **Sex:** Male   Race:   Nationality:

**Place of Birth:**   Height:   Weight:   Hair:   Eyes:   Scars/Tattoos:

☐ **Interpreter**   **Language/Dialect:**   Auto Description:

**Location/Status:**

**Arrest Date:** 9/29/2025   ☐ Already in Federal Custody as of:   in:

☐ Already in State Custody   ☐ On Pretrial Release   ☐ Not in Custody

☒ Arrest Warrant Requested   ☐ Fugitive   ☐ Summons Requested

☐ Arrest Warrant Pending   ☐ Detention Sought   ☐ Bond

**Defense Counsel Information:**

**Name:**   ☐ Court Appointed   Counsel Conflicts:

Address:   ☐ Retained

Phone:   ☐ Public Defender   ☐ Federal Public Conflicted Out

**U.S. Attorney Information:**

**AUSA(s):** Allie McKnight   **Phone:** 703-236-XXXX   Bar No.

**Complainant Agency - Address & Phone No. or Person & Title:**

Marc Gastaldo - Special Agent - FBI

| U.S.C. Citations: | Code/Section | Offense Charged | Count(s) | Capital/Felony/Misd./Petty |
|---|---|---|---|---|
| Set 1: | 18 USC § 113(a)(4) | Assault within the special aircraft and territorial jurisdiction of the U.S. | 1 | Misd |
| Set 2: | | | | |

**Date:**   **AUSA Signature:**   *may be continued on reverse*

**District Court Case Number (to be filled by deputy clerk):** 15

| U.S.C. Citations: | Code/Section | Offense Charged | Count(s) | Capital/Felony/Misd./Petty |
|---|---|---|---|---|
| Set 3: | | | | |
| Set 4: | | | | |
| Set 5: | | | | |
| Set 6: | | | | |
| Set 7: | | | | |
| Set 8: | | | | |
| Set 9: | | | | |
| Set 10: | | | | |
| Set 11: | | | | |
| Set 12: | | | | |
| Set 13: | | | | |
| Set 14: | | | | |
| Set 15: | | | | |
| Set 16: | | | | |
| Set 17: | | | | |
| Set 18: | | | | |
| Set 19: | | | | |
| Set 20: | | | | |
| Set 21: | | | | |
| Set 22: | | | | |
| Set 23: | | | | |
| Set 24: | | | | |
| Set 25: | | | | |

Print Form          Reset Form

**Sealed documents are no longer available in CM/ECF or via PACER.**

**Please contact the court directly to request access to the document.**

**Reference for court use only**

https://storage.gtwy.dcn:8443/v1/file/vaed.5376317592.75317228.860082.json

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: April Nicole Russo (april.russo@usdoj.gov, caseview.ecf@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov), Allie Marie McKnight (allie.mcknight@usdoj.gov,
caseview.ecf@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov), Magistrate Judge William E.
Fitzpatrick (cameron_wolfe@vaed.uscourts.gov, diane_wood@vaed.uscourts.gov,
wef_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12807809@vaed.uscourts.gov
Subject:Activity in Case 1:25-mj-00568-WEFVAED USA v. Peck, III Arrest
```
Content−Type: text/html

## U.S. District Court

## Eastern District of Virginia −

## Notice of Electronic Filing

The following transaction was entered on 9/30/2025 at 3:34 PM EDT and filed on 9/30/2025

| | |
|---|---|
| **Case Name:** | USA v. Peck, III |
| **Case Number:** | <u>1:25−mj−00568−WEF</u> |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **PC Arrest of Robert Thomas Peck, III (tfitz, )**

**1:25−mj−00568−WEF−1 Notice has been electronically mailed to:**

Allie Marie McKnight &nbsp &nbsp allie.mcknight@usdoj.gov, CaseView.ECF@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov

April Nicole Russo &nbsp &nbsp april.russo@usdoj.gov, CaseView.ECF@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov

**1:25−mj−00568−WEF−1 Notice has been delivered by other means to:**

| **Date:** 9/30/25 | **Case:** 1:25mj568 | **Time:** 2:06 am-2:27 pm |
|---|---|---|

**Judge:** William E. Fitzpatrick

**Tape/Courtroom:** FTR/500            **Court Reporter:**

**Hearing:** PC Arrest

<div align="center">

**Eastern District of Virginia**

**Alexandria Division**

**United States of America**

**v.**

Robert Peck III

</div>

**Participants**

**USA:** Allie McKnight

**Defense Counsel:** W. Minter-Duty FPD

**Court to appoint counsel: FPD**            **Interpreter:**            ☐Conflict

**Language:**

☐Defendant did not appear            ☐Warrant to be issued upon probable cause statement

☐Government motion to continue hearing – GRANTED

**Advisement**

☒Rule 5            ☒Due Process Protections Act

**Dismissal**

☐Case dismissed with prejudice            ☐Case dismissed without prejudice

**Plea**

☐Oral consent to trial before a USMJ            ☐Plea entered, Court accepts plea

☐Plea of Guilty to Count(s):            ☐Dismissal of Count(s):

☐Sentence:

☒Order setting conditions of release

**Trial**

☒Matter set for bench trial: **11/18/25 @ 10am w/WEF**  ☐Matter set for jury trial

☒Motions due : 11/7/25            ☒Responses due: 11/12/25; Replies due 11/14/25

☐Govt adduced evidence and rests            ☐Trial held and completed

☐Not Guilty of Count(s):            ☐Guilty of Count(s):

☐Dismissal of Count(s):            ☐Deft advised of appeal rights

Sentence:

**Future Proceedings**

Next hearing:

**Notes:** USA does not seek detention. Bond set with conditions to be met; Deft remanded to USMS pending approved 3rd party custodian by PTS.

FILED
IN OPEN COURT

SEP 3 0 2025

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

UNITED STATES OF AMERICA

v.                                                     Criminal No. 1:25-mj-568

Robert Thomas Peck III

**Defendant.**

### ORDER

This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court ORDERS the United States to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Brady v. Maryland* instructs that "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court.

Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same.

It is SO ORDERED.

W E Fitl      /s/
William E. Fitzpatrick
United States Magistrate Judge

Date: 9/30/2025

Alexandria, Virginia

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: April Nicole Russo (april.russo@usdoj.gov, caseview.ecf@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov), Allie Marie McKnight (allie.mcknight@usdoj.gov,
caseview.ecf@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov), Lauren Rosen
(camisha_ellison@fd.org, lauren_rosen@fd.org, maria_ramirez@fd.org, thelma_young@fd.org,
vaeaxecf@fd.org), Magistrate Judge William E. Fitzpatrick
(cameron_wolfe@vaed.uscourts.gov, diane_wood@vaed.uscourts.gov,
wef_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12807905@vaed.uscourts.gov
Subject:Activity in Case 1:25-mj-00568-WEFVAED USA v. Peck, III Order Appointing Public
Defender
Content-Type: text/html
```

## U.S. District Court

## Eastern District of Virginia –

## Notice of Electronic Filing

The following transaction was entered on 9/30/2025 at 3:48 PM EDT and filed on 9/30/2025

| | |
|---|---|
| **Case Name:** | USA v. Peck, III |
| **Case Number:** | 1:25–mj–00568–WEF |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Robert Thomas Peck, III. Lauren Rosen for Robert Thomas Peck, III appointed. Ordered by Magistrate Judge William E. Fitzpatrick on 9/30/25. (tfitz, )**


**1:25–mj–00568–WEF–1 Notice has been electronically mailed to:**

Allie Marie McKnight &nbsp &nbsp allie.mcknight@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

April Nicole Russo &nbsp &nbsp april.russo@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

Lauren Rosen &nbsp &nbsp lauren_rosen@fd.org, Camisha_Ellison@fd.org, maria_ramirez@fd.org, thelma_young@fd.org, vaeaxecf@fd.org

**1:25–mj–00568–WEF–1 Notice has been delivered by other means to:**

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 1:25 - mJ - 568 |
| Robert Thomas Peck III | ) | |
| _Defendant_ | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____ United States District Court _____

_Place_

401 Courthouse Square, Alexandria, VA 22314

on _____ November 18, 2025 at 10:00 A.M. _____

_Date and Time_

If blank, defendant will be notified of next appearance.

(5)    The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 09/24) Additional Conditions of Release

# ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☑ ) (6) The defendant is placed in the custody of:

Person or organization

Address (only if above is an organization) _The Deft. must reside w/ 3rd party cust. and not move w/o prior permission by PTS or the Court._

City and state _____ Tel. No. _____

who agrees (a) to supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____
_____Custodian_____ _____Date_____

( ☑ ) (7) The defendant must:

( ☑ ) (a) submit to supervision by and report for supervision to the __Pretrial Services Office__ .
telephone number _____ , no later than _____ .

( ☐ ) (b) continue or actively seek employment.

( ☐ ) (c) continue or start an education program.

( ☐ ) (d) surrender any passport to: _____

( ☑ ) (e) not obtain a passport or other international travel document.

( ☑ ) (f) abide by the following restrictions on personal association, residence, or travel: __Do not depart the Washington D.C. Metropolitan__ area without prior approval of Pretrial Services or the Court. _Travel is restricted to the Northern Dist. of West Virginia;_

(EDVA included for court purposes only) ( ☑ ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, _All other travel_ including _unless in the presence of counsel._ _to be approved by PTS or the Court._

( ☑ ) (h) get medical or psychiatric treatment: _Deft. shall undergo Mental Health Testing & Treatment as deemed appropriate by PTS._

( ☐ ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

( ☐ ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ☑ ) (k) not possess a firearm, destructive device, or other weapon.

( ☑ ) (l) not use alcohol ( ☐ ) at all ( ☐ ) excessively.

( ☑ ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ☑ ) (n) submit to testing for a prohibited substance, if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, wearing a sweat patch, submitting to a breathalyzer, and/or any other form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of substance screening or testing of prohibited substances.

( ☑ ) (o) participate in a program of inpatient or outpatient substance use treatment, if directed by the pretrial services or supervising officer.

( ☐ ) (p) participate in the remote alcohol testing program using continuous electronic alcohol testing and comply with its requirements as directed, including not consuming alcohol.
( ☐ ) pay all or part of the cost of remote alcohol testing, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer.

( ☐ ) (q) participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

i. Following the location restriction component (check one):

( ☐ ) (1) Curfew. You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or

( ☐ ) (2) Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the pretrial services office or supervising officer; or

( ☐ ) (3) Home Incarceration. You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court; or

( ☐ ) (4) Stand-Alone Monitoring. You have no residential component (curfew, home detention, or home incarceration) restrictions. However, you must comply with the location or travel restrictions as imposed by the court. Note: Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

# ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (i.e., in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

_____
City and State                                          Telephone Number

## Directions to the United States Marshal

( ☐ )   The defendant is ORDERED released after processing.

( ☑ )   The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _September 30, 2025_

_1st_

William E. Fitzpatrick
United States Magistrate Judge

_____
Judicial Officer's Signature

_William Fitzpatrick USMJ_
_____
Printed name and title

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO MODIFY CONDITIONS OF RELEASE

Robert T. Peck, through counsel, respectfully requests that the Court modify the conditions of pretrial release originally ordered by this Court at the initial appearance on September 30, 2025. ECF No. 6. Specifically, Mr. Peck requests that the Court remove the requirement of a third-party custodian.

A criminal complaint filed on September 30, 2025, charges Mr. Peck with a single count of misdemeanor assault. ECF No. 1. That same day, Mr. Peck appeared before the Court for an initial appearance. ECF No. 6. The government did not seek detention, and the Court set conditions of release to include a third-party custodian, a mental health evaluation and treatment, if necessary, a travel restriction, and no contact with the complaining witness, among other conditions. ECF No. 9. However, because the defense does not have a suitable third-party custodian Mr. Peck remains detained.

The defense has identified an individual, other than the complaining witness, who Mr. Peck can reside with. Their contact information has been provided to pretrial

services. However, for several reasons, this individual cannot serve as a third-party custodian. Mr. Peck has strong community ties; he has been a Virginia resident most of his life. ECF No. 5 at 1. Mr. Peck is employed full-time as a refrigeration technician with Nextech and has held this position since June of 2025. *Id*. He is anxious to return to work and fears an elongated incarceration will result in loss of his job. He has no US passport, *id* at 2, and recently purchased a home that he shares with the complaining witness. Given the ban on contact with the complaining witness, he cannot return to the home he owns with his wife. The defense has identified a separate address, but not a third-party custodian.

This is *not* a presumption case. The law favors release. Indeed, the statute's language is mandatory even when conditions are required: The Court "*shall* order the pretrial release of the person." *See* 18 U.S.C. § 3142(a) & (c). Detention is permitted only if the government can prove that "no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other person or the community." *Id*. § 3142(e). Here the government did not seek detention. ECF No. 6. Mr. Peck is not a flight risk, and the defense submits that any concerns that Mr. Peck poses a danger, are mitigated by the conditions requiring no contact with the complaining witness, as well as the requirement that Mr. Peck abstain from substance abuse and attend mental health and substance abuse treatment if necessary.

To that end the defense requests that the Court modify the conditions of release to remove the requirement of a third-party custodian, or in the alternative schedule this case for a detention hearing on Friday October 3, 2025, at 10 a.m.

Dated: October 2, 2025.

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>NOTICE OF HEARING</u>

Please take notice that Robert Peck's Motion to Modify Conditions of Release (ECF No. 10) shall be heard on Friday October 3, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Eastern District of Virginia, 401 Courthouse Square, Alexandria, VA 22314.

Dated: October 2, 2025.

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Allie Marie McKnight (allie.mcknight@usdoj.gov,
caseview.ecf@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov), Lauren Rosen
(camisha_ellison@fd.org, lauren_rosen@fd.org, maria_ramirez@fd.org, thelma_young@fd.org,
vaeaxecf@fd.org), April Nicole Russo (april.russo@usdoj.gov, caseview.ecf@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov), Magistrate Judge William E. Fitzpatrick
(cameron_wolfe@vaed.uscourts.gov, diane_wood@vaed.uscourts.gov,
wef_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12815380@vaed.uscourts.gov
Subject:Activity in Case 1:25-mj-00568-WEFVAED USA v. Peck, III Set/Reset Motion and R&R
Deadlines/Hearings
Content-Type: text/html
```

## U.S. District Court

## Eastern District of Virginia –

## Notice of Electronic Filing

The following transaction was entered on 10/2/2025 at 2:47 PM EDT and filed on 10/2/2025

| | |
|---|---|
| **Case Name:** | USA v. Peck, III |
| **Case Number:** | <u>1:25–mj–00568–WEF</u> |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set Deadlines re Motion [10] MOTION to Modify Conditions of Release . Motion Hearing set for 10/3/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (nneb)**

**1:25–mj–00568–WEF–1 Notice has been electronically mailed to:**

Allie Marie McKnight &nbsp &nbsp allie.mcknight@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

April Nicole Russo &nbsp &nbsp april.russo@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

Lauren Rosen &nbsp &nbsp lauren_rosen@fd.org, Camisha_Ellison@fd.org, maria_ramirez@fd.org, thelma_young@fd.org, vaeaxecf@fd.org

**1:25–mj–00568–WEF–1 Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT THOMAS PECK III,<br><br>*Defendant*. | Case No. 1:25-MJ-568<br><br>Government's Opposition to Motion to<br>Modify Conditions of Release |

**RESPONSE TO MOTION**
**Government's Opposition to Defendant's Motion to Modify Conditions of Release**

The United State of America respectfully moves the Court to deny the Defendant's

October 2, 2025, motion to modify conditions of release. In that motion, the Defendant requests

removal of the requirement of a third-party custodian as a condition of release. ECF No. 10. The

government maintains that the condition is crucial in ensuring the safety of the community,

specifically the victim, and to ensure the Defendant's appearance at future proceedings.[1]

I.      **The Defense has not offered a suitable means of mitigating the risk posed to the**

        **community.**

The Defendant presents a danger to the community due to the nature of the charged

offense and a pattern of similar criminal conduct. ECF No. 5 at 4. In the complaint, Special

Agent Gastaldo describes the facts leading to his determination that there was probable cause

that the Defendant committed assault by beating striking, or wounding, in violation of Title 18

---

[1] Alternatively, the government believes these concerns could be mitigated by the Defendant wearing an electronic monitoring device. The government has spoken to Defense about this option and the Defense plans to raise it with the Defendant in advance of the 10:00am hearing on October 3, 2025.

United States Code, Section 113(a)(4). ECF No. 2 at 2. Agent Gastaldo describes conversations he had with both the victim and the Defendant himself. The victim told Agent Gastaldo that the Defendant forcibly grabbed the victim and bit her. *Id*. The victim further described the verbal berating done by the Defendant following the assault when he threatened her with additional physical attack, including threats to bite her again and punch her in the face. *Id*. at 3. Agent Gastaldo observed and photographed injuries on the victim, including bruising on the victim's arm and broken skin and bleeding on her fingers. *Id*. After advising the Defendant of his rights, Agent Gastaldo reported that the Defendant admitted to both grabbing the victim's arm and biting her fingers.

The Defendant has a history of being arrested and convicted for violent crimes. In 2020, he was arrested for a felony count of strangling another causing wounding or injury, though he was later acquitted. ECF No. 5 at 4. Then, in 2021, he was arrested and charged with one misdemeanor count of assault in the second degree and one felony count of assault in the first degree. *Id*. The felony assault was dropped "Nolle Prossed," but the Defendant was convicted of the misdemeanor assault charge. *Id*. He was sentenced to 5 years in custody, with 4 years and 328 days suspended, as well as 2 years of supervised probation. *Id*.

Given the nature of the charged offense, and the prior history of similarly violent offenses, it is essential that the Defendant only be released if conditions are met to ensure safety to the community. The Defense argues that the existing condition requiring a third-party custodian should be removed because it cannot be met. Absent sufficient mitigating measures, the government finds this unacceptable in assuring safety to the victim and to the community in this case.

The Defense argues that "any concerns that Mr. Peck poses a danger, are mitigated by the conditions requiring no contact with the complaining witness, as well as the requirement that Mr. Peck abstain from substance abuse and attend mental health and substance abuse treatment if necessary." ECF No. 10 at 2. However, the Defendant's track record demonstrates that an outside party is needed to assure compliance with these conditions. Without a third-party custodian who has committed to communicating to a probation officer about the location of the Defendant's dwelling, there is little to guarantee that the Defendant won't simply return to the home of the victim or otherwise harm her or someone else.

## II.    The Defense has not offered a suitable means of mitigating the risk that the Defendant will flee.

The Defense states that Mr. Peck has strong community ties because he has been a Virginia resident most of his life, is anxious to return to his job, and owns a home. These facts are not sufficient to outweigh the risk that the Defendant will flee prior to trial.

First, the Defense's failure to locate a suitable third-party custodian casts doubt on the strength of his community ties. In the three days since this Court ordered the conditions of release at the Defendant's initial appearance, the Defense has located one person willing to serve in the role as third party custodian. However, due to prior convictions, including check fraud and driving under the influence, pre-trial services deemed the person unsuitable to serve as a custodian. Instead, Defense suggests that this Court waive the third-party custodian requirement under the Defendant's assurances that he will live with the person identified to pre-trial services.

However, unlike the responsibilities of a third-party custodian, this person would have no obligation to communicate with the Defendant's probation officer, report if the Defendant moves out of the person's home, or otherwise report behavior violative of the conditions of his release.

3

Indeed, given the person's history, the Defendant's conditions of release may be further challenged by living with this individual. Suitability aside, without a third party-custodian agreement, there is simply no assurance that this person serves as anything more than an address to provide to pre-trial services. Should the relationship sour and the Defendant leave, the person is under no responsibility to notify pre-trial services or this Court.

Second, the Defendant has a history of disregarding requirements of the courts. On two occasions before two different courts in 2013, the Defendant was found both guilty of contempt of court and guilty of failure to appear. ECF No. 5 at 3. More recently, in 2021, a Virginia court had to extradite him as a fugitive from justice so that he could stand trial in Maryland. ECF No. 5 at 4.

These three incidents indicate a pattern of behavior by the defendant to disregard the orders of the courts to his own detriment. The Defense offers little assurance that the Defendant would respond to summons from this Court. Identification of a suitable third-party custodian would ensure that this Court is informed of any major movements of the Defendant and ensure that his trial can be completed in a timely fashion.

## CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the requirement that the Defendant identify a third-party custodian remain as a condition of his release.

Respectfully submitted,

Lindsey H. Halligan
United States Attorney

By:    /s/ Allie McKnight
Allie McKnight
Special Assistant United States Attorney
April Russo
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3893
Email: Ariana.lazzaroni2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2025, I caused a copy of the foregoing memorandum

to befiled with the Clerk of Court using the CM/ECF system, which will automatically generate a

Notice of Electronic Filing (NEF) to all counsel of record.

<u>/s/ Allie McKnight</u>

Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: allie.mcknight@usdoj.gov

Date: <u>10/03/2025</u>     Judge: <u>Fitzpatrick</u>         Reporter: <u>FTR</u>

Time: <u>10:10</u> to <u>10:15</u>

UNITED STATES of AMERICA
           Vs.

<u>Robert Thomas Peck</u>       <u>1:25-mj-568</u>

Defendant's Name           Case Number

<u>Lauren Rosen</u>         <u>Allie McKnight, Tony Roberts</u>

Counsel for Defendant         Counsel for Government

Matter called for:

(✓) Motions            ( ) Setting Trial Date     ( ) Change of Plea Hrg.     ( ) Rule 35

( ) Arraignment         ( ) Appeal from USMC     ( ) Sentencing          ( ) Rule 20 & Plea

( ) Probation/Supervised Release Hrg.        ( ) Pre-Indictment Plea     ( ) Other: _____

Defendant appeared:     (✓) in person          ( ) failed to appear

                         (✓) with Counsel       ( ) without counsel        ( ) through counsel

Defendant's [10] Motion to Modify Conditions of Release – Granted. 3rd Party Custodian Condition stricken from bond and defendant to be released immediately upon processing by USMS.

Bond Set at: $_____    ( ) Unsecured      ( ) Surety          ( ) Personal Recognizance

( ) Release Order Entered   (✓) Deft. Remanded    ( ) Deft. Released on Bond    ( ) Deft. Continued on Bond

Defendant is: (✓) In Custody    ( ) Summons Issued    ( ) On Bond    ( ) Warrant Issued    ( ) 1st appearance

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case Number   1:25-MJ-568** |
| | ) | **William E. Fitzpatrick** |
| ROBERT THOMAS PECK, III | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

## ORDER

This matter is before the Court on the Defendant's Motion to Modify Conditions of Release (Dkt. 10) to allow the Defendant's release from custody without a third-party custodian. The Defendant appeared in person and was represented by his attorney Lauren Rosen, Assistant Federal Defender. The Government was represented by Allie McKnight, Assistant United States Attorney.   The Court reviewed the Defendant's Motion as well as the Government's Opposition and heard argument of counsel.

For the reasons stated from the bench and for good cause shown, the Defendant's Motion to Modify Conditions of Release is **GRANTED**. The Defendant Robert Thomas Peck, III, shall be released from custody immediately upon processing by the United States Marshal's Service.

IT IS SO ORDERED.

October 3, 2025
Alexandria, Virginia

William E. Fitzpatrick
United States Magistrate Judge

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| Robert Thomas Peck III | ) |
| *Defendant* | ) |

Case No. 1:25 - mJ - 568

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____ United States District Court _____

*Place*

_____ 401 Courthouse Square, Alexandria, VA 22314 _____

on _____ November 18, 2025 at 10:00 A.M. _____

*Date and Time*

If blank, defendant will be notified of next appearance.

(5)    The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 09/24) Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

*Condition Removed Per 10/3/25 order by Judge Fitzpatrick*

( ☒ ) (6) The defendant is placed in the custody of:

Person or organization

Address (*only if above is an organization*) *The Deft. must reside w/3rd party cust. and not move w/o prior permission by PTS or the Court.*

City and state _____ Tel. No. _____

who agrees (a) to supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____
Custodian          Date

( ☑ ) (7) The defendant must:

( ☒ ) (a) submit to supervision by and report for supervision to the **Pretrial Services Office** _____.
telephone number _____, no later than _____.

( ☐ ) (b) continue or actively seek employment.

( ☐ ) (c) continue or start an education program.

( ☐ ) (d) surrender any passport to: _____

( ☒ ) (e) not obtain a passport or other international travel document.

( ☒ ) (f) abide by the following restrictions on personal association, residence, or travel: **Do not depart the Washington D.C. Metropolitan** *(EDVA includes)* area without prior approval of Pretrial Services or the Court. *Travel is restricted to the Northern Dist. of West Virginia for court purposes only*

( ☒ ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: *unless in the presence of counsel.* *All other travel to be approved by PTS or the Court.*

( ☒ ) (h) get medical or psychiatric treatment: *Deft. shall undergo Mental Health Testing ＆ Treatment as deemed appropriate by PTS.*

( ☐ ) (i) return to custody each _____ at \_\_\_\_\_ o'clock after being released at \_\_\_\_\_ o'clock for employment, schooling, or the following purposes: _____

( ☐ ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ☒ ) (k) not possess a firearm, destructive device, or other weapon.

( ☐ ) (l) not use alcohol ( ☐ ) at all ( ☐ ) excessively.

( ☒ ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ☒ ) (n) submit to testing for a prohibited substance, if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, wearing a sweat patch, submitting to a breathalyzer, and/or any other form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of substance screening or testing of prohibited substances.

( ☒ ) (o) participate in a program of inpatient or outpatient substance use treatment, if directed by the pretrial services office or supervising officer.

( ☐ ) (p) participate in the remote alcohol testing program using continuous electronic alcohol testing and comply with its requirements as directed, including not consuming alcohol.
( ☐ ) pay all or part of the cost of remote alcohol testing, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer.

( ☐ ) (q) participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

i. Following the location restriction component (**check one**):

( ☐ ) (1) **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____, or ( ☐ ) as directed by the pretrial services office or supervising officer; or

( ☐ ) (2) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the pretrial services office or supervising officer; or

( ☐ ) (3) **Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court; or

( ☐ ) (4) **Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restrictions. However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

AO 199C (Rev. 09/08) Advice of Penalties

Page 3 of 3 Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (i.e., in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

X _____
_Defendant's Signature_

X Winchester Virginia         X 540-664-6280
_City and State_                _Telephone Number_

### Directions to the United States Marshal

( ☐ )  The defendant is ORDERED released after processing.

( ☑ )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _September 30, 2025_          /s/
                                    William E. Fitzpatrick
                                    United States Magistrate Judge
                                    _Judicial Officer's Signature_

                                    William Fitzpatrick USMJ
                                    _Printed name and title_

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Allie Marie McKnight (allie.mcknight@usdoj.gov,
caseview.ecf@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov), Lauren Rosen
(camisha_ellison@fd.org, lauren_rosen@fd.org, maria_ramirez@fd.org, thelma_young@fd.org,
vaeaxecf@fd.org), April Nicole Russo (april.russo@usdoj.gov, caseview.ecf@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov), Magistrate Judge William E. Fitzpatrick
(cameron_wolfe@vaed.uscourts.gov, diane_wood@vaed.uscourts.gov,
wef_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12818759@vaed.uscourts.gov
Subject:Activity in Case 1:25-mj-00568-WEFVAED USA v. Peck, III Bond
```
Content−Type: text/html

## U.S. District Court

## Eastern District of Virginia −

## Notice of Electronic Filing

The following transaction was entered on 10/3/2025 at 2:49 PM EDT and filed on 10/3/2025

**Case Name:**        USA v. Peck, III
**Case Number:**     1:25−mj−00568−WEF
**Filer:**
**Document Number:** No document attached
**Docket Text:**
 PR Bond Entered as to Robert Thomas Peck, III (tarm)

**1:25−mj−00568−WEF−1 Notice has been electronically mailed to:**

Allie Marie McKnight &nbsp &nbsp allie.mcknight@usdoj.gov, CaseView.ECF@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov

April Nicole Russo &nbsp &nbsp april.russo@usdoj.gov, CaseView.ECF@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov

Lauren Rosen &nbsp &nbsp lauren_rosen@fd.org, Camisha_Ellison@fd.org, maria_ramirez@fd.org,
thelma_young@fd.org, vaeaxecf@fd.org

**1:25−mj−00568−WEF−1 Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-MJ-568 |
| v. | Joint Motion to Modify Conditions of Release |
| ROBERT THOMAS PECK III, | |
| *Defendant*. | |

**Parties' Joint Motion to Modify Conditions of Release**

The parties respectfully move the Court to modify its October 3, 2025, order issuing conditions of release, specifically as it relates to contact between the defendant and the victim as well as restrictions on the defendant's area of residence and travel.

**I.      Addition of a Third-Party Contact**

A condition of release states that the defendant must "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, unless in the presence of counsel." ECF No. 15. The parties have determined that the victim and defendant require contact due to shared obligations, such as financial obligations, which cannot be avoided prior to trial. For this reason, the parties have identified a third-party contact, the victim's sister, who can supervise non-physical contact between the parties, such as phone calls, texts, or emails, for such purposes. Both parties agree that this person would be acceptable for this purpose. To that end, the parties move to amend condition 7(g) to allow contact between the defendant and the victim via phone, text, or email as long as the identified third-party is present on the communication.

## II.    Addition of Child Custody Exchange

Further, the victim and defendant share a child together and have determined that they will need to see each other for the purpose of exchanging custody of the child. They have not been able to identify someone else who could assist. For this reason, the parties have agreed that exchanging custody of the child in the parking lot of the local police department, either at the Winchester, Virginia, or Martinsburg, West Virginia, Police Departments, will best safeguard each party's interests while awaiting trial.

## III.    Modification of Residence and Travel

The defendant is living in Winchester, Virginia, which is located in the Western District of Virginia and the victim lives in Martinsburg, West Virginia, which is in the Northern District of West Virginia. As discussed in the prior section, the defendant would need to travel to the Northern District of West Virginia for child custody exchanges at the Martinsburg, West Virginia, Police Department. To that end, the parties request that condition 7(f) be modified to reflect the defendant's current residence within the Western District of Virginia and allow limited travel to the Northern District of West Virginia to exchange custody of the child.

## CONCLUSION

For the foregoing reasons, the parties respectfully recommend that the Court modify the condition of release that the defendant avoid contact with the victim unless in the presence of counsel, by expanding the exception to also include non-physical contact supervised by the victim's sister and procedures for exchanging custody of their child. Further, the parties seek to amend condition 7(f) to reflect the defendant's current residence and to facilitate custody exchange.

Respectfully submitted,

Lyndsey Halligan
United States Attorney

_____/s/_____
Lauren E.S. Rosen
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Email: Lauren_Rosen@fd.org

By:  _____/s/_____
Allie McKnight
Special Assistant United States Attorney
April Russo
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2025, I caused a copy of the foregoing memorandum

to befiled with the Clerk of Court using the CM/ECF system, which will automatically generate a

Notice of Electronic Filing (NEF) to all counsel of record.

        _____/s/_____

Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

ROBERT THOMAS PECK III,

*Defendant*.

Case No. 1:25-MJ-568

## ORDER

The joint motion of the United States of America and defendant to modify the conditions of release is hereby granted. Accordingly, it is ordered that 7(g) of the Order setting conditions of release be modified to read:

"(g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, unless in the presence of counsel or via electronic communication, under the supervision of Mrs. Peck's sister. The defendant and Mrs. Peck may meet for the limited purpose of exchanging custody of their shared child at either the Winchester, Virginia, or Martinsburg, West Virginia, Police Departments, at times arranged through Mrs. Peck's sister."

It is further ordered that condition 7(f) of the Order setting conditions of release be modified to read:

"(f) abide by the following restrictions on personal association, residence, or travel: Do not depart the Western District of Virginia, Eastern District of Virginia, or the Washington D.C. Metropolitan area without prior approval of Pretrial Services or the

Court. The Defendant may only travel to the Northern District of West Virginia for the purpose of exchanging custody of the defendant and Mrs. Peck's shared child at the Martinsburg, West Virginia, Police Department. All other travel is to be approved by PTS or the Court."

It is SO ORDERED.

_____
William E. Fitzpatrick
United States Magistrate Judge

Date: _____
Alexandria, Virginia

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-MJ-568 |
| v. | |
| ROBERT THOMAS PECK III, | |
| *Defendant.* | |

## ORDER

The joint motion of the United States of America and defendant to modify the conditions of release is hereby granted. Accordingly, it is ordered that 7(g) of the Order setting conditions of release be modified to read:

"(g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, unless in the presence of counsel or via electronic communication, under the supervision of Mrs. Peck's sister. The defendant and Mrs. Peck may meet for the limited purpose of exchanging custody of their shared child at either the Winchester, Virginia, or Martinsburg, West Virginia, Police Departments, at times arranged through Mrs. Peck's sister."

It is further ordered that condition 7(f) of the Order setting conditions of release be modified to read:

"(f) abide by the following restrictions on personal association, residence, or travel: Do not depart the Western District of Virginia, Eastern District of Virginia, or the Washington D.C. Metropolitan area without prior approval of Pretrial Services or the

Court. The Defendant may only travel to the Northern District of West Virginia for the purpose of exchanging custody of the defendant and Mrs. Peck's shared child at the Martinsburg, West Virginia, Police Department. All other travel is to be approved by PTS or the Court."

It is SO ORDERED.

William E. Fitzpatrick
United States Magistrate Judge

Date: 10/15/2025
Alexandria, Virginia

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



|  |  |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-MJ-568 |
| | Count 1: 18 U.S.C. § 113(a)(4) and 49 U.S.C. § 46506(1) (Assault by Beating, Striking, or Wounding within the Special Aircraft Jurisdiction of the United States) |
| v. | |
| ROBERT THOMAS PECK III, | Count 2: 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506(1) (Simple Assault within the Special Aircraft Jurisdiction of the United States) |
| *Defendant*. | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
(Assault by Beating, Striking, or Wounding)

On or about September 29, 2025, while aboard United Airline Flight #545, an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia, the defendant, ROBERT THOMAS PECK III, did assault V1 by striking, beating, and wounding by grabbing her hand and biting her fingers.

(In violation of Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506(1).)

## COUNT TWO
(Simple Assault)

On or about September 29, 2025, while aboard United Airline Flight #545, an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia, the defendant, ROBERT THOMAS PECK III, did assault V1 by grabbing V1's arm.

(In violation of Title 18, United States Code, Section 113(a)(5) and Title 49, United States Code, Section 46506(1).)

Respectfully submitted,

Lindsey Halligan
United States Attorney

By: _____/s/ Allie McKnight_____
Allie McKnight
Special Assistant United States Attorney
April Russo
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: 703-236-3855
Fax: 703-299-3980
Email: Allie.McKnight@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 27, 2025, I filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will serve all counsel of record.

        /s/ Allie McKnight

Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: 703-236-3855
Fax: 703-299-3980
Email: Allie.McKnight@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant*. | |

## CONSENT MOTION TO CONTINUE TRIAL AND BRIEFING SCHEDULE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America, by and through undersigned counsel, with the consent of the defendant through his counsel, respectfully moves the Court for a continuance of the trial date currently set for November 18, 2025, to December 16, 2025, and all motions deadlines associated with this case accordingly. Additionally, the parties request a finding of excludable delay between November 18, 2025 and December 16, 2025. In support thereof, the government states as follows:

1. Mr. Peck was arrested on September 29, 2025, following an allegation of domestic violence against the victim ("V1") while aboard an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia.

2. An information was filed on October 27, 2025, charging Mr. Peck with two counts of assault occurring on or about September 29, 2025, while aboard United Airline Flight #545, an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia. Count one charges Mr. Peck with assault by

1

striking, beating, and wounding by grabbing V1's hand and biting her fingers, in violation of Title 18, United State Code, Section 113(a)(4) and Title 49, United States Code, Section 46506(1). Count two charges Mr. Peck with assault by grabbing V1's arm, in violation of Title 18, United State Code, Section 113(a)(5) and Title 49, United States Code, Section 46506(1).

3.    The government isrequesting additional time to assess whether a pre-trial disposition is possible and appropriate in this matter and for the defense to review the discovery, that was provided on October 30, 2025, and adequately prepare for trial. This is the first continuance requested following Mr. Peck's initial appearance and this additional time will provide counsel with the necessary time to assess this matter and prepare adequately before the proposed trial date.

4.    Therefore, the government that the deadline for motions, responses, and replies be reset to December 1 for motions, with responses due December 8, and replies due December 10 and any argument to be scheduled at the discretion of the Court.

5.    The United States has advised counsel for the defendant of the filing of this motion, and the defendant has consented to its filing and the proposed new schedule.

WHEREFORE, the United States respectfully request that the Court grant its motion. A proposed order is attached to this Motion.

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date:   November 7, 2025              By:   _____/s/_____
                                            Allie McKnight
                                            Special Assistant United States Attorney
                                            April Russo
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            Eastern District of Virginia
                                            2100 Jamieson Avenue
                                            Alexandria, VA 22314
                                            Allie.McKnight@usdoj.gov
                                            (O) (703) 236-3855
                                            (F) (703) 299-3980

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing to all

counsel of record.

<div style="text-align:center">

_____
/s/
Allie McKnight
Special Assistant United States Attorney

</div>

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant*. | |

## **PROPOSED ORDER**

This matter coming on the parties' CONSENT MOTION TO CONTINUE the first trial date currently set for November 18, 2025, and for the reasons cited therein, the Court grants the Consent Motion.

The Court further finds that the period of delay from November 18, 2025, through and including December 16, 2025, shall be excludable under 18 U.S.C. § 3161. 18 U.S.C. § 3161(h)(7)(A). The Court concludes that the ends of justice served by continuing the case at the parties' request so that the defendant may adequately review discovery, consider pretrial disposition, and prepare for trial, outweigh the best interest of the public and the defendant in a speedy trial. *Id*.

The date and time for the defendant's Trial presently set for November 18, 2025, is hereby VACATED and ADVANCED to December 16, 2025.   The motions deadlines currently set for November 7, 2025, are reset to December 1, 2025, with responses due no later than December 8, 2025, and replies due no later than December 10, 2025, with argument to be scheduled if the Court deems it necessary.

**IT IS SO ORDERED** this ___ day of November, 2025.


_____
HON. William E. Fitzpatrick
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant.* | |

## ORDER

This matter comes before the Court on the parties' CONSENT MOTION TO CONTINUE the first trial date currently set for November 18, 2025, and for the reasons cited therein, the Court grants the Consent Motion.

The Court finds that the period of delay from November 18, 2025, through and including December 16, 2025, shall be excludable under 18 U.S.C. § 3161. 18 U.S.C. § 3161(h)(7)(A). The Court concludes that the ends of justice served by continuing the case at the parties' request so that the defendant may adequately review discovery, consider pretrial disposition, and prepare for trial, outweigh the best interest of the public and the defendant in a speedy trial. *Id.*

The date and time for the defendant's trial presently set for November 18, 2025, is hereby CONTINUED to December 16, 2025. The motions deadlines currently set for November 7, 2025 are continued to December 1, 2025, with responses due no later than December 8, 2025, and replies due no later than December 10, 2025, with argument to be scheduled if the Court deems it necessary.

**IT IS SO ORDERED.**

_____

Honorable William E. Fitzpatrick
UNITED STATES MAGISTRATE JUDGE

November ___, 2025

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Allie Marie McKnight (allie.mcknight@usdoj.gov,
caseview.ecf@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov), Lauren Rosen
(camisha_ellison@fd.org, lauren_rosen@fd.org, maria_ramirez@fd.org, thelma_young@fd.org,
vaeaxecf@fd.org), April Nicole Russo (april.russo@usdoj.gov, caseview.ecf@usdoj.gov,
usavae.alx.ecf.sausa@usdoj.gov), Magistrate Judge William E. Fitzpatrick
(cameron_wolfe@vaed.uscourts.gov, diane_wood@vaed.uscourts.gov,
wef_chambers@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12895030@vaed.uscourts.gov
Subject:Activity in Case 1:25-mj-00568-WEFVAED USA v. Peck, III Set/Reset Hearings
Content-Type: text/html
```

## U.S. District Court

## Eastern District of Virginia –

## Notice of Electronic Filing

The following transaction was entered on 11/12/2025 at 7:36 AM EST and filed on 11/12/2025

| | |
|---|---|
| **Case Name:** | USA v. Peck, III |
| **Case Number:** | 1:25–mj–00568–WEF |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Bench Trial reset for 12/16/2025at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (Igue, )**


**1:25–mj–00568–WEF–1 Notice has been electronically mailed to:**

Allie Marie McKnight &nbsp &nbsp allie.mcknight@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

April Nicole Russo &nbsp &nbsp april.russo@usdoj.gov, CaseView.ECF@usdoj.gov, usavae.alx.ecf.sausa@usdoj.gov

Lauren Rosen &nbsp &nbsp lauren_rosen@fd.org, Camisha_Ellison@fd.org, maria_ramirez@fd.org, thelma_young@fd.org, vaeaxecf@fd.org

**1:25–mj–00568–WEF–1 Notice has been delivered by other means to:**

## Request for Authorization to bring electronic device(s) into the United States District Court for the Eastern District of Virginia

The following named person(s) is authorized to bring the below described electronic device(s) into the United States District Court for the Eastern District of Virginia on the date(s) specified:

Authorized Person(s):     SAUSA Allie McKnight

                          SAUSA Dahoud Askar

                          LAS Luke Knightstep

Electronic Device(s):     PARA Sean Akey

                          Laptop


Purpose and Location
Of Use:                   Bench Trial, Courtroom 500

Case No.:                 1:25-MJ-568

Date(s) Authorized:       12/16/2025

IT Clearance Waived:      _____(Yes)        _____(No)

                          APPROVED BY:


Date:_____    _____
                            United States District/Magistrate/Bankruptcy Judge


**A copy of this signed authorization must be presented upon entering the courthouse.**


IT Clearance:           _____    _____
                        IT Staff Member                        Date(s)


**IT clearance must be completed, unless waived, before court appearance.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Request to Use the Court's Evidence Presentation System

I hereby request the use of the court's evidence presentation system and permission to bring a laptop computer into the courthouse to utilize with the system. I acknowledge that I have read, understand, and agree to follow all of the guidance available to me on the court's website regarding usage of the presentation system and my computer, as well as those items specifically addressed below:

- If necessary, I will schedule an orientation to ensure that I have all equipment necessary and understand how the system operates. I must obtain written authorization from chambers to bring a laptop computer to the scheduled orientation. Orientation provides instruction on use of the court's evidence presentation system and an opportunity for testing my laptop computer connections. Practicing presentations and preparing witnesses are not authorized without court approval.

- The court does not provide any equipment for in-court presentations such as scanned documents, animations, graphics, audio and video files from VHS, CD, DVD, Blu-ray, or external drives like a USB thumb drive. All files must be presented from my laptop computer.

- I am responsible for operating the evidence presentation system, and court employees are not authorized to operate my laptop computer. My staff, litigation support contractors, and I are not authorized to remove, relocate, or reconfigure any of the court's evidence presentation system equipment.

- Wi-Fi or any other wireless access to data, webcams, and any recording capabilities on my laptop computer must be disabled while in the courthouse. Visible evidence, such as red tape, may be placed over the webcam to prevent video recording.

- Internet service is not provided by the court in the courtroom.

I further agree, as directed by the court, to make any approved system available for, and assist with, inspection by court staff.

ALLIE MCKNIGHT Digitally signed by ALLIE MCKNIGHT
Date: 2025.11.18 17:48:37 -05'00'

11/18/2025

_____          _____
(Signature)                                                                  (Date)

Allie McKnight                                                      DC Bar 1779482

_____          _____
(Typed or Printed Name)                                         (VA Bar Number)

## Request for Authorization to bring electronic device(s) into the United States District Court for the Eastern District of Virginia

The following named person(s) is authorized to bring the below described electronic device(s) into the United States District Court for the Eastern District of Virginia on the date(s) specified:

| | |
|---|---|
| Authorized Person(s): | SAUSA Allie McKnight |
| | SAUSA Dahoud Askar |
| | LAS Luke Knightstep |
| Electronic Device(s): | PARA Sean Akey |
| | Laptop |
| | |
| Purpose and Location Of Use: | Bench Trial, Courtroom 500 |
| Case No.: | 1:25-MJ-568 |
| Date(s) Authorized: | 12/16/2025 |
| IT Clearance Waived: | X (Yes) _____(No) |

APPROVED BY:

/c/ WEF

Date: 11/19/25

_____
United States District/Magistrate/Bankruptcy Judge

**A copy of this signed authorization must be presented upon entering the courthouse.**

IT Clearance: _____ _____
                     IT Staff Member            Date(s)

**IT clearance must be completed, unless waived, before court appearance.**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2025 NOV 20 P 2:11

UNITED STATES OF AMERICA

v.

ROBERT THOMAS PECK, III

Crim No. 1:25-MJ-568

## PRAECIPE FOR SUBPOENA

It is respectfully requested that the Clerk of said Court issue subpoenas as indicated below for appearance before said Court at Alexandria, Virginia in United States District Court at 10:00 o'clock a.m., on the 16th day of December 2025, then and there to testify on behalf of the United States:

10 Blank Subpoenas (20 Sets)

This 20th day of November 2025.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By:     /s/ Allie McKnight
        Allie McKnight
        Special Assistant United States Attorney

AO 89 (Rev. 01/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

*Issued by StW*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, III | ) |
| *Defendant* | ) |

2025 NOV 20 P 2:11

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | U.S. District Court<br>401 Courthouse Square<br>Alexandria, VA 22314 | Courtroom No.: | 500 |
|---|---|---|---|
| | | Date and Time: | December 16, 2025 10:00 am |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

Date: 11/20/25

*CLERK OF COURT* **COPY**

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____United States_____
_____ , who requests this subpoena, are:

Allie McKnight, SAUSA
Office of the United States Attorney
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

AO 89 (Rev. 01/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.  1:25-MJ-568

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏  I left the subpoena at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the subpoena on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because _____ ; or

❏  Other *(specify):*


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .


I declare under penalty of perjury that this information is true.


Date: _____                        _____
                                                                    *Server's signature*


                                                                    _____
                                                                    *Printed name and title*


                                                                    _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO SUPRESS STATEMENTS

Robert T. Peck, through counsel, moves this Court to suppress statements elicited by law enforcement in violation of the Constitution for at least the following reasons: First, the totality of the circumstances surrounding any pre-*Miranda* questioning of Mr. Peck demonstrate that he was in custody and that the officers' questioning was reasonably likely to elicit an incriminating response, thus his pre-*Miranda* statements were obtained in violation of his Fifth Amendment right against self-incrimination. Second, the *Miranda* warning provided by FBI agents, after the initial un-Mirandized interrogation by airport police did not cure the taint of the constitutional violations

I. Factual Background

On September 29, 2025, as he was exiting Washington Dulles International Airport, Robert Peck was stopped by multiple Washington Metro Airport Authority police officers. He was not allowed to leave and escorted, with officers physically leading him, to a small room where police officers questioned him regarding

1

allegations that he assaulted his wife. At no point did officers provide Mr. Peck with his *Miranda* Warnings. Following their interrogation, at approximately 10:52 a.m. the airport police contacted the Federal Bureau of Investigation (FBI"). *See* ECF No. 1 at 2.

FBI Agents responded to the location where Mr. Peck was held. After providing Mr. Peck with his *Miranda* warnings, at approximately 11:49 a.m., agents proceeded to question Mr. Peck. Following the interrogation Mr. Peck was transferred to the Alexandria Detention Center.

## II.    Argument

The Fifth Amendment provides, "No person . . .  shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.   As a prophylactic safeguard for this constitutional guarantee, the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 444 (1966); *United States v. Parker,* 262 F.3d 415, 419 (4th Cir. 2001). Statements obtained pursuant to custodial interrogation without *Miranda* warnings are generally inadmissible.  *See Miranda*, 384 U.S. at 444; *Parker*, 262 F.3d at 419; *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017).

A.  Mr. Peck was "in custody" when he was questioned by airport police.

Statements obtained pursuant to a custodial interrogation without *Miranda* warnings are generally inadmissible. *See Miranda*, 384 U.S. at 444; *Parker*, 262 F.3d at 419.  Absent a formal arrest, a person is in custody if "under the totality of the

circumstances, [his] freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).  The question at the heart of the custody analysis is "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Giddins*, 858 F.3d at 879 (quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013)). Factors relevant to this inquiry include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Hashime*, 734 F.3d at 283 (internal quotations omitted).  "Also pertinent are the suspect's isolation and separation from family, and physical restrictions."  *Id*. (internal citations omitted).

Here, Mr. Peck was stopped from leaving the airport and physically escorted to a small room by multiple police officers.  Clearly, a reasonable person in Mr. Peck's shoes would not have felt at liberty to "terminate the interrogation and leave." *Giddins*, 858 F.3d at 879 (quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013)).

Because officers knew or should have known that questioning Mr. Peck about the alleged assault on the airplane was reasonably likely to elicit an incriminating response, *Miranda* warnings were required.  *See Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980) ("*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or to its functional equivalent.").  The failure

3

to provide the warnings prior to commencing the questioning violated the Fifth Amendment and as a result Mr. Peck's pre-*Miranda* statements to officers must be suppressed.

    B. Mr. Peck's post-*Miranda* statements must also be suppressed.

    Where a defendant's right against compelled self-incrimination has been violated, the provision of *Miranda* warnings will not automatically "purge the primary taint." *See United States v. Watson*, 703 F.3d 684, 697 (4th Cir. 2013) (quoting *Brown v. Illinois*, 422 U.S. 590, 602 (1975))[1]. This is because "when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'deprive' a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Missouri v. Seibert*, 542 U.S. 600, 613-14 (2004). The Supreme Court has found that the "midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement." *Id.* at 604.

    In this case there was no break in custody between the pre- and post-*Miranda* interrogations of Mr. Peck. He remained in custody in the same location for the duration of each interrogation. Though officers at some point traded places, he was

---

[1] In *Watson*, for example, the defendant was illegally seized and during three hours in custody made incriminating statements in response to police questioning. Although at a certain point, the police provided him with the *Miranda* warnings, the Fourth Circuit found that the continuous seizure and lack of "any 'intervening circumstances'" meant that the provision of the warning did not cure the constitutional violation so as to permit the use of the post-*Miranda* statements. *See id.* This was because the defendant's post-*Miranda* statements were "the product of his unlawful arrest rather than 'an act of free will unaffected by the initial illegality.'" *Id.* at 698.

held in the same place, in the same manner during his unadvised interrogation and later advised interrogation. Warnings inserted "in the midst of" a coordinated and continuous interrogation, as was the case here, are likely to mislead and deprive a defendants of the knowledge essential to both the ability to understand the rights and waive them. *Seibert*, 542 U.S. at 613-14. Because Mr. Peck's waiver of his Miranda warnings could not be knowing or voluntary, given the factual circumstances, and are potentially the product of a question first strategy, this Court should suppress his statements.

III.    Conclusion

For the foregoing reasons, Mr. Peck moves this Court to suppress the statements he made to law enforcement officials, or to hold an evidentiary hearing to further develop the record.


Dated: December 1, 2025.



Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

ROBERT THOMAS PECK,

*Defendant*.

Case No. 1:25-MJ-568

## MOTION TO CONTINUE BRIEFING SCHEDULE
## TWO DAYS FOR RESPONSE AND REPLY BRIEF

The United States of America, by and through undersigned counsel, with the consent of the defendant through his counsel, respectfully moves the Court for a continuance of two days of the response and reply deadlines associated with this case. In support thereof, the government states as follows:

1. Mr. Peck was arrested on September 29, 2025, following an allegation of domestic violence against the victim ("V1") while aboard an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia.

2. An information was filed on October 27, 2025, charging Mr. Peck with two counts of assault occurring on or about September 29, 2025, while aboard United Airline Flight #545, an aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight from Orlando International Airport to Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia. Count one charges Mr. Peck with assault by striking, beating, and wounding by grabbing V1's hand and biting her fingers, in violation of Title 18, United State Code, Section 113(a)(4) and Title 49, United States Code, Section 46506(1).

1

Count two charges Mr. Peck with assault by grabbing V1's arm, in violation of Title 18, United State Code, Section 113(a)(5) and Title 49, United States Code, Section 46506(1).

3.     The government is requesting additional time to assess whether the parties can resolve one of the issues raised in the defendant's motion to suppress, filed on December 8, 2025. This additional time will allow the parties to further discuss issues relating to evidence in the case and the potential for out of court resolution, as well as resolve one of the issues being litigated in the defendant's motion.

4.     Therefore, the government requests that the deadline for responses and replies be reset to December 10 for responses and due December 12 for replies and any argument to be scheduled at the discretion of the Court.

5.     The United States has advised counsel for the defendant of the filing of this motion, and the defendant has consented to a continuance of the deadlines for the response and reply brief.

WHEREFORE, with the consent of defense counsel, the United States respectfully request

that the Court grant its motion.   A proposed order is attached to this Motion.

<div style="margin-left: 40%;">

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

</div>

Date:   December 8, 2025

By:   _____/s/_____
      Allie McKnight
      Special Assistant United States Attorney
      United States Attorney's Office
      Eastern District of Virginia
      2100 Jamieson Avenue
      Alexandria, VA 22314
      Allie.McKnight@usdoj.gov
      (O) (703) 236-3855
      (F) (703) 299-3980

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

_____
Allie McKnight
Special Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant*. | |

## **PROPOSED ORDER**

This matter coming on the government's MOTION TO CONTINUE the motions deadlines for the response and the reply in this case for two days. For the reasons cited therein, the Court grants the Motion.

The response motions deadlines currently set for December 8, 2025, are reset to December 10, 2025, and replies due no later than December 12, 2025, with argument to be scheduled if the Court deems it necessary.

**IT IS SO ORDERED** this ___ day of December, 2025.

_____
HON. William E. Fitzpatrick
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                          Case No. 1:25-MJ-568

ROBERT THOMAS PECK,

*Defendant*.

### ORDER

This matter coming on the government's MOTION TO CONTINUE the motions deadlines for the response and the reply in this case for two days. For the reasons cited therein, the Court grants the Motion.

The response motions deadlines currently set for December 8, 2025, are reset to December 10, 2025, and replies due no later than December 12, 2025, with argument to be scheduled if the Court deems it necessary.

**IT IS SO ORDERED** this __8th__ day of December, 2025.

HON. William E. Fitzpatrick
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant.* | |

## MOTION TO CONTINUE BRIEFING SCHEDULE
## TWO DAYS FOR RESPONSE AND REPLY BRIEF

The United States of America, by and through undersigned counsel, with the consent of
the defendant through his counsel, respectfully moves the Court for a continuance of two days of
the response and reply deadlines associated with this case.  In support thereof, the government
states as follows:

1.      Mr. Peck was arrested on September 29, 2025, following an allegation of domestic
violence against the victim ("V1") while aboard an aircraft in flight within the special aircraft
jurisdiction of the United States, on a nonstop flight from Orlando International Airport to
Washington Dulles International Airport, within the jurisdiction of the Eastern District of Virginia.

2.      An information was filed on October 27, 2025, charging Mr. Peck with two counts
of assault occurring on or about September 29, 2025, while aboard United Airline Flight #545, an
aircraft in flight within the special aircraft jurisdiction of the United States, on a nonstop flight
from Orlando International Airport to Washington Dulles International Airport, within the
jurisdiction of the Eastern District of Virginia.  Count one charges Mr. Peck with assault by
striking, beating, and wounding by grabbing V1's hand and biting her fingers, in violation of Title
18, United State Code, Section 113(a)(4) and Title 49, United States Code, Section 46506(1).

1

Count two charges Mr. Peck with assault by grabbing V1's arm, in violation of Title 18, United State Code, Section 113(a)(5) and Title 49, United States Code, Section 46506(1).

3.     The government is requesting additional time to assess whether the parties can resolve one of the issues raised in the defendant's motion to suppress, filed on December 8, 2025. This additional time will allow the parties to further discuss issues relating to evidence in the case and the potential for out of court resolution, as well as resolve one of the issues being litigated in the defendant's motion.

4.     Therefore, the government requests that the deadline for responses and replies be reset to December 10 for responses and due December 12 for replies and any argument to be scheduled at the discretion of the Court.

5.     The United States has advised counsel for the defendant of the filing of this motion, and the defendant has consented to a continuance of the deadlines for the response and reply brief.

WHEREFORE, with the consent of defense counsel, the United States respectfully request

that the Court grant its motion.   A proposed order is attached to this Motion.

Respectfully submitted,

Lindsey Halligan *
~~United States Attorney~~ and Special Attorney

Date:   December 8, 2025

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

By:        /s/
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Allie.McKnight@usdoj.gov
(O) (703) 236-3855
(F) (703) 299-3980

* See US v Comey
1:25 cr 272 (2025)

3

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

_____
Allie McKnight
Special Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-MJ-568 |
| v. | The Honorable William E. Fitzpatrick |
| ROBERT THOMAS PECK III, | |
| *Defendant*. | |

**UNITED STATES' RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

On September 29, 2025, while in flight from Florida to D.C., the defendant reached over a young child to both bite Victim-1 and to grab her arm forcefully, leaving bruises. Unfortunately, this incident was not the first of its kind. The defendant has a prior conviction and multiple prior arrests for similar assaultive conduct. After the assault, Victim-1 asked a flight attendant for medical assistance. When the plane landed, the defendant admitted what he had done, first to local police, the Metropolitan Washington Airports Authority ("MWAA"), and then again to the FBI. The defense now seeks to suppress these confessions. The government respectfully urges the Court to deny the defense's motion to suppress. The federal investigative agents properly conducted an interview with the defendant after *Miranda* warnings, and, although the Government does not concede that the MWAA officers were required to give *Miranda* warnings, the administration of *Miranda* warnings on the initiation of the federal investigation was curative of any potential issues regarding the admissibility of the defendant's statements following those warnings.[1]

---

[1] On November 10, 2025, after a prep session with MWAA police officers, an MWAA police

## I. Background

On September 29, 2025, during a flight from Florida to Dulles International Airport, the defendant reached over a young child and bit Victim-1 as well as grabbed her arm, leaving bruising.

 

Victim-1 told a flight attendant she needed medical assistance because her husband had assaulted her while in flight to Dulles. ECF No. 2, ¶ 8. The flight attendant contacted the Metropolitan Washington Airports Authority ("MWAA"). MWAA officers arrived at the gate and were informed that the victim was still present but that the defendant, her husband, had deplaned and departed the gate. One of the officers stayed to speak with the victim in the vicinity of the gate and the other left to locate the defendant.

---

officer emailed his notes from his September 29 conversation with the defendant. The Government inadvertently failed to provide these notes to defense counsel until December 3. In light of this failure, the Government agrees not to use any of the statements made to MWAA officers at trial. In doing so, the Government does not concede that MWAA acted improperly or that these statements would otherwise be inadmissible.

Upon speaking with the victim and learning of her injuries, officers requested medical assistance from MWAA fire and emergency medical service. Since the incident occurred in the air, officers contacted the Federal Bureau of Investigation ("FBI") for further assistance, since incidents occurring aboard in-flight aircraft fall under the investigative jurisdiction of the FBI.

MWAA officers located the defendant in the baggage claim area as he approached the airport's exit. They approached the defendant, introduced themselves, confirmed the defendant's identity, and asked if he would accompany them to a quieter location to discuss the ongoing investigation. They directed the defendant to a nearby corridor that connects baggage claim to the "Pass and I.D." section of the airport. This corridor is frequented by employees. In this corridor they explained to the defendant that they were investigating an alleged incident between the defendant and his wife on a plane. They let him know that his wife was speaking with other MWAA officers. The defendant began to tell his side of the story but officers asked him to wait because they were waiting for further direction from other MWAA officers about whether they would need to question the defendant.

MWAA officers directed the defendant to an empty conference room in the "Pass and I.D." section of the airport. This room, approximately 20 feet long by 12 feet wide, contains a long conference table with about 10 chairs surrounding it. MWAA officers were in the room with the defendant for no more than an hour. During that time, there were never more than 1-2 officers in the room with the defendant. The defendant was asked what occurred that day and the defendant explained his side of the story. MWAA officers informed the defendant that they were waiting for the FBI to arrive because any investigation would be under their direction.

The FBI case agent arrived on scene to interview the victim shortly after being called in by MWAA while another FBI agent was sent to the Pass and I.D. section of the airport where he

found the MWAA officers. The MWAA officers directed him to the defendant who was seated

inside the conference room. The FBI agent entered the conference room where the defendant was

seated and promptly mirandized the defendant, as indicated in the advice of rights signed by the

defendant on September 29, 2025, at 11:51 A.M. *See* Attachment 1. Having obtained the

defendant's consent to questioning, the FBI agent proceeded to ask the defendant, without

reference to the prior conversation, what occurred on the flight. The defendant admitted to

assaulting the victim, to wit:

- That during the September 29, 2025 flight, the defendant forcefully grabbed her right arm and that he immediately noticed he had bruised the victim's arm and acknowledged what he had done;
- And, though he initially denied the allegation, the defendant ultimately admitted to the investigating agents that he intentionally bit the victim's hand during the September 29, 2025 flight.

## II. Argument

### A. The Defendant's Pre-Miranda Statements Were Not the Product of a Custodial Interrogation.[2]

The ultimate inquiry for determining that an interrogation is custodial is whether there is

a "formal arrest or restraint on freedom of movement of the degree associated with a formal

arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotations omitted). The first

step to resolving this inquiry is to ask, when assessing the totality of the circumstances

surrounding an interaction "whether a reasonable person would have felt he or she was not at

liberty to terminate the interrogation and leave." *United States v. Pressley*, 990 F.3d 383, 388

---

[2] The Government has agreed not to use the statements made to MWAA at trial. This section of the brief is included solely to the extent it has any bearing on the admissibility of the statements to the FBI.

(4th Cir. 2021). Relevant factors include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Id*. (internal citations omitted).

However, the assessment of admissibility of pre-Mirandized statements does not terminate on the determination of custody. Custody is not a controlling factor, custodial interrogation is. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *see also United States v. Haynes*, 26 F. App'x 123, 133 (4th Cir. 2001) (noting interrogation has been defined as words or actions by the police which are designed to illicit an incriminating response). As the Supreme Court explained in *Innis* the defendant's Fifth Amendment rights prohibit law enforcement officers from the deliberate elicitation or solicitation of pre-Mirandized statements. *Id*.

The crux of the voluntariness inquiry "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired. [A] court should look to "the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Hasan*, 747 F. Supp. 2d 642, 658-59 (E.D. Va. 2010) (internal citations omitted). The defendant has significant experience with the criminal justice system, his interview was conducted in a plain conference room at Dulles airport, and the pre-Miranda statements weren't the subject of intensive interrogation, but rather the response to the defendant's own initiation of this conversation and their follow up inquiry in a more private setting.

**B. The Defendant's Statements to the FBI After His Knowing and Voluntary Waiver of His Miranda Rights Are Admissible.**

Even if the Court were to find that MWAA's interview with the defendant was problematic, it does not follow that there is a legal basis to suppress the FBI interview, which was given post-*Miranda*. The Fourth Circuit has reasoned that only in circumstances in which there can be some demonstration that the post-warning statements either related back to pre-warning statements or some other deliberate attempt to obfuscate *Miranda* rights were present that post-warning statements should be subject to some type of curative measure before solicitation. *Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005). *See also United States v. Dorsey*, 744 F. App'x 130, 133-134 (4th Cir. 2018) (holding that statements made after *Miranda* warnings were given even though law enforcement had elicited similar inculpatory statements before providing those warnings were admissible and relying heavily on the lack of evidence of intentional misconduct and change in questioning personnel). Neither circumstance is alleged or applicable here.

Fourth Circuit courts have repeatedly relied on Justice Kennedy's concurrence in *Siebert* when determining whether inadmissible unwarned statements taint subsequent warned statements. *See United States v. Elsheikh*, 103 F.4th 1006, 10015 (4th Cir. 2024) and *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005). In his concurrence, Justice Kennedy held that the police in *Seibert* used an improper two-step questioning technique to deliberately thwart *Miranda*. *See Seibert*, 542 U.S. 600, 620 (2004) (concurrence). There, the *Miranda* warning was withheld to obscure both the practical and legal significance of the admonition when finally given, which he described as an "intentional misrepresentation of the protection that *Miranda* offers." *Id*. The strategy, he reasoned, was based on the assumption that *Miranda* warnings will

6

tend to mean less when recited midinterrogation, after inculpatory statements have already been obtained. *Id*. Additionally probative of the interrogating officer's intention was that the interrogating officer used the defendant's prewarning statement to obtain the postwarning statement against the defendant, which he described as similar to a cross-examination. *Id.*, at 621 (quoting the officer "Didn't you tell me that he was supposed to die in his sleep?") In the case of a ***deliberate***, two-step strategy during an extended interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps. *Id*. (emphasis added).

The plurality opinion in *Siebert* calls for an assessment of "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Siebert*, 542 U.S. at 615 (plurality opinion).

The defendant's motion treats a single factor, the timing and setting of the two statements as dispositive. ECF No. 24 at 4-5. It is not. The record reflects that the initial conversation with MWAA was informal and initiated at certain points by the defendant. While the subject matter may have overlapped, the content of the pre-*Miranda* and post-*Miranda* statements are not identical, in fact it varied in the manner and level of admission across conversations. There was no continuity of police personnel, despite the defendant's allegation that law enforcement simply traded places. MWAA, a state law enforcement agency, was removed from and had no overlap in personnel with the investigative federal agency, in this case the FBI who properly Mirandized and interrogated the defendant. And finally, the FBI did not treat their interrogation as based on or continuous of the defendant's pre-*Miranda* statements to MWAA, there were no allusions to

7

past statements or reliance on them in asking the defendant what happened. The agent conducting post-*Miranda* interrogation did not have any knowledge of any of the pre-*Miranda* statements to MWAA and started his interrogation from scratch. The FBI's interrogation following proper *Miranda* warning was more detailed and wide ranging and is simply not reliant on or continuous of the earlier discussions with MWAA.

The defendant has provided no evidence of coordination or illicit stratagem like the malfeasance exhibited in *Seibert*. Nor has he provided evidence that MWAA officers sought to undermine *Miranda* by less extreme stratagems such as the delay alleged in *Dorsey*. 744 F. App'x 130, 133-134 (4th Cir. 2018) (where evidence of an intentionally long delay would be evidence of subterfuge, though no such evidence was found). There's no indication of any bad faith action on the part of law enforcement to frustrate the defendant's Fifth Amendment rights. Absent any evidence of "subterfuge," the mere fact that the defendant makes pre-*Miranda* statements and post-*Miranda* statements does not render his post-*Miranda* statements involuntary and inadmissible. *Id.* (citing Elstad, 470 U.S. 298, 314 (1985).

Here, there's no evidence that MWAA police officers made any commentary on the pending charges that would have coerced the defendant's prewarned statements. In fact, when the defendant began to explain his side of the story while standing in the corridor outside the baggage claim area, the officers informed the defendant that he should wait for other officers to arrive. The MWAA officers spoke with the defendant prior to the FBI agents arriving and conducting a fully independent interrogation, but the defense has not and cannot allege any "subterfuge" by the MWAA police officers, his pre-*Miranda* statements were voluntary and his postwarned statements are admissible.

# CONCLUSION

The Government respectfully urges the Court to deny the Defendant's Motion to Suppress the defendant's post *Miranda* statements. The Government agrees not to use the pre-*Miranda* statements for the reasons outlined above relating to the inadvertent delay in the disclosure of the notes from one of the MWAA police officers, but does not concede that they would otherwise be inadmissible.

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

By: _____/s/_____
Tony R. Roberts
Assistant United States Attorney
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

/s/
_____
Tony R. Roberts
Assistant United States Attorney
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

# FEDERAL BUREAU OF INVESTIGATION
## ADVICE OF RIGHTS

### LOCATION

Place: *Washington Dulles Airport (Main Terminal)*     Date: 9/29/25     Time: 11:49 am

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _____

### WITNESS

Witness: _____ *THOMAS PATTINSON*

Witness: _____ *JASON BLANCHARD*

Time: 11:51

US - 000062

Dear Honorable William E. Fitzpatrick,

FILED
MAILROOM

DEC 11 2025

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

I am writing to you today with hopes
of you dismissing the case against, my husband,
Robert T. Peck III.

On the date of Sept. 29th, 2025, I, my husband,
and my 2 year old daughter, at the time, were
on a flight back home from Disney World
(Orlando, FL). My husband and I got into
an altercation and a series of events started
to happen. I just want to say that my
husband is a good man. He is a valuable
part of our lives. Sure he makes mistakes
and has poor judgement at times.

With what my husband did to me on the
plane is seen as an assuault to the law,
I see as a deep cry for help. I did NOT
want to make a statement and press
charges on my husband. I felt I was
coerced by the FBI agent, Gastaldo.
I simply asked to be safely excorted off
the plane, and would have felt safe once
off the property. I even told airport police
that I was not answering questions to put

Charges on my husband. I informed them that this was something I would handle a different way. Being a psychiatric nurse, I know my husband needs to seek mental health treatment. I know with this population of people, it has to be "forced" at times, where they don't tend to make the decision to seek help for themselves.

Agent Giastaldo took over at some point and I told him the same, that I did not want to press charges. I instructed him to not take a statment from me unless this was to help my husband get into mental health treatment. Agent Giastaldo used great tactics to make me feel that if I were to just answer some of his questions, I could leave safely and go somewhere safe. After waiting more hours, he continues to ask me questions and then tells me it's out of his hands & I also didn't make the decision to have charges brought onto my husband. I just wanted to leave, get some sleep, food, and take my daughter home. I really felt Agent Giastaldo was helping me to do that, but instead he was gathering information from me to start a case. I continued to tell him and explain to him that my husband does NOT need to be in jail and he needs mental health treatment. I feel that was ignored and Agent

My husband provides for this family and taking him away from us will just create a broken home and a mother to have the burden of trying to make ends meet. My husband is a great father to our now 3 year old daughter. This will tear her apart not being able to see and be with her father. He is also a good church member and attends church services every Friday & Sunday. He helps the music ministry and preaches to the youth. I really believe & have the knowledge that he will make better judgements on his actions if he could get the right mental treatment he deserves & NOT to be put into a jail for any amount of time.

So I ask you, Honorable William E. Fitzpatrick, even through this holiday season, if you can find the spirit within you to just have this case dismissed. You will not break a home that just needs some care. Thank you for your time & reading my letter.

May God Bless You,

Mrs. Ruth Peck

th Peck
a Grayling Rd.
nwood, WV 25428

HARRISBURG PA 171

9 DEC 2025 PM 7 L

Honorable William E. Fitzpatrick
United States Magistrate Judge
Eastern District of Virginia
401 Courthouse Square
Alexandria, VA 22314

RECEIVED
MAILROOM

DEC 11 2025

CLERK U.S. DISTRICT COURT

22314-579599

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPLY TO GOVERNMENT'S REPONSE IN OPPOSITION TO MOTION TO SUPRESS STATEMENTS

Robert T. Peck, through counsel, submits this reply to the government's response in opposition to his motion to suppress statements. ECF No. 27. First, Mr. Peck's pre-*Miranda* statements were the product of custodial interrogation and second, the statements made to the FBI post-*Miranda* were tainted by this deliberate and intentional *Miranda* violation, requiring suppression.

I.      Mr. Peck was in custody and interrogated by MWAA officers.

In its response in opposition, the government appears to agree Mr. Peck was "in custody" but asserts that the interrogation was not "custodial interrogation." *See* ECF No. 27 at 4-5 (never asserting Mr. Peck was not in custody but stating that "[c]ustody is not the controlling factor, custodial interrogation is."). As the interrogation of Mr. Peck by MWAA was not recorded, the exact words used by officers are unknown. However, after Mr. Peck was in custody, officers questioned him about what happened on the plane. That is, they asked him about the allegation that he assaulted his wife on the plane.

1

In its analysis of whether Mr. Peck was subjected to custodial interrogation the government cites to *United States v. Hasan*, 747 F. Supp. 2d 642, 658–59 (E.D. Va. 2010), which, at the quoted portion, outlines the law on involuntary statements. A Fifth Amendment voluntariness claim (that can arise even where *Miranda* warnings are properly administered) is inapposite to an analysis of whether a suspect was subjected to custodial interrogation, thus mandating *Miranda* warnings. As the Supreme Court has explained, "the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301(1980). Clearly officers investigating an alleged assault on a plane should know that asking an accused what happened on the plane was reasonably likely to elicit an incriminating response. *Id.*

II.     Mr. Peck's statements to the FBI must be suppressed.

Discovery provided to the defense on December 4, 2025[1] indicates that MWAA officers although they stopped Mr. Peck from leaving and held him in a room and questioned him, made the decision not to administer *Miranda* warnings because the FBI was "responding to investigate the incident further." This was a deliberate and intentional decision by MWAA officers to interrogate Mr. Peck without prior *Miranda*

---

[1] This discovery, provided three days after the motions deadline, had been in the government's possession since November 10, 2025. This along with other late discovery disclosures will be the subject of a separate filing.

warnings, knowing their questioning in violation of *Miranda* would be followed by further FBI interrogations, or at least an attempt to do so.[2]

Here, MWAA officers intentionally withheld warnings, which functioned to "obscure both the practical and legal significance of the admonition when finally given[.]" *Missouri v. Seibert*, 542 U.S. 600, 620 (2004)(J. Kennedy *concurring*). This functions to permit the accused, here Mr. Peck, "to conclude that the right not to respond did not exist when the earlier incriminating statements were made." *Id.* It does not appear that any curative measures were taken by law enforcement, nor was there a "a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning" Id. at 622.[3] As such, Mr. Peck's statements to the FBI, despite *Miranda* warnings, were tainted by the earlier actions of MWAA, and must be suppressed.

For the above stated reasons, and those stated in his underlying motion, Mr. Peck asks this Court to suppress all his statements or hold an evidentiary hearing on the matter.

Dated: December 12, 2025.

---

[2] At this point, Mr. Peck has no information regarding what information FBI agents had prior to interrogating Mr. Peck.
[3] The record is not currently clear as to exactly how much time passed between the two interrogations.

3

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION FOR DIMISSAL UNDER THE DUE PROCESS PROTECTIONS ACT

Robert T. Peck, through counsel, pursuant to the Due Process Protections Act ("DPPA"), moves this Court to dismiss the information filed against him, or in the alternative, exclude any evidence of alleged statements he made to law enforcement on the day of his arrest.

I.      Factual Background

Arrested on September 30, 2025, Mr. Peck was charged by a complaint filed before this Court alleging a violation of 18 U.S.C. §113(a)(4), assault by striking, beating or wounding. ECF No. 2. At an initial appearance that same day the Court read the Due Process Protections Act warnings, and scheduled this case for a trial on November 18, 2025, with motions due on November 7, 2025. ECF No. 6. Later, on October 27, 2025, the government filed an information charging Mr. Peck with two violations of 18 U.S.C. §113(a), assault by beating, striking, or wounding in violation of §113(a) (4) and simple assault in violation of §113(a)(5). ECF No. 18.

On September 30, 2025, the defense sent the government, via email, a formal letter requesting discovery, including (but not limited to) any statements made by Mr. Peck, and any and all exculpatory materials. The defense requested discovery again on October 7, 2025. It was not until the evening of October 30, 2025, five business days before the motion's deadline, that the government provided the defense with an initial discovery disclosure. Given the late disclosure and impending motions deadline and trial date, and the need to review discovery and discuss pretrial resolutions, if possible, the defense did not oppose a government motion to continue the trial date. The Court granted the motion and scheduled trial for December 16, 2025, with pretrial motions due on December 1, 2025. ECF No. 20.

On November 6, 2025, the defense specifically asked the government if the Metropolitan Washington Airports Authority ("MWAA") had provided Mr. Peck with *Miranda* warnings. On November 10, 2025, the government received notes stating that Mr. Peck was not provided *Miranda* warnings by the MWAA, explaining why Mr. Peck was not provided *Miranda* warnings by those officers, and outlining in some detail the statements Mr. Peck made to MWAA officers. This information was not otherwise contained in any other documents produced by the government, which included reports from MWAA[1], and as outlined in Mr. Peck's reply to the government's response in opposition to his motion to suppress, strongly supports his argument that his statements should be suppressed.

---

[1] The government did by email confirm on November 24, 2025, that MWAA did not provide Mr. Peck with *Miranda* warnings, after defense counsel sent a second email asking if those officers had administered *Miranda* warnings.

2

Despite specific requests from defense counsel, the government did not turn over this exculpatory evidence, that it had in its possession and knew it should have provided to defense counsel, until December 4, 2025, days after the motions deadline had passed.

II.     Argument

Pursuant to an amended standing order, *In the Matter of Court Operations Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections act*, filed by Chief Judge Davis on July 12, 2021, the Court broadly ordered the government to disclose to the defendant in all criminal cases "all exculpatory evidence, that is, evidence that favors the defendant or casts doubt on the United States' case[.]"  And further stated that failure to do so "in a timely manner may result in serious consequence, including, but not limited to exclusion of evidence, adverse jury instructions, dismissal of charges…[.]"[2] This Court so warned the government both orally and by written order at the initial appearance. ECF No. 6 & 8. Despite these warnings, the government initially failed to provide the defendant with any discovery in a timely manner, resulting in a delay of the trial. Then despite specific requests from defense counsel, the government failed to produce discovery that was in its possession and that it knew should be produced, until after the motions' deadline. This late-produced discovery cast doubt on the government's arguments for the admissibility of Mr. Peck's statements.

---

[2]Available at:
https://www.vaed.uscourts.gov/sites/vaed/files/Amended%20Standing%20Order%20 7-12-21.pdf

The government's late disclosure was egregious and coupled with a repetitive failure to comply with discovery obligations in a timely manner. Receiving this information after the motions' deadline and only seven business days before trial is prejudicial. The DPPA was passed to protect a criminal defendant from the suppression of favorable evidence and late disclosures by the government. This Court should give meaning to Congress's intent and dismiss the information filed in this case, or in the alternative, exclude all statements Mr. Peck made to law enforcement.

Dated: December 12, 2025.

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant*. | |

## MOTION TO SEAL DOCKET NUMBER 31

The United States of America, by and through undersigned counsel, pursuant to Local Criminal Rule 49, respectfully moves to seal the Government's response to Victim's letter, Docket No. 31.

Local Criminal Rule 47 requires redaction of personal identifiers as governed by Fed.R.Crim.P. 49.1. Exhibits accompanying this response contain personally identifying information that should be protected by seal, indefinitely.

WHEREFORE, the United States respectfully request that the Court grant its motion. A proposed order is attached to this Motion.

Date: December 15, 2025

Respectfully submitted,

By:    /s/ Allie McKnight      
        Allie McKnight
        Special Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Allie.McKnight@usdoj.gov
        (O) (703) 236-3855
        (F) (703) 299-3980

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing to all

counsel of record.

<div align="right">

/s/ Allie McKnight

</div>

Allie McKnight
Special Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-MJ-568 |
| ROBERT THOMAS PECK, | |
| *Defendant*. | |

## **PROPOSED ORDER**

This matter coming on the Government's MOTION TO SEAL the Government's
Response to the Victim's letter, Docket No. 31. For the reasons cited therein, the Court grants
the Motion.

**IT IS SO ORDERED** this ___ day of December, 2025.

_____
HON. William E. Fitzpatrick
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | )  **Case Number   1:25-mj-568** |
| | )  **William E. Fitzpatrick** |
| ROBERT THOMAS PECK, III | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |
| | ) |

## <u>ORDER</u>

This matter is before the Court on its own initiative.  On December 12, 2025, the Court received an uncounseled letter directly from the alleged victim in this case.  The Court, finding such direct communication from a potential witness and alleged victim prior to trial to be inappropriate, forwarded the letter to all counsel of record.  The government now files a "Response to Victim's Letter" (Dkt. 31) in which it seeks to explain to the Court its decision to prosecute this case.  Whether to move forward with a criminal case is generally a decision that rests with the Executive Branch.  The government's submission does not address a pending motion and is therefore unnecessary.

Accordingly, it is

ORDERED that the government's "Response to Victim's Letter" (Dkt. 31) be struck from the docket.  It is further

ORDERED that the government's motion to seal its response (Dkt. 32) is DENIED as moot.

December 15, 2025
Alexandria, Virginia

William E. Fitzpatrick
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-MJ-568 |
| v. | The Honorable William E. Fitzpatrick |
| ROBERT THOMAS PECK III, | |
| *Defendant*. | |

## UNITED STATES' RESPONSE
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Government respectfully requests the court deny the defendant's Motion to Dismiss.

The defendant's allegation of violations of the Due Process Protection Act relate to a single

paragraph of inculpatory officer notes that were turned over to defendant's counsel on December

4, 2025, admittedly after the defendant's motion deadline (but prior to the reply). The

Government's decision to refrain from using any statements the defendant made to any

Metropolitan Washington Airports Authority (MWAA) officer, not just the officer whose notes

were turned over December 4, 2025, is sufficient to cure any impact the delayed disclosure may

have had on the defendant. As discussed further below, the Government's production of

discovery in this case has otherwise fully complied with Rule 16, with the Government

frequently producing items within minutes or hours of receiving them.

Moreover, the remedy sought by the defense is unsupported by case law. In fact, the

Fourth Circuit has clearly stated that the preferred remedy for delayed disclosure is a

continuance, and not exclusion of any evidence. *United States v. Sterling*, 724 F.3d 482, 513 (4th

Cir. 2013) (reversing the district court's exclusion of evidence and noting that "a continuance is

the preferred sanction" in a delayed disclosure case); *United States v. Young*, 916 F.3d 368 (4th Cir. 2019) ("Continuance is the preferred sanction for the government's failure to timely produce discovery materials that are not exculpatory, such as *Jencks* materials").

## I.  Procedural Background

On September 29, 2025 the FBI initiated an investigation of the defendant and ultimately arrested him for assaulting Victim-1 aboard a United Airlines flight to Dulles. ECF No. 2. For several weeks after the date of arrest, the parties worked to modify pretrial conditions in a way that worked for the victim and the defendant and to address changes in circumstances, eventually filing a joint motion addressing those conditions on October 15. ECF Nos. 9, 10, 12, 15, 16.

On October 27, 2025, the defendant was charged by Information with one count of assault, beating, striking or wounding in the special aircraft jurisdiction, in violation of 18 U.S.C. § 113(a)(4), and one count of simple assault in the special aircraft jurisdiction, in violation of 18 U.S.C. § 113(a)(5). ECF No. 18. Four days later, the Government provided substantial initial discovery. Thereafter, during the first two weeks of November, the Government provided 404(b) notice, came to a protective agreement with defense counsel, and began reaching out to witnesses, asking for any notes or substantive emails or texts.

The parties discussed a potential pretrial resolution in the case and also discussed moving the trial date a few weeks. Defense counsel indicated a potential scheduling conflict with moving the trial date and a possible preference for keeping the trial date as is, but both parties expressed interest in working towards a pretrial resolution. After the defense scheduling conflict resolved, the parties agreed to continue the motions deadline and trial date and to continue working on a potential resolution. The Government filed a consent motion for the continuance of the initial trial date and motions' deadlines that this Court granted on November 10, 2025. *See* ECF 20.

On December 1, the defendant filed a motion to suppress all statements made to MWAA officers and all statements made after receiving *Miranda* warnings to the FBI agents who served as the investigative team for this case. In preparing its response to the defendant's motion, the Government located an email containing a paragraph of MWAA officer notes that it had inadvertently failed to forward to defense counsel. *See* Govt. Ex. 1, Notes.  Those notes were turned over as soon as the Government realized they had not already been disclosed, on December 4, 2025. Thereafter, the Government discussed with defense counsel another possible resolution and indicated its willingness to not use the inculpatory statements made to MWAA due to the delayed disclosure of the notes. The parties agreed to continue the Government's response deadline and the defendant's reply deadline so that defense counsel could confer with her client about these issues. ECF No 25. The Government filed our response on December 10. *See* ECF No. 27.

The defendant filed their reply on December 12, 2025. *See* ECF No 29. In the reply, the defendant was able to fully incorporate the information from the paragraph of notes into his argument. *Id.* Finally, on Friday evening, the defendant filed this motion to dismiss the case for violations of the Due Process Protections Act, or in the alternative, to suppress additional statements. *See* ECF No. 30.[1]

---

[1] The local rules dictate that the responding party, unless otherwise directed by the Court, have two weeks to respond to a motion. *See* EDVA Local Criminal Rule 47. The government understands the present circumstances do not allow for that type of lead time to respond, however, should the Court believe that a finding against the Government is required, the Government would request additional time to supplement this briefing, particularly given the very serious allegations contained therein.

## II.    Factual Background

### A.  The Notes at Issue

The Government concedes that the Government received one of the MWAA officer's notes about their interaction with the defendant on November 10, and that those notes were not produced until December 4. *See* Govt. Ex. 1, Notes.  However, the defendant's characterization of these notes as the only discovery they received on the MWAA interaction with the defendant is inaccurate. *See* ECF No. 30 at pg. 2. In fact, the primary MWAA officer who interacted with the defendant wrote a police report, which was produced in the first batch of discovery in October.  *See* Govt. Ex. 2, Mosier Report; *See, e.g.,* Govt. Ex. 4, Discovery Letter. Officer Mosier also took notes, and those notes were produced on November 6, 2025, directly following the Government's first meeting and request for any *Jencks* material or notes from him. *See* Govt. Ex. 3, Mosier Notes. Also directly following this conversation, and on that same date of November 6, 2025, the Government reached out and told defendant's counsel by email that the Government had no record of *Miranda* warnings being given by MWAA during the MWAA interaction.[2]

On that same day, November 6, 2025, the Government first learned that Officer Miller had also been present during the interaction with the defendant. Importantly, Officer Miller was not mentioned in the police report. The Government immediately reached out to Officer Miller

---

[2]  This first email to defense on November 6 stating the Government had no record of Miranda warnings being given by MWAA officers is not mentioned in the defense's motion.  The Government indicated at that time that it would be reaching out to MWAA to confirm that no warnings were given. The Government sent a second email confirming that no *Miranda* warnings were provided on November 24.

and set up the November 10 call, which resulted in the production of the notes. *See, e.g.,* Govt. Ex. 1, Miller Notes.

The Government inadvertently failed to send this paragraph to the defense until the Government was in the midst of drafting the response to the suppression motion and realized the notes had never been sent. Thereafter, the Government immediately forwarded the notes.

### B.   Other Discovery

The government produced the vast majority of discovery in this case just four days after the Information was filed. (R. 18). The government has continued to comply with Rule 16 requirements in the case, generally producing documents as soon as the Government obtained them, as explained further below.

The government has made every effort to ensure that the defendant receives discovery promptly, as evidenced by nine discovery disclosures made over the course of the litigation, which is outlined below:

- October 31, 2025. The government disclosed 66 pages of discovery, containing the MWAA case report, NCIC records, photos of the Victim's injuries, FBI interview notes, and FBI 302s. The Government also disclosed the existence of a video interview between the FBI and the Victim directly following the incident and invited defense counsel to view the video at the government's office. [1]

- November 4, 2025.  The Government timely provided 404(b) notice to the defense, which included as an attachment the defendant's 2021 strangulation arrest report.  *See* Govt. Ex. 6, 404(b) Notice.  The Government received the 2021 report the same day it was produced, on November 4.

- November 5, 2025. The government disclosed a conversation with the Victim detailing the Victim's preference for mental health treatment and no jail time.

- November 6, 2025. The government disclosed two pages of notes from MWAA Officer Mosier, as well as the video of the FBI's interview with the victim.[3] The Government also re-produced the defendant's prior conviction document and 2021 arrest report (which were attached to the 404(b) notice).

- December 1, 2025. The government disclosed four pages of discovery, containing MWAA emergency medical service (EMS) treatment records, which the Government received earlier that same day.

- December 2, 2025. The government disclosed one page of discovery the same day the Government received it, which contained a MWAA custodian declaration for the WMAA EMS records disclosed December 1, 2025.

- December 4, 2025. The government disclosed witness trial subpoenas and the inadvertently delayed notes from MWAA Officer Miller.

- December 11, 2025. The government disclosed nine pages of discovery, containing photos taken by the FBI in preparation for trial of the general area in the airport.

- December 12, 2025. The government disclosed information from a conversation with the Victim following witness preparation.

---

This video was later transmitted to the defense counsel after the defendant agreed to a protective agreement. *See* Govt. Ex. 5, Protective Agreement.

The government concedes that it intended to and should have disclosed Officer Miller's notes earlier than it did, and in recognition of that oversight has, in the interests of justice and fairness, already agreed not to use the interaction discussed in the notes. That interaction was not exculpatory, but rather inculpatory. *See* Ex. 1, Notes. Dismissing this case or expanding the sanction to other confessions the defendant made to a different investigative agency after receiving *Miranda* warnings would be a draconian sanction for the government's inadvertent delayed disclosure here.

### III. Argument

#### A. The Government mitigated any harm caused by the late disclosure by agreeing not to use any statements made by the defendant to MWAA Officers.

The Government has been forthcoming regarding the delayed disclosure of the notes. The Government disclosed the notes to the defendant in their native format: notes in the body of an email from the MWAA officer who wrote them. In doing so, the Government made it transparent that they were received from the officer and that they intended to turn them over on November 10, 2025.

The Government highlighted this delay in a filing in the case in its response in opposition to defendant's Motion to Suppress. See ECF No, 27, Footnote 1. In an acknowledgment of the delay, the Government agreed to abstain from using not only the notes in question, which document statements made by the defendant to MWAA officers on the date of his arrest, but all statements made by the defendant to MWAA officers from that day.

The Federal Rules of Criminal Procedure provide a trial court with discretion in determining the proper remedy for a discovery violation. *See United States v. Muse*, 83 F.3d 672, 675 (4th Cir. 1996). Rule 16 contemplated issues with discovery and notes that a trial court may

"(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." FRCP Rule 16(d)(2).

"This is not a case in which the discovery of evidence is delayed until the jury is sworn and a recess to enable the defendant to make whatever adjustments in his trial preparation and strategy may be necessary to meet the evidence could not mitigate the prejudicial effects of the delay." *See United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985). The Government's self-imposed remedy already extends beyond just the particular MWAA officer involved and beyond just the contents of his notes. Importantly, there is no allegation of bad faith here, and defense was able to use the information in the notes in the reply brief to the suppression motion, filed more than a week after receiving them. Moreover, the defendant received the notes, which the Government has already agreed not to use, nearly two weeks before trial. The Government fully acknowledges the notes should have been produced sooner, but the defendant's motion reaches several steps too far in addressing this delay.

## B. The defendant fails to allege how earlier disclosure of the late officer notes would have impacted the defendant's case in chief.

The government has admitted to its delay in disclosing the notes but disagrees with the defendant in their description of the delay's impact on their case in chief because much of the substance of the notes was information contained elsewhere in the record, the defendant was able to effectively use the information in its reply brief filed eight days after the notes were disclosed, and because the Government has already agreed not to use the MWAA interaction at trial or any of the statements made to MWAA officers by the defendant. *See United States v. Sterling,* 724

8

F.3d 482 (4th Cir. 2013) (for a delayed disclosure, "the relevant inquiry in determining whether the conduct violates due process is whether the defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case."); *see also, e.g., United States v. Russell*, 971 F.2d 1098, 1112 (4th Cir. 1992); *Cf. United States v. Walker*, No. 95-5546, 1997 WL 5772, at *3 (4th Cir. Jan. 8, 1997) (per curiam) (holding that disclosure during trial of tips "naming four individuals other than the defendant as looking similar to photos of bank robbers" did not prejudice the defendant where counsel "was able to cross-examine investigators extensively about the tips and what steps were taken to follow up on them," and did not "request a continuance to further pursue this new information").

Further, the defendant has made no specific allegation of prejudice to their evaluation and management of the evidence in question. *See Patler v. Slayton*, 503 F.2d 472, 480 (4th Cir. 1974) (noting that "[w]here, as here, the disclosure is timely, i.e., occurring at or before the introduction by the prosecution of evidence to which the disclosed material logically relates and at a time when it can be meaningfully evaluated and utilized by the defense, there is no violation of due process.").

## CONCLUSION

The government respectfully urges the Court to deny the defendant's Motion to Dismiss The government has mitigated the effects of this disclosure by agreeing to abstain from using the notes and any statements made by the defendant to MWAA officers. Further, the defendant fails to identify how, if at all, the delayed disclosure has prejudiced his position such that a dismissal or suppression of admissions made to a separate law enforcement agency is required. For this reason, the government respectfully recommends the Court deny the defendant's motion to dismiss.

Respectfully submitted,

By:     /s/ Allie McKnight
        Allie McKnight
        Special Assistant United States Attorney
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314
        Telephone: (703) 236-3855
        Email: Allie.McKnight@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2025, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.


/s/ Allie McKnight
_____
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

**Officer Miller Notes Disclosed 12/4/25:**

Made contact with the suspect in front of the IAD Pass and ID office and verified it was him. The situation was explained to him as well as the reasoning why we were present. The suspect (Peck) was explained that he was detained to further investigate the incident. Peck was detained without handcuffs throughout the entire interaction. Peck was brought back to a private room behind the Pass and ID office and seated facing the door with two officers present in the room. Miranda Rights were not read due to the FBI responding to investigate the incident further. Peck was asked what occurred today and Peck explained the entire story. Peck stated that the victim was punching him (unknown strength) and Peck reached out and grabbed the victim's arm as a reaction. Peck admitted to observing two bruises on her arm due to her being "light skinned". Peck stated he apologized to her. Peck made a statement that he did not have a lawyer present, to which the subject was advised that he did not have to speak with us further if he did not wish to do so. Peck was also advised that FBI would be responding to speak with him in regard to this matter to conduct their own investigation due to the incident occurring on a domestic flight and the alleged incident occurred in the air and Mr. Peck understood.

**MWAA Report (Officer Mosier) disclosed 10/31/25**

Narrative: On September 29, 2025, at 10:23 AM, I responded to Gate D9 and spoke with Primary Officer Ewuzie, who requested assistance in

locating the suspect, Robert Peck III.

Mr. Peck was suspected of assaulting his wife of two years, with whom he has a child, while they were flying into Dulles International Airport.

He stated that they were returning from a trip to Florida, where they had visited Disneyland.

During our conversation, Mr. Peck mentioned that they were arguing about marijuana use and the possibility of divorce upon returning from

the trip. He indicated that this was not the first incident of this nature, noting that a similar case had already been reported in Maryland.

Mr. Peck provided several potential reasons for his wife's behavior, including:

- She may have found someone else.

- She may be suffering from PTSD due to past relationship experiences.

- She may simply want him gone.

- She tends to exaggerate situations and then recants when it's convenient for her.

The FBI responded to the scene and conducted a further investigation. Following their assessment, the FBI determined that Mr. Peck would be

taken into custody.

Leading Investigating Agent: Special Agent Marc

**Officer Mosier Notes disclosed 11/6/25**

Lead investigating Agent:
Jason L Blanchard

Disposition: arrested

Investigation of Domestic Violence on Plane

Responded to gate D9, talked with primary officer that needed us to locate the suspect, Robert Peck 3rd,

Suspected of hurting his wife of 2years with child in common.

Suspect informed me that they were returning from a trip from Florida where they attended Disneyland.

Suspect informed me that they were having an argument over something that occurred in the past.

Suspect informed me that it was over the use of marijuana.

Suspect informed me that this is not the first time kinda incident.

Suspect informed me that they had a case in Maryland about a past occurrence situation that was similarly to the current situation.

Suspect informed me that he works for a refrigeration company and that he works most of the time which might be also what caused his wife to make accusations.

Suspect informed me that the reason his wife maybe doing this because of multiple different reasons:

-She possibly found someone else.
-She's possibly suffering from PTSD from past experiences
-Shes just wants him out of the picture
-She blows things out of proportion then recants when it's convenient for her.



U.S. Department of Justice

**United States Attorney's Office**

Eastern District of Virginia

| | | |
|---|---|---|
| Lindsey Halligan | 2100 Jamieson Avenue | (703) 299-3700 |
| United States Attorney | Alexandria, VA 22314 | (703) 299-3980 (fax) |

October 31, 2025

<u>VIA ELECTRONIC TRANSMISSION</u>

Lauren Rosen, Esquire
Office of the Federal Public Defender
1650 King St.
Alexandria, VA 22314

Re:    <u>United States v. ROBERT THOMAS PECK III</u>
           <u>Criminal Case 1:25-MJ-568</u>

Dear Ms. Rosen:

Pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, please find attached discovery bates numbered US-000001 – US-000066 related to the above mentioned case. As you will see, the enclosed discovery contains certain redactions. If you have any questions about those redactions or any other questions about the discovery, please feel free to reach out at your earliest convenience. In lieu of a protective order, we will make those materials available for your inspection at our office. Please contact me if you would like to make arrangements to conduct such an inspection, or if you have any other questions about the enclosed discovery. There is also a video which corresponds with bates number US-000053, which is a video recording of the interview conducted with the victim on September 29, 2025. Due to the sensitivies of the video, we are not producing it for retention at this time, but you are invited to view the video at our office at a time suitable to you.

We have included our index of discovery in case it is helpful to you. Note this was prepared for our use and may not be completely precise, but we thought it might be useful to you as well so are including it below.

| | |
|---|---|
| 001-002 | Case Opening |
| 003 | 302 Re Transportation 9/30/25, Initial Appearance |
| 004-009 | Criminal Complaint and Affidavit |
| 010 | Receipt for Property Received |

| 011 | Receipt for Property Released |
| 012-015 | 302 Re Interview of V1 |
| 016-024 | NCIC Report, Defendant |
| 025 | NCIC Report, V1 |
| 026-035 | Photos of V1 |
| 036-047 | Metropolitan Washington Airports Authority Case Report |
| 048-052 | Handwritten Notes V1 Interview |
| 053 | Cover Sheet V1 Verbal Statement |
| 054-055 | Expense Request |
| 056-058 | 302 Re Interview of Defendant |
| 059-061 | Handwritten Notes Defendant Interview |
| 062 | Defendant Advice of Rights |
| 063 | Photo of Defendant's Driver's License |
| 064 | 302 Re Probable Cause Arrest |
| 065 | Payment Authorization Form |
| 066 | 302 Re Transportation 9/29/25 of Defendant |

This letter confirms that we will as soon as practicable provide full, complete, and immediate discovery of any relevant evidence required to be disclosed or produced under Brady, Giglio, Rule 16, and Jencks, unless such disclosure or production interferes with an ongoing investigation, national security, or the welfare of a witness or victim. Also, regardless of an agreed discovery order, we will aspire to provide you with all Rule 404(b) evidence at least fourteen days before trial.

Our voluntary discovery policy does not waive our right to provide the above information or material by a later date, as long as we disclose or produce timely under the applicable cases, laws, rules, and discovery order.

Moreover, we hereby request and move under Fed. R. Crim. P. 26.2 for Jencks Act material on any witnesses (excluding the defendant) whom you may call at any hearing, trial, and sentencing related to this case. In addition, pursuant to Fed. R. Crim. P. 16(b) ("Defendant's Disclosure"), we hereby request any and all reciprocal discovery required from you in the event we comply with your requests under this rule. Last, we ask that you notify us under Fed. R. Crim. P. 12.1 of your intent to use any alibi defense.

If you have any questions, please contact me directly at 703-236-3855.

Sincerely,

Lindsey Halligan
United States Attorney


By:  /s/ Allie McKnight
_____
Allie McKnight
Special Assistant United States Attorney

Enclosure(s)

## <u>RECEIPT FOR DISCOVERY AND INSPECTION</u>

I hereby acknowledge receiving from the United States Attorney's Office a discovery package containing bates numbers US-000001 to US-000066 related to (ROBERT THOMAS PECK III).


_____\
Date

_____\
Lauren Rosen
Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. l:25-MJ-568 |
| | ) | |
| ROBERT THOMAS PECK, | ) | |
| | ) | |
| *Defendant.* | ) | |

PROTECTIVE AGREEMENT

1.     The parties agree, in case number 25-MJ-568, that the discovery that the United States has today produced bearing bates number US-000067, a video interview of ▆▆▆▆, the victim in this case, will be the subject of this Protective Order.

2.     The parties agree that this discovery provided by the government should not be publicly disseminated, and in lieu of a protective order pursuant to Federal Rule of Criminal Procedure 16(d)(1), agree that the use and dissemination of discovery should be restricted as described below.

3.     Defense counsel, the defendant, and any person employed to assist with the defense agree to maintain the confidentiality of the government's discovery.   Specifically, defense counsel, the defendant, and any person employed to assist with the defense agree that discovery and information contained therein can only be used in connection with the defense of this case, and for no other purpose.

4.     The defendant may disclose discovery to other persons hired by defense counsel to assist in the defense, persons who are interviewed as potential witnesses, and counsel for potential witnesses.   Potential witnesses and their counsel may be shown copies of the discovery as necessary to prepare the defense.   Defense counsel will not disclose or disseminate this discovery or their contents directly or indirectly to any person or entity.

<table>
<tr><td>_____11/6/2025_____<br>Date</td><td>*Lauren Rosen*<br>Lauren Rosen<br>Counsel for Robert Peck</td></tr>
<tr><td>_____11/6/2025_____<br>Date</td><td>*Allie McKnight*<br>Allie McKnight<br>Dahoud Askar<br>Special Assistant United States Attorneys</td></tr>
</table>

1



U.S. Department of Justice
**United States Attorney's Office**
Eastern District of Virginia

---

| | | |
|---|---|---|
| Lindsey Halligan<br>United States Attorney | 2100 Jamieson Avenue<br>Alexandria, VA 22314 | (703) 299-3700 |

November 4, 2025

Lauren Rosen
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Lauren_Rosen@fd.org

Re:     404(b) Evidence
         *United States v. Robert Thomas Peck III*, 1:25-MJ-568

Dear Ms. Rosen:

The Government intends to introduce the following evidence during trial: (1) the defendant's 2022 conviction for Assault in the Second Degree, in connection with Montgomery, Maryland Case Number 6D00417269. The Government submits this notice pursuant to Fed. R. Evid. 404. The Government intends to use this evidence to prove among other things knowledge and lack of accident as explained below. *See* Fed. R. Evid. 404(b)(2) (listing permissible uses).

<u>The 2022 Assault Conviction</u>

On or about September 3, 2021, the defendant was charged with Assault in the First Degree, a Felony in the state of Maryland in violation of Md. Code, Crim. Law §§ 3-201, 3-203. He was also charged with Assault in the Second Degree, a Misdemeanor in the state of Maryland, in violation of Md. Code, Crim. Law §§ 3-203. On or about November 5, 2021 the felony count was dismissed *nolle prosequi*. On or about January 28, 2022, the defendant was found guilty to the misdemeanor count of Second Degree Assault and was sentenced to five years of confinement with four years and 328 days of that sentence suspended. The victim in that case was the same victim in this case, ████████.

The 2022 conviction demonstrates the defendant's knowledge of the manner in which this current charged assault might be reported and his actions following it and this prior conviction and the defendant's knowledge of the mechanics of it bear on the manner in which this assault was committed and, finally, may also be used to definitively demonstrate a lack of accident.

For your reference, the initial incident report from September 3, 2021, is attached. Additionally, the case details from the Maryland Judiciary Case Search database for the case is also attached.

Sincerely,

Lindsey Halligan
United States Attorney

By: _____/s/_____
Allie McKnight
Special Assistant United States Attorney

| Date: 12/16/25 | Case: 1:25mj568 | Time: | 10:06-10:25 a.m.<br>10:55-12:28 p.m.<br>12:57-1:29 p.m.<br>1:49-1:57 p.m. |
|---|---|---|---|

**Judge:** William E. Fitzpatrick

**Tape/Courtroom:** FTR/500      **Court Reporter:** Tonia Harris

**Hearing:** Motion to Dismiss; Motion to Suppress; Bench Trial

**Eastern District of Virginia**
**Alexandria Division**
**United States of America**
**v.**
Robert Peck III

**Participants**
**USA**: Allie McKnight/Dahoud Askar

**Defense Counsel**: Lauren Rosen/Shannon Quill

**Court to appoint counsel:**      **Interpreter:**      ☐ Conflict

**Language**:

☐ Defendant did not appear      ☐ Warrant to be issued upon probable cause statement
☐ Government motion to continue hearing – GRANTED

       **Advisement**
         Rule 5      ☐ Due Process Protections Act

**Dismissal**
☐ Case dismissed with prejudice      ☐ Case dismissed without prejudice

**Plea**
☐ Consent to trial before a USMJ      ☐ Plea entered, Court accepts plea
☐ Plea of Guilty to Count(s):      ☐ Dismissal of Count(s):

☐ Sentence:

☐ Order setting conditions of release
**Trial**
     Matter set for bench trial:      ☐ Matter set for jury trial
☐ Motions due :      ☐ Responses due:
☒ Govt adduced evidence and rests      ☒ Trial held and completed
☐ Not Guilty of Count(s):      ☒ Guilty of Count(s): Count 1 & Count 2
☐ Dismissal of Count(s):      ☐ Deft advised of appeal rights
    Sentence:

**Future Proceedings**
Next hearing: Sentencing set for 1/6/26 @ 11:00 a.m. w/WEF

**Notes:** Deft argues Motion to Dismiss (ECF No. 30); USA objects-Motion Denied. Motion to Suppress (ECF No. 24) argued by Deft; USA objects; USA calls (4) witnesses; Cross-examination-Motion Denied. Parties moved forward with Bench Trial; Opening statement by USA; Gov't calls witnesses; Cross-examination of witnesses; USA Exhibits admitted: 1A-1E and 2A-2D. Gov't rests. Deft argues oral Rule 29 Motion; USA objects; Motion-Denied. Both Parties present closing arguments. Court Verdict: Guilty as to Count 1 & Count 2. Victim Statement given in open court. Joint request to continue for Sentencing-Granted; Parties agree-No PSR needed. Deft continued on the same conditions of Pretrial Services previously imposed.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

<table>
<tr><td>United States of America,</td><td>Case No. 1:25-MJ-568</td></tr>
<tr><td>v.</td><td>Hon. William E. Fitzpatrick</td></tr>
<tr><td>Robert Thomas Peck III,</td><td>Trial Date: December 16, 2025</td></tr>
<tr><td><em>Defendant</em>.</td><td>Sentencing: January 6, 2026</td></tr>
</table>

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby submits its position with respect to sentencing for the defendant, Robert Thomas Peck III (hereinafter "the defendant"). On December 16, 2025 the defendant was convicted in a bench trial before this court of one count of 18 U.S.C. § 113(a)(4) and one count of 18 U.S.C. § 113(a)(5). In consideration of all the factors under 18 U.S.C. § 3553(a) and for the reasons detailed below, the government recommends a prison sentence between **8-14 months**, within the range determined by the United States Sentencing Guidelines.

At the conclusion of trial the Court instructed the government to prepare a comprehensive detailing of the defendant's criminal history, similar to a presentence investigation report (PSR) prepared by the Probation Office. The government has attempted to create such a record and references it throughout as Government's Exhibit A.

### BACKGROUND

As established in the evidence presented at trial, on September 29, 2025, the defendant violently assaulted the victim, his wife, on a flight into Dulles International airport in front of a

1

toddler. He did this by grabbing her arm hard enough to bruise her. *See* Govt. Trial Ex. 1a – 1e, Govt. Trial Ex. 2a – 2d, and by biting down on her finger hard enough to break the skin and draw blood. *Id.* According to the testimony the victim gave at trial, the defendant threatened her multiple times by saying, "Do you want me to punch you in the face?" and "Do you want me to cut your throat?"

The government has provided significant discovery in this matter regarding past conduct of the defendant and included documentation of the defendant's significant history of violence and criminality. *See* Govt. Ex. A. The conduct underlying the charges in the criminal information were not an aberration but a patterned progression in the defendant's criminality.

## ANALYSIS

This Court must consult the Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when making a sentencing decision, though the Guidelines are not binding. *See United States v. Booker*, 543 U.S. 220 (2005). Nevertheless, the Supreme Court has directed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Under Section 3553(a), the court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, among other things, reflect the seriousness of the offense and adequately deter criminal conduct; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide

2

restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61.

### A. Sentencing Guidelines Calculation

The base offense level for the conduct at issue is a level 7 since the offense involved physical contact. *See* U.S.S.G. Section 2A2.3. The defendant's assault caused bodily injury, and that results in a 2 point sentencing enhancement. *Id*. at Section 2A2.3(b)(1)(A). With a Total Offense Level of 9 and a Criminal History Category of III, the defendant's guideline range is 8-14 months of confinement. The defendant objects to the two point enhancement for bodily injury, which is further discussed below.

#### 1. Bodily Injury Enhancement

The U.S. Sentencing Guidelines Manual defines "bodily injury" as "any significant injury; e.g., any injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B). The Fourth Circuit has explained that the finding of a bodily injury enhancement is a fact specific inquiry which affords the trial court significant deference. *See United States v. Brown*, 293 F. App'x 986, 988 (4th Cir. 2008) (finding the trial court did not err in applying the bodily injury enhancement where the only evidence of injuries were pain and redness one victim experienced and pain, redness, and a headache for multiple days that another victim experienced*); see also United States v. Isaacs*, 947 F.2d 112, 114 (4th Cir. 1991) (finding that redness and puffiness in face and ringing in ear that lasted for hours after the defendant assaulted the victim constituted bodily injury);

The government established at trial that the defendant bit the victim's hand hard enough to draw blood. The government also called the EMT from the Metropolitan Washington Airport Authority who provided medical treatment on scene for the victim's injuries from the assault.

3

The victim testified that she sought additional medical attention in the days after the assault to check for damage to her hand. And the FBI agents explained that the video recorded her statement because her hand was in too much pain to hold a writing implement and provide a written statement. Her injuries, sustained while being grabbed and bitten by her larger husband were significant, they were painful, and the medical and law enforcement officers on the scene made clear they were obvious. They meet the definitions and purpose of the sentencing guideline enhancement and its application here would be appropriate.

### 2. Restitution

Under U.S.S.G. §5E1.2(a), "[t]he Court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Based on the conduct at issue, the guidelines would direct a fine between $2,000 and $20,000. U.S.S.G. §5E1.2(c)(3). A conviction under 18 U.S.C. § 113(a)(4) is a crime of violence requiring restitution under the Mandatory Victim Restitution Act. The Victim has expressed that she does not want the Court to grant restitution.

### B. Statutory Analysis and Recommendation

Based upon the § 3553(a) factors, the government recommends a within-Guidelines sentence of 8-14 months imprisonment. The government believes this sentence is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1) and (2).

"The overarching statutory charge for a sentencing court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law . . . provide just punishment[,] [and] afford adequate deterrence," among other factors outlined under Section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

To assist the Court in fashioning an appropriate sentence, the government highlights the following 3553(a) factors as relevant for the Court's consideration.

1. **The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense**

This assault occurred in front of the defendant's minor daughter. He not only bruised and bloodied the victim, he threatened her life in the process. We heard testimony during the trial that the defendant told the victim, in front of their child, "Do you want me to punch you in the face?" and "Do you want me to cut your throat?" This is a serious offense committed with some significant malice for which a sentence within the advisory guidelines is a necessary and just punishment.

2. **The History and Characteristics of the Defendant**

The defendant has a history of violent conduct against family members and those he shares a household with that must be considered in relation to the instant offense. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (citing 18 U.S.C. § 3661). The language of U.S.S.G. § 1B1.4 is sweeping in its scope. It is appropriate for the Court to consider the expansive nature of the defendant's misconduct while determining whether to impose a sentence within the advisory guidelines.

5

This is not the defendant's first assault, nor is it his first assault against this particular victim. In September of 2021, the Victim called the police after the defendant strangled her with an open hand around her throat yelling, "I should have killed you a long time ago." *See* Govt. Ex. B. The Victim began to have blurry vision and was struggling to breathe. *Id.* The defendant eventually let her go, but hit her arm and leg before throwing items and knocking them off shelves. *Id.* The Victim fled and managed to call the police. *Id.* During that incident, the Victim explained that she previously had a protective order against the defendant, and was given information to obtain another protective order. *Id.* The defendant was convicted of assault for this conduct and sentenced to 5 years with 4 years and 328 days suspended and 2 years of supervised probation.

Though the Victim, in a letter to the Court written the week prior to trial, called the acts by the Defendant on the day of the assault "mistakes," "poor judgment," and a "cry for help," the government disagrees. In fact, the government learned that the Victim was so injured by the assault that she sought medical treatment out of concern for nerve damage to her hand in the days that followed. For this to occur anywhere, but especially in a public setting like on an airplane with a toddler seated in between the defendant and the Victim, is both illegal and dangerous.

While the government had no prior knowledge of the Victim's letter, the letter itself is not surprising. Unfortunately, this is consistent with the pattern of domestic violence. Victims are often blamed by those who lack understanding of the manipulation, fear, and dependency at play in these abusive situations. The Victim's statements are not only not surprising but they also do not mean she, or the toddler in the house, are safe.

6

At the conclusion of the trial, the Court indicated that it wanted a detailed list of the defendant's criminal history. The government has prepared that list which includes all the defendant's known arrests and convictions and styled it similarly to a PSR. *See* Govt. Ex. A. As detailed in that document, the defendant has a history of other criminal convictions including a firearms charge, drug possession, failure to appear, contempt of court, and interfering with property rights of another. *See* Govt. Ex. A ¶¶ 19-24. Of note, the defendant was sentenced to 68 days of time served in connection with his firearms conviction from December 1, 2016. *See Id*. ¶ 22. The defendant has several other arrests for strangling a family member, theft, and a fugitive from justice charge that was dismissed upon extradition. *See Id*. ¶¶ 27-29, *See* Govt. Ex. C.

### 3. <u>The Need to Promote Respect for the Law and Deter the Defendant and Others from this Type of Criminal Conduct</u>

The need to specifically deter the defendant from committing similar crimes and to send a deterrence message to the general public is especially salient in this case. The defendant has displayed no remorse for his assault. In fact, this appears to be in keeping with a pattern of behavior discussed above. After the 2021 assault conviction, the defendant's five-year sentence was suspended such that he only served a total of 37 days. Given the defendant's conduct in the instant offense, it is apparent that a 37 day sentence was not sufficient to deter the defendant's assaultive conduct. Most importantly, the government's requested Guideline-range sentence is necessary to protect the public.

Finally, the requested sentence, within the Guidelines, will avoid unwarranted sentencing disparities. The Guidelines ensure that defendants who have committed similar crimes and have similar criminal records will receive roughly similar sentences, regardless of the district and courtroom in which they are sentenced. 18 U.S.C. § 3553(a)(6). *See Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive

7

empirical evidence derived from the review of thousands of individual sentencing decisions").

## CONCLUSION

For the foregoing reasons, the government recommends a sentence within the statutory guidelines. Such a sentence is sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

By: *Allie McKnight*

Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3800
Facsimile: (703) 299-3980
Email: Allie.McKnight@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2025, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

*Allie McKnight*

Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3800
Facsimile: (703) 299-3980
Email: Allie.McKnight@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT THOMAS PECK III,<br><br>     *Defendant*. | Case No. 1:25-MJ-568<br><br>The Honorable William E. Fitzpatrick |

## GOVERNMENT'S EXHIBIT A
## COMPUTATION OF OFFENSE AND CRIMINAL HISTORY

This record was created to comply with the order of the Court on December 16, 2025, to as comprehensively as possible document the defendant's prior criminal history for the purpose of sentence guidelines computation in a manner similar to those reports ordinarily created by the Probation Office.

**Prepared for:** The Honorable William E. Fitzpatrick
United States Magistrate Judge

**Sentence Date:** January 6, 2026 11:00AM

**Offense:**

**Count 1:**
Assault by Beating, Striking, or Wounding within the Special Aircraft Jurisdiction of the United States, in violation of Title 18 U.S.C. §113(a)(4) and Title 49 U.S.C. §46506(a)(1).

**Count 2:**
Simple Assault within the Special Aircraft Jurisdiction of the United States, in violation of Title 18 U.S.C. §113(a)(5) and Title 49 U.S.C. §46506(a)(1).

## A. THE OFFENSE

### Charge(s) and Conviction(s)

1. On September 29, 2025, a Criminal Complaint and supporting Affidavit were filed in the U.S. District Court for the Eastern District of Virginia, Alexandria Division, charging Robert Thomas Peck III (the defendant) with knowingly assaulting another person by striking, beating or wounding within the special aircraft and territorial jurisdiction of the United States, in violation of Title 18 U.S.C. § 113(a)(4). An arrest warrant was issued, and on September 29, 2025, the defendant was arrested and brought into the custody of the U.S. Marshals Service. The defendant was released pending trial under conditions on October 3, 2025.

2. On October 27, 2025, a Criminal Information was filed in the U.S. District Court for the Eastern District of Virginia, Alexandria Division, charging the defendant with one count of assault by beating, striking, or wounding within the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(4) and 49 U.S.C. § 46506(1) and one count of simple assault within the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506(1).

3. On December 16, 2025, the defendant appeared with counsel before the Honorable William E. Fitzpatrick, U.S. Magistrate Judge for the Eastern District of Virginia, in Alexandria Virginia for a bench trial. The defendant was found guilty of on both counts charged in the Criminal Information. Sentencing was continued until January 6, 2026. The defendant is continued on the same conditions of release that Pretrial Services previously imposed.

### Role in the Offense

4. There are no mitigating or aggravating adjustments for the defendant's role in this offense.

### Adjustment for Obstruction of Justice

5. The United States Attorney's Office does not have any information to suggest the defendant obstructed or attempted to impede the administration of justice.

### Offense Level Computation

6. The 2025 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

**Count 1: Assault by Beating, Striking, or Wounding within the Special Aircraft Jurisdiction of the United States.**

**Count 2: Simple Assault within the Special Aircraft Jurisdiction of the United States.**

7. **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 113(a)(4) and 18 U.S.C. § 113(a)(5) is USSG §2A2.3. The base offense level is 7 (the offense involved physical contact). USSG §2A2.3(a)(1).                                                  **7**

8. **Specific Offense Characteristics:** Enhancement for bodily injury is 2 (the victim sustained bodily injury). USSG §2A2.3(b)(1)(A).                          **2**

9. **Victim Related Adjustment:** None.                                                            **0**

10. **Adjustment for Role in Offense:** None.                                                   **0**

11. **Adjustment for Obstruction of Justice**: None.                                         **0**

12. **Adjusted Offense Level (Subtotal):**                                                          **9**

13. **Chapter Four Enhancement**: None.                                                             **0**

14. **Acceptance of Responsibility:** None.                                                        **0**

15. **Total Offense Level:**                                                                                **9**

## B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

16. None.

### Adult Criminal Conviction(s)

17. Pursuant to Sections 16.1-69.55 and 16.1-69.57 of the Code of Virginia, cases from the General District Courts of Virginia are purged and destroyed after 10 years.

18. Pursuant to Section 19.2-157, Code of Virginia, 1950 as amended, "...whenever a person charged with a criminal offense the penalty for which may be death or confinement in the state correctional facility or jail, including charges for revocation of suspension of imposition or execution of sentence or probation, appears before any court without being represented by counsel, the court shall inform him of his right to counsel. The accused shall be allowed a reasonable opportunity to employ counsel or, if appropriate, the statement of indigence provided for in 19.2-159 may be executed."

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 19. | 4/24/2012 (Age 19) | Interfere with property rights of another<br><br>General District Court Frederick County, VA Docket No.: GC1200589600, GC1200589700 | 7/24/2012: 12 months custody, 11 months suspended. | 4A1.2(e)(3) | 0 |

On 7/24/2012, an additional charge of breaking and entering was nolle prossed.

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 20. | 3/24/2013 (Age 20) | Contempt of Court<br><br>General District Court Petersburg, VA Docket No.: GC1201386001 | 5/08/2013 | 4A1.2(e)(3) | 0 |
| 21. | 6/19/2013 (Age 20) | Failure to Appear<br><br>General District Court Chesterfield Country, VA Docket No.: GT1301479201 | 10/02/2013 | 4A1.2(e)(3) | 0 |
| 22. | 9/25/2016 (Age 23) | Attempted Carry Concealed Weapon<br><br>Court of Common Pleas Franklin County, Ohio Docket No.: 16 CR 005541 | 12/01/2016: 68 days (time served) | 4A1.1(b) | 2 |

The defendant was charged by indictment for Carrying a Concealed Weapon but pled guilty to the lesser included offense of Attempt to Carry a Concealed Weapon.

The defendant was represented by counsel.

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 23. | 2/01/2020 (Age 27) | Possession of Marijuana<br><br>General District Court Frederick County, VA Docket No.: GC20001257-00 | 2/24/2020: License restriction for 6 months and fine of $250 | 4A1.1(c) | 1 |
| 24. | 10/06/2021 (Age 28) | Assault in the Second Degree<br><br>General District Court Montgomery County, MD | 1/28/2022: 5 years custody, 4 years and 328 days suspended. Credit time | 4A1.1(c) | 1 |

Docket No.: 6D00417269        served of 37 days. 2
years supervised
probation.

On 11/05/2021, an additional charge of Assault in the First Degree was nolle prossed.

The victim is the same victim as the instant offense.

The defendant was represented by counsel.

The incident report from Officer Barker on September 3, 2021 states:

"V1 stated that her boyfriend, who is a co-inhabitant in the referenced apartment, woke up at around 0600 hours. Her boyfriend, later identified as Mr. Robert Thomas Peck III of the referenced address; who also has an address of … stated that he wanted to have sex before V1 went to school. V1 stated that they began to have sexual intercourse and Mr. Peck III asked to change positions. V1 stated that Mr. Peck III began to become angry when V1 appeared to not be interested in changing positions. V1 stated that an argument ensued and Mr. Peck III began accusing V1 of cheating on him.

"V1 stated that Mr. Peck III got up and began pacing the room and would not leave while she attempted to get ready for class. V1 stated she attempted to deescalate the situation and calm him down. During this time, V1 stated that Mr. Peck III pushed her using both hands on her chest on to the couch. V1 stated that she got up and began to run towards the kitchen when he pushed her a third time on to the bed. While on the bed, V1 stated that Mr. Peck III got on top of her and began to strangle her with an open hand around her throat and stated, "I should have killed you a long time ago!" V1 stated that she began to have blurry vision and was struggling to breath when Mr. Peck III let her go. V1 stated that after he let her go, he open hand hit her arm and leg.

"V1 stated that after Mr. Peck III let go of her neck, Mr. Peck III got up off the bed and began knocking items off the shelf and throwing items around the kitchen. While Mr. Peck III was knocking things around the apartment, V1 fled the apartment and called the police.

"The writer arrived on scene and visually saw red abrasions on each side of V1's neck as well as black marks on her right shoulder and right leg that resembled a shoe print from being kicked."

...

At trial the defendant was convicted of assault in the second degree. He was sentenced to 5 years in custody, 4 years and 328 days suspended, and credited with time served of 37 days.

As part of the defendant's 2-year period of probation, he was ordered to have no hostile contact with V1 and pay a fine of $157.50. He was ordered to attend and complete domestic violence counseling. He was ordered to submit to evaluation and attend and successfully complete mental health treatment as directed by his supervising agent. He was informed of firearm requirements and ordered to transfer any firearm.

### Criminal History Computation

25. The criminal convictions above result in a subtotal criminal history score of four.

26. The total criminal history score is four. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of four establishes a criminal history category of III.

### Other Arrests

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 27. | 10/29/2018 (Age 25) | Theft; Docket No.: Not available. | University of Maryland Police Department College Park, MD | 12/10/2018: Nolle Prossed. |
| 28. | 7/01/2020 (Age 27) | Strangle Another Causing Wounding or Injury; Docket No.: GC20002375-00 | General District Court Clarke County, VA | 12/02/2020: Not Guilty. |

The alleged victim was the defendant's aunt.

The witness statement from the alleged victim on July 1, 2020 states:

"Trae came into my parents home angry cussing and yelling. I was in the bathroom and came out to ask him to leave. He got in my face and was yelling and turned toward my mom- and I pushed him onto the couch and he got up and charged me picking me up and body slammed me to the floor where I hit my head. He was walking back toward my mom and I got up and kept asking him to leave. He kept yelling and cussing and saying he wasn't leaving. I tried to walk back to my room to get my phone and he came up to me in the hall way and grabbed my neck and slammed me against the wall. He still refused to leave but finally he did. But came back and was yelling at my pop and son and threatening my son."

...

The defendant told Officer Putnam that he and his aunt had been arguing. He said there was some pushing and a lot of cussing and yelling.

Law enforcement identified "Trae" as Robert Thomas Peck III.

Photographs of alleged victim's injuries were taken.

| 29. | 9/29/2021 (Age 28) | Fugitive from Justice  Docket No.: GC21003094-00 | General District Court  Winchester County, VA | 9/30/2021: Extradited and dismissed. |

## C. SENTENCING OPTIONS

30. **TOTAL OFFENSE LEVEL:**            9

31. **CRIMINAL HISTORY CATEGORY:**    III

|  | Guideline Provisions | Statutory Provisions (Class A Misdemeanor) |
|---|---|---|
| **CUSTODY:** | 8 – 14 months | Up to 1 year |
| **PROBATION:** | | |
| **SUPERVISED RELEASE:** | | Up to 1 year |
| **FINE:** | | $100,000 |
| **RESTITUTION:** | | |
| **SPECIAL ASSESSMENT** | $25 | $25 |
| **DENIAL OF FEDERAL BENEFITS** | | |

32. The government has laid out below the conditions it understands as mandatory after reviewing presentence investigation reports previously prepared by the Probation Office in other cases. The government also outlines special conditions that it recommends this Court consider in its sentencing condition, also based on prior cases.

## MANDATORY CONDITIONS

1) You must not commit another federal, state or local crime.

2) You must not unlawfully possess a controlled substance.

3)    (a) (**TSR ONLY**) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter, as determined by the court.

    (b) (**PROBATION ONLY**) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release on probation and at least two periodic drug tests thereafter, as determined by the court.

The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.

6) You must participate in an approved program for domestic violence.

7)    (a) (**TSR ONLY**) You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.

    (b) (**PROBATION ONLY**) You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.

8) (**PROBATION ONLY**) You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.

9) (**PROBATION ONLY**) If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.

10) (**PROBATION ONLY**) You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

## Standard Conditions of Supervision

Pursuant to 18 U.S.C. § § 3583(d)(1) and 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7), including the specific nature and circumstances of the instant offense, the history and characteristics of this defendant, and this defendant's need for treatment and rehabilitation services to reduce the likelihood of recidivism, the following Standard Conditions of Supervision are recommended:

1)    (a) (**TSR ONLY**) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment unless the probation officer instructs you to report to a different probation office or within a different time frame.

    (b) (**PROBATION ONLY**) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must answer truthfully the questions asked by your probation officer.

5) You must live at a place approved by the probation officer. If you plan to change where you

live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13) You must follow the instructions of the probation officer related to the conditions of supervision.

### Special Conditions of Supervision

Pursuant to 18 U.S.C. § § 3583(d)(1) and 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7), including the specific nature and circumstances of the instant offense, the history and characteristics of this defendant, this defendant's need for treatment and rehabilitation services to reduce the likelihood of recidivism, the following Special Conditions of Supervision are recommended:

1) If the defendant tests positive for a controlled substance or shows signs of alcohol abuse, the defendant must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.). Partial costs of this program shall be paid by the

defendant, as directed by the probation officer, subject to the Court's ultimate review and supervision. The defendant shall waive all rights of confidentiality regarding substance abuse treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

2) The defendant shall participate in a program approved by the United States Probation Office for mental health treatment and follow the rules and regulations of that program. Partial costs of this program shall be paid by the defendant, as directed by the probation officer subject to the Court's ultimate review and supervision. The defendant shall waive all rights of confidentiality regarding mental health treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

Respectfully submitted,

*Allie McKnight*
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2025, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.


*Allie McKnight*
Allie McKnight
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 236-3855
Email: Allie.McKnight@usdoj.gov

Date: 11/04/2025 16:09                                                                    Page: 1   of  7

| | | | |
|---|---|---|---|
| Report #: | 210034501 | Montgomery County Police | **\*210034501\*** |
| Report Date: | 09/03/2021   08:01 | Start Date:  09/03/2021   07:01 | 210034501 |
| | | End Date: | |

Summary:   DOMESTIC VIOLENCE- 1ST DEGREE ASSAULT (STRANGULATION)

Report Type: 0443 AGG  ASSLT BEAT/INJ SPOUSE/PARTNER        Case Status:  210034501 03 - Cleared by adult arrest

## Incident Location

Address: ███████████████

Intersection: ████████, MD ██1

Response Area: 3I1 - Reporting Area: 518 - Lat: ██████ - Long: ██████

Addl. Info:

## Incident Offenses

#1   Original Report   1303        ASSAULT - AGGRAVATED - FAMILY-STRONG-ARM
**Remarks:**

#1   Supp. #3   1303        ASSAULT - AGGRAVATED - FAMILY-STRONG-ARM
**Remarks:**

#1   Supp. #4   1303        ASSAULT - AGGRAVATED - FAMILY-STRONG-ARM
**Remarks:**

## Officers Involved

Assisting SEPARATED ████ MAGNELLI - MCPD - ██ - Original Report
Reporting PO3 ████ BARKER - MCPD - ██ - Original Report
Assisting PO1 ████ MCKENZIE - MCPD - ██ - Original Report
Approving SGT ████ CONLON - MCPD - ██ - Original Report
Assisting PO3 ████ CIOFFI - MCPD - ██ - Original Report
Supplemental Reporting PO3 ████ BARKER - MCPD - ██ - Supp. #2
Approving SGT ████ CONLON - MCPD - ██ - Supp. #2
Supplemental Reporting PO3 ████ PELLOT - MCPD - ██ - Supp. #3
Approving SGT ████ CHEUNG - MCPD - ██ - Supp. #3
Supplemental Reporting PO3 ████ PELLOT - MCPD - ██ - Supp. #4
Approving SGT ████ CHEUNG - MCPD - ██ - Supp. #4

## Incident People

**Victim**   ████████ ████████                                **\*101050173\***
Sex:   F     Race:  B     DOB: ██████    Age:  27     Original Report            101050173

Address: ████████ (Date of Info: 03/25/2021)
████████, MD ██

Cell Phone: (███) ██████ (Phone Date of Info: 03/25/2021)

Injuries:        Apparent minor injury

**Arrestee**   **ROBERT THOMAS PECK III**                    **\*101083927\***
Sex:   M     Race:  B     DOB: ██████    Age:  28     Supp. #4            101083927

Address: ████████ (Date of Info: 09/03/2021)
SILVER SPRING, MD ██

Cell Phone: (███) ██████ (Phone Date of Info: 09/03/2021)

                                                                 Weapons:   Unarmed

Arrest Date:  09/03/2021   Type:   Summoned/Cited        DCN:

## Associated LEA Cases

| LEA Case Number: | LEA Case Summary: |
|---|---|
| 210034501 | MCPD, Review Status: Cleared, Case Status: Cleared by adult arrest 09/24/2021, Workgroup: SVDVU |

**Assigned To:** ███████ PELLOT - MCPD PO3 - ID # ██████

Case 1:26-mj-00058-WEF Document 1 Filed 11/12/2012 Page 152 of 205 PageID# 153

## Incident Narrative

**Reporting PO3 ███ BARKER - MCPD, ID # ███          1     09/03/2021     08:01**

On 09/03/2021 at approximately 0700 hours, the writer was dispatched to ███████████████
███, Montgomery County, Maryland ███ for a domestic violence just occurred. Upon arrival, the writer met with
Ms. ██ ████████ of the referenced address who stated the following:

Ms. ████████ stated that her boyfriend, who is a co-inhabitant in the referenced apartment, woke up at around 0600
hours. Her boyfriend, later identified as Mr. Robert Thomas Peck III of the referenced address; who also has an address
of ███████████ Winchester, VA ███, stated that he wanted to have sex before Ms. ██████ went to school.
Ms. ████████ stated that they began to have sexual intercourse and Mr. Peck III asked to change positions. Ms.
████████ stated that Mr. Peck III began to become angry when Ms. ██████ appeared to not be interested in
changing positions. Ms. ████████ stated that an argument ensued and Mr. Peck III began accusing Ms. ██████
of cheating on him.

Ms. ████████ stated that Mr. Peck III got up and began pacing the room and would not leave while she attempted to
get ready for class. Ms. ████████ stated she attempted to deescalate the situation and calm him down. During this
time, Ms. ████████ stated that Mr. Peck III pushed her using both hands on her chest on to the couch. Ms.
████████ stated she attempted to get up and he again pushed her a second time on the couch. Ms. ████████ stated
that she got up and began to run towards the kitchen when he pushed her a third time on to the bed. While on the bed,
Ms. ████████ stated that Mr. Peck III got on top of her and began to strangle her with an open hand around her throat
and stated, " I should have killed you a long time ago!" Ms. ████████ stated that she began to have blurry vision and
was struggling to breath when Mr. Peck III let her go. Ms. ████████ stated that after he let her go, he open hand hit
her arm and leg.

Ms. ████████ stated that after Mr. Peck III let go of her neck, Mr. Peck III got up off the bed and began knocking
items off the shelf and throwing items around the kitchen. While Mr. Peck III was knocking things around the apartment,
Ms. ████████ fled the apartment and called the police.

The writer arrived on scene and visually saw red abrasions on each side of Ms. ████████'s neck as well as black
marks on her right shoulder and right leg that resembled a shoe print from being kicked.

The writer completed the MCP 536 Domestic Violence Lethality Screen which Ms. ████████ screened in to. Ms.
████████ called the Abused Persons Program Counselor in the presence of the writer. The writer also spoke to
Counselor Huei on the phone who advised Ms. ████████ would follow up with her following her day at school.

The writer completed the MCP 535 Domestic Violence Supplemental form. Both the MCP 535 and 536 are attached to
this report.

Ms. ████████ was provided the case number as well as resources to seek a protective order. Ms. ████████ stated
that she previously had a protective order against Mr. Peck III.

It should be noted that during the writer's investigation, the writer was advised through dispatch that Mr. Peck III had an
active warrant through Virginia that was non-extraditable.

The writer notified Det Jang from SVID- Domestic Violence who will receive a copy of the report and conduct a follow-
up.

Case 1:23-cr-00670-WDN-Wxcument 75-1 Filed 11/25/2012 Page 4 of 153 of 205D
Page ID # 154

The writer will apply for a DCS/Warrant for Mr. Peck III and a supplement report will follow.
Photographs of Ms. ████████'s injuries are attached.

BWCS FOOTAGE OF THIS EVENT IS AVAILABLE
ALL EVENTS OCCURRED IN MONTGOMERY COUNTY, MARYLAND

## Incident Narrative

**Supplemental Reporting PO3 ███ BARKER - MCPD, ID # ██          2          09/03/2021          10:25**

On 09/03/2021 the writer filed for the following charges via DCS/Warrant at the Silver Spring District Courthouse located at 8552 2nd Ave Silver Spring, Montgomery County, Maryland 20910:

CJIS *1_1420* First Degree Assault …did assault Ms. ███ ████████ in the first degree in violation of CR 3-202, contrary to the form of the act of the assembly in such case made and provided and against the peace, government and dignity of the state. [CR 3-202]

CJIS *2_2220* Second Degree Assault …did assault Ms. ████ ████████ in the second degree in violation of CR 3-203, contrary to the form of the act of the assembly in such case and provided against the peace, government and dignity of the state [CR 3-203].

SVID Detective Jang was notified of the filing of charges.

ALL EVENTS OCCURRED IN MONTGOMERY COUNTY, MARYLAND

Case 1:23-cr-00576-WGN-WDocument Filed 11cal0252021 Page Page 155 of 205D
Page 194 156

| Incident Narrative |
| --- |

**Supplemental Reporting PO3** ███████ **PELLOT - MCPD, ID #** ███     **3**     **09/07/2021**     **13:09**

This case will remain open.

    This case was forwarded to the Special Victims Investigations Division and assigned to the Investigating Officer (I/O). A detailed supplement will follow at the conclusion of the investigation.

| Incident Narrative |
|---|

**Supplemental Reporting PO3**  ███████  **PELLOT - MCPD, ID #**  ████      **4**          **09/10/2021**      **14:05**

This case will be closed by arrest.

This case was forwarded to the Special Victims Investigations Division and assigned to the Investigating Officer (I/O). The I/O contacted the victim ████ ████████ on September 9, 2021. ████ told the I/O that she does not want to pursue a criminal investigation. She said that she may consider a protective order but expressed that she is busy with work and school/ She told the I/O that she does not have a desire to pursue anything criminally and feels that going to jail is not the best thing for Robert Peck III.

When the I/O asked ████ about the Family Justice Center, she said that she already received information about the center. She was advised that this case will be closed, and all questions were answered. This case will be closed by arrest.

# Maryland Judiciary Case Search

## NOTICE: Available

# Case Detail

## Case Information

| | |
|---|---|
| Court System: | **District Court For Montgomery County - Criminal** |
| Location: | **Rockville** |
| Case Number: | **6D00417269** |
| Title: | **The State of Maryland vs PECK, ROBERT THOMAS III** |
| Case Type: | **Criminal** |
| Filing Date: | **09/03/2021** |
| Case Status: | **Closed** |
| Tracking Number(s): | **211001222784** |

## Other Reference Numbers

Central Complaint Number:: **210034501**

## Defendant Information

### Defendant

Name: **PECK, ROBERT THOMAS III**
Race: **Black** Sex: **Male** Height: **0'0"** Weight: **0**
HairColor: **EyeColor:**

████████████████████████████

### Attorney(s) for the Defendant

| | |
|---|---|
| Name: | **OFFICE OF THE PUBLIC DEFENDER** |
| Appearance Date: | **10/18/2021** |
| Address Line 1: | **191 E JEFFERSON STREET** |
| City: | **ROCKVILLE** State: **MD** Zip Code: **20850-0000** |

## Involved Parties Information

### Plaintiff

Name: **State of Maryland**

## Attorney(s) for the Plaintiff

| | |
|---|---|
| Name: | **State's Attorney - Montgomery County** |
| Appearance Date: | **10/25/2021** |
| Address Line 1: | **50 Maryland Avenue** |
| Address Line 2: | **5th Floor, North Tower** |
| City: | **ROCKVILLE** State: **MD** Zip Code: **20850** |

## Officer - Arresting/Complainant

| | |
|---|---|
| Name: | **BARKER, K** |
| AgencyName: | **MONTGOMERY COUNTY POLICE-3RD DISTRICT (SILVER SPRING)** |
| Address: | **1002 Milestone Drive** |
| City: | **SILVER SPRING** State: **MD** Zip Code: **20904** |

## Court Scheduling Information

| Event Type | Event Date | Event Time | Judge | Court Location | Court Room | Result |
|---|---|---|---|---|---|---|
| Hearing - Preliminary | 11/05/2021 | 08:30:00 | Oliver, Aileen | Montgomery District Court - Rockville | Courtroom 513 | Concluded / Held |
| Hearing - Bail/ Bond Review | 12/22/2021 | 13:00:00 | Bills, Amy | Montgomery District Court - Rockville | Courtroom 513 | Concluded / Held |
| Hearing | 01/28/2022 | 08:30:00 | Bills, Amy | Montgomery District Court - Rockville | Courtroom 612 | Concluded / Held |

## Charge and Disposition Information

Charge No: **2** CJIS Code: **1-1415** Statute Code: **CR.3.203**

Charge Description: **ASSAULT-SEC DEGREE** Charge Class: **Misdemeanor**

**Probable Cause:** **YES**

Offense Date From: **09/03/2021** To:

Agency Name: **MONTGOMERY COUNTY POLICE-3RD DISTRICT (SILVER SPRING)** Officer ID: 

*Disposition*

Plea: **Not Guilty** Plea Date: **01/28/2022** Judge: **Bills, Amy**

Disposition: **Guilty** Disposition Date: **01/28/2022** Judge: **AMJBI**

*Sentence*

Judge: **Bills, Amy**

*Jail*

| | |
|---|---|
| Life: | **false** |
| Death: | **false** |
| Start Date: | **01/28/2022** |
| Jail Term: | Yrs: **5** Mos: **0** Days: **0** Hours: **0** |
| Suspended Term: | Yrs: **4** Mos: **0** Days: **328** Hours: **0** |

*Probation:*

Start Date:

Supervised :    **true**    Yrs: **2**    Mos: **0**    Days: **0**    Hours: **0**

UnSupervised : **false**    Yrs:   **Mos:   Days:   Hours:**

## Warrants Information

| Type | Issue | Judge | Last Status | Status Date |
|------|-------|-------|-------------|-------------|
| **Arrest Warrant** | **09/03/2021** | | **Warrant Closed** | **10/07/2021** |

## Bond Setting Information

Bail Date:      **10/07/2021**

Bail Setting Type: **Hold in Default**

Bail Amount:     **$5,000.00**

Judge:

Bail Date:      **10/07/2021**

Bail Setting Type: **Hold Without Bond**

Bail Amount:     **$0.00**

Judge:

## Bail Bond Information

| Type | Bond Amount Posted | Bond Status Date | Bond Status |
|------|--------------------|--------------------|-------------|
| CASH | $500.00 | 03/08/2022 | Released |
| CASH | $500.00 | 11/04/2021 | Posted |

## Document Information

File Date:      **09/03/2021**

Document Name: **Statement of Charges**

File Date:      **10/07/2021**

Document Name: **Warrant/Writ Served**

File Date:      **10/07/2021**

Document Name: **Initial Appearance**

File Date:      **10/07/2021**

Document Name: **Committed**

File Date:      **10/07/2021**

Document Name: **Bail Review Held**

File Date: 10/07/2021
Document Name: **Committed**

---

File Date: 10/07/2021
Document Name: **Commitment Pending Hearing**

---

File Date: 10/07/2021
Document Name: **Bail Review Summary**

---

File Date: 10/07/2021
Document Name: **Bail Review Docket Sheet**

---

File Date: 11/04/2021
Document Name: **Bond Posted**

---

File Date: 11/05/2021
Document Name: **Release From Commitment**

---

File Date: 11/05/2021
Document Name: **KEYPOINT**

---

File Date: 11/05/2021
Document Name: **Trial Docket Sheet**

---

File Date: 11/05/2021
Document Name: **Defendant Trial Summary**

---

File Date: 11/05/2021
Document Name: **Felony Docket Sheet**

---

File Date: 11/05/2021
Document Name: **Trial / Hearing Postponement**

---

File Date: 11/17/2021
Document Name: **Address Change**

---

File Date: 12/10/2021
Document Name: **Motion**

---

File Date: **12/15/2021**
Document Name: **Order – Motion/Request/Petition Set for Hearing**

---

File Date: **01/06/2022**
Document Name: **Attorney Appearance Filed**

---

File Date: **01/06/2022**
Document Name: **Miscellaneous Correspondence Filed**

---

File Date: **01/06/2022**
Document Name: **Miscellaneous Correspondence Filed**

---

File Date: **01/27/2022**
Document Name: **Miscellaneous Correspondence Filed**

---

File Date: **01/28/2022**
Document Name: **KEYPOINT**

---

File Date: **01/28/2022**
Document Name: **KEYPOINT**

---

File Date: **01/28/2022**
Document Name: **KEYPOINT**

---

File Date: **01/28/2022**
Document Name: **KEYPOINT**

---

File Date: **01/28/2022**
Document Name: **Trial Docket Sheet**

---

File Date: **01/28/2022**
Document Name: **Defendant Trial Summary**

---

File Date: **01/28/2022**
Document Name: **Order – Probation/Supervision Docket**

---

File Date: **01/28/2022**
Document Name: **Commitment Record Issued**

---

File Date: **01/28/2022**

---

File Date: **01/28/2022**
Document Name: **Domestically Related**

---

File Date: **01/28/2022**
Document Name: **Notice of Disqualifying Crime Under CP 6-234**

---

File Date: **01/31/2022**
Document Name: **Transcript or Audio Recording Requested**

---

File Date: **02/04/2022**
Document Name: **Certificate of Recording**

---

File Date: **03/08/2022**
Document Name: **Request for Check**

---

File Date: **03/08/2022**
Document Name: **Bond Released**

---

File Date: **10/20/2025**
Document Name: **Retained Documents**

---

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland Rules, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

Copyright © 2025. Maryland Judiciary. All rights reserved.
Service Desk: (410) 260-1114

# INCIDENT REPORT
## COMMONWEALTH OF VIRGINIA
### UNAPPROVED

| 1-PAGE # | 2-ORI NUMBER |
|---|---|
| 1 | VA0220000 |

**3-INCIDENT NUMBER:** 202000555

**4-DATE(S) OF INCIDENT:** 07/01/2020  5-R

**7-TIME(S) OF INCIDENT:** 16:38 - 18:52

**8-DAY(S) OF INCIDENT:** Wednesday

**9-DISPATCHER**

**10-TIME RECEIVED:** 16:39
**11-TIME ARRIVED:** 16:42
**12-REPORTING AREA:** COUNTY

**13-SOLVABILITY FACTORS:**
- (1) Witness Named
- (2) Witness to Crime
- (3) Property Traceable
- (4) Unique M.O.
- (5) Suspect Named
- (6) Susp. Vehicle Identified
- (7) Significant Evidence

**14-INTERNAL INCIDENT STATUS:**
- (1) Unfounded
- (2) Cleared by Arrest
- (3) Pending
- (4) Inactive

**15-EXCEPTIONAL CLEARANCE STATUS:**
- (A) Death Of Offender
- (B) Prosecution Declined
- (C) Extradition Declined
- (D) Refused To Cooperate
- (E) Juvenile, No Custody
- ☒ (N) Not Applicable

**16-EXCEPT. CLEAR. DATE**

**17-TEMP.:**

**18-WEATHER: (Max. 1)**
(1) Clear (2) Cloudy (3) Rain (4) Snow (5) Other (6) Unk.

| 19-OFFENSE # | 20-UCR CODE | 21-OFFENSE STATUS: | 22-OFFENDER USED: | 23-Burglary (220) Location 14&19: | 24-FORCED ENTRY? |
|---|---|---|---|---|---|
| 1 | 13B | ☒ (C) Completed | ☒ (N) Not Applicable | # PREMISES ENTERED? | Yes / No |

**22-OFFENDER USED:** (A) Alcohol (C) Cptr. Equip. (D) Drugs

**25-OFFENSE NAME:** Simple Assault

**26-ADDRESS OF OFFENSE:** BOYCE, VA

**27-DIRECTION OF TRAVEL:** N S E W UNK.

**28-LOCATION CODE (Enter 1):** ☒ (20) Residence/Home

**29-WEAPON FORCE: (Max. 3)** ☒ (40) Personal Weapons (Hands, etc.)

**30-TYPE CRIMINAL ACTIVITY: (Max. 3)**

**31-TYPE SECURITY: (Max. 2)**

**32-ENTRY/EXIT: (Max. 2 entry, 2 exit)**

**33-HOW LEFT SCENE:** (enter 1)

**34-WHICH OFFENDERS ARE RELATED TO THIS OFFENSE?: (mark offender #s):** ☒ #1

**35-BIAS MOTIVATED CRIME:** 88 - None (No Bias)

| 36-VICTIM # | 37-NAME: | 38-SOC. SEC. NO. | 39-DATE OF BIRTH |
|---|---|---|---|
| 1 | Last, First, Middle | | /1975 |

**40-RESIDENT ADDRESS:** Street — City BOYCE, VA — State — 41-ZIP

**42-OCCUPATION**

**43-RESIDENT PHONE**

**44-EMPLOYMENT PHONE**

**45-SEX:** (M) Male ☒ (F) Female (U) Unknown

**46-ETHNIC:** (H) Hispanic (N) Nonhispanic ☒ (U) Unknown

**47-AGE:** Exact Age 44

**48-RACE:** (W) White (I) American Indian (U) Unknown ☒ (B) Black (A) Asian/Pacific Islander

**49-RES. STATUS:** ☒ (R) Resident (N) Nonresident (U) Unknown

**50-VICTIM TYPE:** ☒ (I) Individual

**51-VICTIM INJURY: (Max. 5)** ☒ (M) Apparent Minor Injury

**52-THIS VICTIM RELATED TO WHICH OFFENSES?** #1

**53-RELATIONSHIP OF THIS VICTIM TO OFFENDERS** (check relationship under appropriate offender number)

| 58-REPORT DATE | 59-DAY | 60-TIME (Military) | 61-REPORTING OFFICER | 62-CODE # | 63-APPROVING SUPERVISOR | 64-CODE # | 65-DATE APPROVED |
|---|---|---|---|---|---|---|---|
| 07/01/2020 | Wed | 16:38 | DEPUTY ERMERIN | | SERGEANT PUT | | 12/03/2020 |

# INCIDENT REPORT
### COMMONWEALTH OF VIRGINIA

| 71-PAGE # | 72-DATE | 73-INCIDENT NUMBER | 74-ORI# ("B") | 75-REPORTING OFFICER | | 76-CODE # | 77-VICTIM NAME |
|---|---|---|---|---|---|---|---|
| 2 | 07/01/2020 | 202000555 | VA0220000 | DEPUTY | ERMERINS | | |

**AD**

| 78-ARRESTEE # | 79-NAME | Last, | First, | Middle, | 80-AKA |
|---|---|---|---|---|---|
| 1 | | PECK III, ROBERT THOMAS | | | |

| 81-OFFENDER # | 82-RESIDENT ADDRESS | Street | City | State | 83-Zip | 84-DATE OF BIRTH |
|---|---|---|---|---|---|---|
| 1 | | WINCHESTER, VA | | | | 1992 |

| 85-RESIDENT PHONE | 86-EMPLOYMENT/SCHOOL PHONE | 87-DRIVER'S LICENSE | 88-DR. LI. STATE | 89-SSN |
|---|---|---|---|---|
| | | | | |

| 90-ARREST LOCATION | 91-OCCUPATION | 92-PLACE OF EMPLOYMENT | 93-ARREST TYPE: ☐ (O) On View Arrest |
|---|---|---|---|
| | | | ☐ (S) Summons/Cited ☐ (T) Taken Into Cust. |

**OFFENDER / ARRESTEE**

| 94-SEX: ■ (M) Male ☐ (F) Female ☐ (U) Unk. | 97-AGE: EXACT AGE 27 | 103-MULT. ARREST INDIC.: ☐ (C) Count Arrestee | ☐ (M) Multiple ☐ (N) N/A | 105-WEAPONS AT ARREST: (Max. 2) (Place "A" in blank if automatic) |
|---|---|---|---|---|
| 95-ETHNIC: ☐ (H) Hispanic ☐ (N) Nonhisp. ■ (U) Unk. | AGE RANGE: ___ to ___ | 104-DISPOSITION OF JUVENILE: | | ☐ (01) Unarmed ☐ (16) Illegal |
| 96-RACE ☐ (W) White ■ (B) Black ☐ (I) American Indian | ☐ (99) Over 98 Yrs. Old | ☐ (H) Handled within Department. | | ☐ (11) Firearm Cutting Instr. |
| ☐ (A) Asian/Pacific Islander ☐ (U) Unknown | ☐ (00) Unknown | ☐ (R) Referred outside Department | | ☐ (12) Handgun ☐ (13) Rifle ☐ (17) Club / |

| 98-RES. STATUS: ■ (R) Resident | 99-UCR ARR. CODE | 100-OFFENSE NAME | 101-ARREST DATE | 102-ARREST TRANSACT. | ☐ (14) Shotgun Blackjack / |
|---|---|---|---|---|---|
| ☐ (N) Nonres. ☐ (U) Unknown | | | | # | ☐ (15) Other Firearm Brass Kn. |

| 106-TYPE ARREST ACTIVITY:(Max. 3) | | 107-AR. DRUG TYPE: (Max. 3) | ☐ (E) Marijuana | ☐ (J) PCP | ☐ (N) Barbiturates |
|---|---|---|---|---|---|
| ☐ (B) Buying | ☐ (O) Operating/Promoting/Assisting | ☐ (A) "Crack" Cocaine | ☐ (F) Morphine | ☐ (K) Other Hallucinogens | ☐ (O) Other Depressants |
| ☐ (C) Cultivate/Manufacture/Publish | ☐ (P) Possessing/Concealing | ☐ (B) Cocaine | ☐ (G) Opium | ☐ (L) Amphetamines/ | ☐ (P) Other Drugs |
| ☐ (D) Distributing/Selling | ☐ (T) Transport/Transmit/Import | ☐ (C) Hashish | ☐ (H) Other Narcotics | Methamphetamines | ☐ (U) Unknown Type Drug |
| ☐ (E) Exploiting Children | ☐ (U) Using/Consuming | ☐ (D) Heroin | ☐ (I) LSD | ☐ (M) Other Stimulants | ☐ (X) Over 3 Drug Types |

| HEIGHT | WEIGHT | HANDEDNESS | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | GLASSES | SKIN TONE |
|---|---|---|---|---|---|---|---|---|---|
| 5'11" | 170 | | MED - Medium | BLK - Black | | SRT - Short | BRO - Brown | No | MBR - Medium |

| 78-ARRESTEE # | 79-NAME | Last, | First, | Middle, | 80-AKA |
|---|---|---|---|---|---|
| 1 | | PECK III, ROBERT THOMAS | | | |

| 81-OFFENDER # | 82-RESIDENT ADDRESS | Street | City | State | 83-Zip | 84-DATE OF BIRTH |
|---|---|---|---|---|---|---|
| | | WINCHESTER, VA | | | | 1992 |

| 85-RESIDENT PHONE | 86-EMPLOYMENT/SCHOOL PHONE | 87-DRIVER'S LICENSE | 88-DR. LI. STATE | 89-SSN |
|---|---|---|---|---|
| | | | | |

| 90-ARREST LOCATION | 91-OCCUPATION | 92-PLACE OF EMPLOYMENT | 93-ARREST TYPE: ☐ (O) On View Arrest |
|---|---|---|---|
| | | | ☐ (S) Summons/Cited ■ (T) Taken Into Cust. |

**OFFENDER / ARRESTEE**

| 94-SEX: ■ (M) Male ☐ (F) Female ☐ (U) Unk. | 97-AGE: EXACT AGE 27 | 103-MULT. ARREST INDIC.: ☐ (C) Count Arrestee | ☐ (M) Multiple ■ (N) N/A | 105-WEAPONS AT ARREST: (Max. 2) (Place "A" in blank if automatic) |
|---|---|---|---|---|
| 95-ETHNIC: ☐ (H) Hispanic ■ (N) Nonhisp. ☐ (U) Unk. | AGE RANGE: ___ to ___ | 104-DISPOSITION OF JUVENILE: | | ■ (01) Unarmed ☐ (16) Illegal |
| 96-RACE ☐ (W) White ■ (B) Black ☐ (I) American Indian | ☐ (99) Over 98 Yrs. Old | ☐ (H) Handled within Department. | | ☐ (11) Firearm Cutting Instr. |
| ☐ (A) Asian/Pacific Islander ☐ (U) Unknown | ☐ (00) Unknown | ☐ (R) Referred outside Department | | ☐ (12) Handgun ☐ (13) Rifle ☐ (17) Club / |

| 98-RES. STATUS: ■ (R) Resident | 99-UCR ARR. CODE | 100-OFFENSE NAME | 101-ARREST DATE | 102-ARREST TRANSACT. | ☐ (14) Shotgun Blackjack / |
|---|---|---|---|---|---|
| ☐ (N) Nonres. ☐ (U) Unknown | 13A | Aggravated Assault | 7/1/2020 | # 202000555 | ☐ (15) Other Firearm Brass Kn. |

| 106-TYPE ARREST ACTIVITY:(Max. 3) | | 107-AR. DRUG TYPE: (Max. 3) | ☐ (E) Marijuana | ☐ (J) PCP | ☐ (N) Barbiturates |
|---|---|---|---|---|---|
| ☐ (B) Buying | ☐ (O) Operating/Promoting/Assisting | ☐ (A) "Crack" Cocaine | ☐ (F) Morphine | ☐ (K) Other Hallucinogens | ☐ (O) Other Depressants |
| ☐ (C) Cultivate/Manufacture/Publish | ☐ (P) Possessing/Concealing | ☐ (B) Cocaine | ☐ (G) Opium | ☐ (L) Amphetamines/ | ☐ (P) Other Drugs |
| ☐ (D) Distributing/Selling | ☐ (T) Transport/Transmit/Import | ☐ (C) Hashish | ☐ (H) Other Narcotics | Methamphetamines | ☐ (U) Unknown Type Drug |
| ☐ (E) Exploiting Children | ☐ (U) Using/Consuming | ☐ (D) Heroin | ☐ (I) LSD | ☐ (M) Other Stimulants | ☐ (X) Over 3 Drug Types |

| HEIGHT | WEIGHT | HANDEDNESS | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | GLASSES | SKIN TONE |
|---|---|---|---|---|---|---|---|---|---|
| 5'11" | 170 | | MED - Medium | BLK - Black | | SRT - Short | BRO - Brown | | MBR - Medium |

**SUBJECT DESCRIPTORS**

# INCIDENT REPORT
COMMONWEALTH OF VIRGINIA

## VEHICLE / VEHICLE LEAD

| 173-PAGE # | 174-DATE | 175-INCIDENT # | 176-REPORTING OFFICER | | 177-CODE # | 178-VICTIM NAME |
|---|---|---|---|---|---|---|
| 3 | 07/01/2020 | 202000555 | DEPUTY　　　ERMERINS | | | |

| 179-YEAR | 180-MAKE | 181-MODEL | 182-STYLE | 183-VIN | | | 184-LICENSE NUMBER | 185-STATE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 186-OWNER'S NAME | 187-ADDRESS |
|---|---|
| | |

| 188-TOP/SOLID COLOR | 189-SECOND COLOR | 190-DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Rel. To Owner | 192-SUSP. VEHICLE? ☐ Y ☐ N | 193-TELETYPE NUMBER |
|---|---|---|---|---|
| | | | | |

| 179-YEAR | 180-MAKE | 181-MODEL | 182-STYLE | 183-VIN | | | 184-LICENSE NUMBER | 185-STATE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 186-OWNER'S NAME | 187-ADDRESS |
|---|---|
| | |

| 188-TOP/SOLID COLOR | 189-SECOND COLOR | 190-DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Rel. To Owner | 192-SUSP. VEHICLE? ☐ Y ☐ N | 193-TELETYPE NUMBER |
|---|---|---|---|---|
| | | | | |

## PROPERTY

| 209-OF. CODE | 210-P. LOSS | 211-P. DES. | 212-QTY. | 213-DESCRIPTION (Include serial number, size, color, etc.) | 214-OWNER | 215-ITEM VALUE | 216-RECOV. DATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 217-TOTAL NUMBER VEHICLES STOLEN: | 218-TOTAL NUMBER VEHICLES RECOVERED: | 219-TOTAL VALUE STOLEN: | 220-TOTAL VALUE RECOVERED: |
|---|---|---|---|
| | | | |

## PROPERTY CODES

**210-PROPERTY LOSS:** (1) None (2) Burned (3) Counterfeited/Forged (4) Damaged/Destroyed/Vandalized (5) Recovered (6) Seized (7) Stolen, etc. (8) Unk.

**211-PROPERTY DESCRIPTION:**

| | | | |
|---|---|---|---|
| (01) Aircraft | (11) Drug/Narc. Equipment | (21) Negotiable Instruments | (32) Structures-Industrial/Manufacture |
| (02) Alcohol | (12) Farm Equipment | (22) Nonnegotiable Instruments | (33) Structures-Public/Community |
| (03) Automobiles | (13) Firearms | (23) Office-Type Equipment | (34) Structures-Storage |
| (04) Bicycles | (14) Gambling Equipment | (24) Other Motor Vehicles | (35) Structures-Other |
| (05) Buses | (15) Heavy Equipment-Construction/Industry | (25) Purses/Handbags/Wallets | (36) Tools-Power/Hand |
| (06) Cloths/Furs | (16) Household Goods | (26) Radios/TVs/VCRs | (37) Trucks |
| (07) Computer Hardware/Software | (17) Jewelry/Precious Metals | (27) Recordings-Audio/Visual | (38) Vehicle Parts/Accessories |
| (08) Consumable Goods | (18) Livestock | (28) Recreational Vehicles | (39) Watercraft |
| (09) Credit Cards/Debit Cards | (19) Merchandise | (29) Structures-Single Occupancy | (77) Other |
| (10) Drugs/Narcotics | (20) Money | (30) Structures-Other Dwellings | (88) Pending Inventory (of Property) |
| | | (31) Structures-Commercial/Business | (99) Special Category |

## DRUG INFO.

| 222-DRUG TYPE | 223-WHOLE DRUG QUANTITY | 224-FRACTIONAL DRUG QUANTITY | 225-DRUG MEASUREMENT | 225-TYPE DRUG MEASUREMENT: |
|---|---|---|---|---|
| | | | | **WEIGHT** (GM) Gram (KG) Kilogram (OZ) Ounce (LB) Pound |
| | | | | **CAPACITY** (ML) Milliliter (LT) Liter (FO) Fluid Ounce (GL) Gallon |
| | | | | **UNITS** (DU) Dosage Unit (Pills, etc.) (NP) Number of Plants |

**222-DRUG TYPE:**

| | | | |
|---|---|---|---|
| (A) "Crack" Cocaine | (F) Morphine | (K) Other Hallucinogens | (O) Other Depressants |
| (B) Cocaine | (G) Opium | (L) Amphetamines/Methamphetamines | (P) Other Drugs |
| (C) Hashish | (H) Other Narcotics | (M) Other Stimulants | (U) Unknown Type Drug |
| (D) Heroin | (I) LSD | (N) Barbiturates | (X) Over 3 Drug Types |
| (E) Marijuana | (J) PSP | | |

## COMPLNT.

| NAME: Last, | First, | Middle | SEX: ☐ (M) Male ☐ (F) Female ☐ (U) Unk. | AGE: _____ ☐ (00) Unknown | RACE: ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown |
|---|---|---|---|---|---|
| RESIDENT ADDRESS: Street | City | State　Zip | RESIDENT PHONE | EMPLOY'T. PHONE | |

# CONFIDENTIAL SUPPLEMENT

| 226-PAGE # | 227-DATE | 228-INCIDENT NUMBER | 229-REPORTING OFFICER | | 230-CODE # | 231-VICTIM NAME |
|---|---|---|---|---|---|---|
| 4 | 07/01/2020 | 202000555 | DEPUTY ERMERINS | | | |

| 234–SCENE PROCESSED BY: | | 236-PRINTS FOUND? ☐ Yes ■ No | 238-EVIDENCE ☐ Yes |
|---|---|---|---|
| | | 237-PHOTOGRAPHED? ☐ Yes ■ No | OBTAINED? ■ No |

| 239-APPROVING SUPERVISOR | 240-CODE # | 241-DATE APPROVED |
|---|---|---|
| SERGEANT PUTNAM | | 12/03/2020 |

| | 243-NAME: Last, | First, | Middle | 244-SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female | 245-AGE: ☐ (00) Unknown | 246-RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander |
|---|---|---|---|---|---|---|
| **W I T N E S S E S** | 247-RESIDENT ADDRESS: Street City State 248-Zip | | | 249-RESIDENT PHONE | 250-EMPL. PHONE | |
| | 243-NAME: Last, First, Middle | | | 244-SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female | 245-AGE: ☐ (00) Unknown | 246-RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander |
| | 247-RESIDENT ADDRESS: Street City State 248-Zip | | | 249-RESIDENT PHONE | 250-EMPL. PHONE | |

**NARRATIVE:**

CFS # 2020007399


07-01-2020


I, Dep Ermerins along with Dep Kennedy and Dep Mason responded to ▮▮▮▮ for a report of

an assault and strangulation. Upon arrival Dep Kennedy was speaking with Mr. Peck. I continued

to speak with Mr. Peck while Dep Kennedy went to speak with Mrs. ▮▮▮▮.


Mr. Peck told me that he and his aunt (▮▮▮▮ had been arguing. He said there was some

pushing and a lot of cussing and yelling.


I spoke with Dep Kennedy and he advised that Mrs. ▮▮▮▮ said she was picked up and body slammed

to the ground by Mr Peck. She also advised that Mr Peck put his hands on her neck and choked

her.


I took Mr Peck into custody, placed his wrists in handcuffs behind his back and double locked

them. I checked him for weapons and found none. I observed injuries to his hands that he claimed

were from a prior incident while trying to unlock his car. I did observe that one of the windows

to his car was broken and he was wearing a plastic ID bracelet from a hospital on his wrist. I

placed him in the right rear seat of my car and activated my in car camera system. The back seat

area was checked before and after.


Vehicle #1402, file #20200701165522-01-1402-20200701-16-55-23-00-6


Dep Kennedy collected a victim statement and photographs.


The victim statement has been added to this report.


I will add the photographs along with the other deputy's vehicle numbers and video information.


While at the jail a very small quantity of green leafy material was found in Mr Peck's wallet.

Mr. Peck admitted that it is marijuana. The weight of the material is 0.8g. Mr Peck was not

charged with this violation. The material was seized and placed into evidence for destruction,

and a destruction application has been submitted to Sgt. Herron.

## CONFIDENTIAL SUPPLEMENT NARRATIVE CONTINUATION

| 226-PAGE # | 227-DATE | 228-INCIDENT NUMBER | 229-REPORTING OFFICER | | 230-CODE # | 231-VICTIM NAME |
|---|---|---|---|---|---|---|
| 5 | 07/01/2020 | 202000555 | DEPUTY | ERMERINS | | |

**NARRATIVE:**

Mr Peck was cooperative with me during the entire incident.

The magistrate issued a warrant for felony strangulation released Mr Peck on a $7,500 unsecured bond.

# CONTINUATION PAGE

| 173-PAGE # | 174-DATE | 1754-INCIDENT # | 176-REPORTING OFFICER | 177-CODE # | 178-VICTIM NAME |
|---|---|---|---|---|---|
| 6 | 07/01/2020 | 202000555 | DEPUTY ERMERINS | | |

## Others Involved

### Reporting Person

| NAME: Last, | First, | Middle | SEX:<br>☐ (M) Male<br>■ (F) Female<br>☐ (U) Unk. | AGE: 44<br>☐ (00) Unknown | RACE:<br>☐ (W) White<br>■ (B) Black |
|---|---|---|---|---|---|
| **RESIDENT ADDRESS:** Street | City | State | Zip | | ☐ (I) American Indian |
| BOYCE, VA | | | RESIDENT PHONE | EMPLOYT. PHONE | ☐ (A) Asian/Pacific Islander<br>☐ (U) Unknown |

# Clarke General District Court

 

## Traffic/Criminal Case Details

### Case/Defendant Information

Clarke General District Cou ⌄

**Name Search**
**Case Number Search**
**Hearing Date Search**
**Service/Process Search**

**Name Search**
**Case Number Search**
**Hearing Date Search**
**Service/Process Search**

| | | |
|---|---|---|
| **Case Number :** GC20002375-00 | **Filed Date :** 07/02/2020 | **Locality :** COMMONWEALTH OF VA |
| **Name :** PECK, ROBERT THOMAS; III | **Status :** Released On Recognizance | **Defense Attorney :** PUBLIC DEFENDER |
| **Address :** WINCHESTER, VA | **AKA1 :** | **AKA2 :** |
| **Gender :** Male | **Race :** Black | **DOB :** /**** |

### Charge Information

| | | |
|---|---|---|
| **Charge :** STRANGLE:WOUND/ INJURY RESULTS | **Offense Tracking/ Processing # :** 043GM2000000796 | **Summons # :** |
| **Code Section :** 18.2-51.6 | **Case Type :** Felony | **Class :** 6 |
| **Offense Date :** 07/01/2020 | **Arrest Date :** 07/01/2020 | **Complainant :** ERMERINS, |
| **Amended Charge :** ASSAULT & BATTERY | **Amended Code :** 18.2-57(A) | **Amended Case Type :** Misdemeanor |

### Hearing Information

| Date | Time | Result | Hearing Type | Courtroom | Plea | Continuance Code |
|---|---|---|---|---|---|---|
| 12/02/2020 | 11:30 AM | Finalized | Adjudicatory | | Not Guilty | |
| 10/07/2020 | 08:45 AM | Continued | Review Progress | | | |
| 09/03/2020 | 11:30 AM | Continued | Preliminary | | | |
| 07/08/2020 | 11:30 AM | Continued | Arraignment | | | |

### Service/Process

### Disposition Information

| | | |
|---|---|---|
| **Final Disposition :** Not Guilty | | |
| **Sentence Time :** 00Months 000Days 00Hours | **Sentence Suspended Time :** 00Months 000Days 00Hours | |
| **Probation Type :** | **Probation Time :** 00Years 00Months 000Days | **Probation Starts :** |
| **Operator License Suspension Time :** 00Years 00Months 000Days | **Restriction Effective Date :** | |
| **Operator License Restriction Codes :** | | |

| Fine : | Costs : | Fine/Costs Due : |
|---|---|---|
| Fine/Costs Paid : | Fine/Costs Paid Date : | VASAP : |

Back to Search Results

Home | Virginia's Court System | Online Services | Case Status and Information | Court Administration | Directories | Forms | Judicial

Branch Agencies | Programs

Build #: 6.2.5.6

# WITNESS STATEMENT

**INCIDENT #**

FULL NAME: █████████████████

HOME ADDRESS: _____

PHONE #: ( ████████████████ SEX: **M** F  HEIGHT: ____"____ EYES: _____

DATE OF BIRTH: _____/_____/_____ WEIGHT: _____LBS  HAIR: _____

SOCIAL SECURITY# / DRIVER'S LICENSE #: _____

## INCIDENT INFORMATION

DATE: ____/____/20_____ TIME: ____:____ AM PM  **LOST:** _____ **STOLEN:** _____

LOCATION: _____

STATEMENT: Trae came into my parents home angry cussing and yelling. I was in the bathroom and came out to ask him to leave. He got in my face and was yelling and turned toward my mom. and I pushed him onto the couch and he got up and charged me picking me up and body slammed me to the floor where I hit my head. He was walking back toward my mom and I got up and kept asking him to leave. He kept yelling and cussing and saying he wasn't leaving. I tried to walk back to my room to get my phone and he came up to me in the hall way and grabbed my neck and slammed me against the wall. He still refused to leave but finally he did. But came back and was yelling at my pop & son ████ and threatening my son.

X ██████████████████     X 7/1/2020



## CLARKE COUNTY COMMONWEALTH'S ATTORNEY
## ASSAULT SUPPLEMENT

Agency : _____   Case # _____

Officer : _____   Date : _____

# SUSPECT SHEET

Name : _____   DOB : _____

Address : _____

|  | YES | NO |
|---|---|---|
| Suspect at scene? | ☐ | ☐ |
| Miranda Warning given? | ☐ | ☐ |
| Protective order on file? | ☐ | ☐ |
| Warrant on file? | ☐ | ☐ |
| Arrested? | ☐ | ☐ |
| If not, why? _____ | | |
| Any weapons used? | ☐ | ☐ |
| List weapons _____ | | |
| Prior convictions? | ☐ | ☐ |
| How many _____ | | |

### CIRCLE ALL THAT APPLY

Intoxicated :   YES     NO
Alcohol odor: strong, faint, other
Level of Intoxication _____
Eyes:          bloodshot, watery, glassy
Face:          flush, pale, other
Clothing:      soiled, disheveled, normal
Walked:        swaying, stumbling, falling
Stood:         swaying, falling, leaning
Demeanor:      cooperative, fighting, crying,
               abusive language
Speech :       slurred, incoherent, shouting

|  | YES | NO |
|---|---|---|
| **VISIBLE INJURIES** | ✓ | ☐ |
| **COMPLAINING OF INJURIES** | ☐ | ☐ |

Indicate location and type of injury on chart.
Describe injury below:

_____
_____
_____
_____
_____

**DOES SUSPECT LIVE WITH VICTIM:** _No_
**IF YES, FOR HOW LONG:** _____
**RELATIONSHIP TO VICTIM :** _Nephew_
**DOES SUSPECT AND VICTIM HAVE CHILDREN IN COMMON :** _____
**SUSPECT'S**
**STATEMENT:** _____
_____
_____
_____
_____
_____

**VICTIM'S NAME** ▓▓▓▓ ▓▓▓▓   **DOB :** ▓▓▓ - 1975

**ADDRESS:** ▓▓▓▓▓▓▓▓▓   *Boyce VA* ▓▓▓

|  | YES | NO |
|---|---|---|
| Interviewed? | ✓ | ☐ |
| Taken to hospital? | ☐ | ✓ |
| DV Brochure given? | ✓ | ☐ |
| Alcohol usage? | ☐ | ✓ |
| Relocated due to incident? | ☐ | ✓ |

Level of intoxication _____

New address : _____

|  | YES | NO |
|---|---|---|
| Visible injuries? | ✓ | ☐ |
| Complaining of injuries? | ☐ | ✓ |

Indicate location and type of injury on chart.
Describe injuries below:

Visable Marks around Neck

_____
_____
_____

I have pointed to the officer where I was struck on the diagram and on my person.  I have also advised the officer who struck me and the object used to strike me.
**I AFFIRM THE INFORMATION I HAVE GIVEN IS TRUE AND ACCURATE.**

X ▓▓▓▓▓▓▓▓▓   7/1/2020
Signature   Date

Were photographs taken?   Yes ✓   No ☐
(Photographs are to be logged as evidence)

## LIST ALL EVIDENCE COLLECTED AT THE SCENE :

_____
_____

## VICTIM'S VERBAL STATEMENT :

_____
_____
_____
_____
_____
_____

**VICTIM'S WRITTEN STATEMENT :**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



**Signature** _____        _____ **Date**


\* Original copy to be logged as evidence

## RISK ASSESMENT

|  | YES | NO |
|---|---|---|
| 1. Gun present in the home or accessible? | ☐ | ☑ |
| 2. Suspect has used/threatened to use weapons? | ☐ | ☑ |
| 3. Parties had threatened recent separation? | ☐ | ☑ |
| 4. Suspect abuses alcohol? | ☐ | ☑ |
| 5. Suspect uses illegal drugs / abuses legal drugs? — Suspected | ☐ | ☐ |
| 6. Increase in frequency or severity of violence? | ☐ | ☐ |
| 7. Suspect is violent outside the relationship? | ☑ | ☐ |
| 8. Suspect has destroyed cherished belongings? | ☐ | ☐ |
| 9. Suspect attempts to control victim's activities? | ☐ | ☐ |
| 10. Suspect has accused the victim of cheating? | ☐ | ☐ |
| 11. Suspect stated "If I can't have you no one can"? | ☐ | ☐ |
| 12. Suspect threatened to kill? | ☐ | ☑ |
| 13. Suspect contemplated / attempted suicide? | ☑ | ☐ |
| 14. Suspect has been violent towards children? | ☐ | ☑ |
| 15. Suspect has injured or killed pets? | ☐ | ☑ |
| 16. Has the suspect ever forced the victim to have sex? | ☐ | ☑ |
| 17. Victim is currently pregnant? | ☐ | ☑ |
| 18. Victim contemplated / attempted suicide? | ☐ | ☑ |
| 19. Strangulation or choking involved in this incident? | ☐ | ☑ |
| 20. Suspect has returned after being served a protective order? | ☑ | ☐ |
| 21. Suspect has a mental health history? — Suspected | ☐ | ☑ |
| 22. Victim has been seriously injured? | ☐ | ☐ |
| | ☐ | ☐ |

## ADDITIONAL STATEMENTS :

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**REVIEWED BY:** _____

**DATE :** _____

This form must be completed on all domestic assault calls in addition to an IBR. The original form, with the exception of the victim's written statement, will be maintained in Department Records. A copy shall be forwarded to the Commonwealth Attorney, and the reporting officer should keep a copy for his/her file until final court disposition.

## WITNESS INFORMATION

1. NAME:_____     DOB:_____

ADDRESS:_____

RELATIONSHIP TO VICTIM:___ _____

CONTACT NUMBER(S):_____

STATEMENT:_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

2. NAME:_____     DOB:_____

ADDRESS:_____

RELATIONSHIP TO VICTIM:___ _____

CONTACT NUMBER(S):_____ _____

STATEMENT:_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

## NUMBER OF CHILDREN IN THE HOUSEHOLD:_____

Was a child involved in the altercation? _____

Was a child injured? _____

List all child witnesses:       Name          Age          Relationship to defendant

_____

_____

_____

_____

_____





IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-mj-568 |
| | ) | |
| ROBERT PECK, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO SEAL, NOTICE OF FILING OF MOTION TO SEAL AND MEMORANDUM IN SUPPORT OF MOTION TO SEAL

Pursuant to Local Criminal Rule 49(E), the defendant, Robert Peck, through counsel, hereby moves this Court for leave to file portions of Defendant's Position on Sentencing and Exhibit 1 under seal and moves for an Order granting permission to seal those portions. A proposed Order is attached for the Court's consideration.[1]

I.      Item to be Sealed and Necessity for Sealing

A.      The defendant asks the Court to seal portions of Defendant's Position on Sentencing and Exhibit 1 to be filed with the Court on January 2, 2026.

B.      Sealing is necessary in order to safeguard the privacy and safety of the defendant in that the document contains extensive sensitive personal information pertaining to the defendant.  Counsel for the defendant has considered procedures other than sealing and none will suffice to protect this information from disclosure.

---

[1] The document to be sealed will be filed with the Court non-electronically pursuant to Local Criminal Rule 49(E) and the Electronic Case Filing Policies and Procedures (*see* p. 16).  Pursuant to the Local Rules, the sealed document is to be treated as sealed pending the outcome of this motion.

II.     Previous Court Decisions Which Concern Sealing Documents

A.     The Court has the inherent power to seal materials submitted to it.  *See United States v. Wuagneux*, 683 F.2d 1343, 1351 (11th Cir. 1982); *State of Arizona v. Maypenny*, 672 F.2d 761, 765 (9th Cir. 1982); *Times Mirror Company v. United States*, 873 F.2d 1210 (9th Cir. 1989); *see also Shea v. Gabriel*, 520 F.2d 879 (1st Cir. 1975); *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980); *In re Braughton*, 520 F.2d 765, 766 (9th Cir. 1975).  "The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests."  *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

B.     This Court previously has sealed documents in other cases dealing with the same or similar subject matters as the material sought to be sealed in this matter.

III.    Period of Time to Have the Document Under Seal

A.     The material to be filed under seal would need to remain sealed permanently or until unsealed by the Court.

*       *       *

Accordingly, the defendant respectfully requests that an Order be entered allowing portions of Defendant's Position on Sentencing and Exhibit 1 to be placed Under Seal.  An appropriate Order is attached.


Dated: January 2, 2026.

Respectfully submitted,


<u>/s/ Lauren E. S. Rosen</u>
Lauren E. S. Rosen
VA Bar No. 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:25-mj-568 |
| v. ) | |
| ) | |
| ROBERT PECK ) | |
| Defendant. ) | |

## SEALING ORDER

This matter having come before the Court on the defendant's Motion to Seal pursuant to Local Criminal Rule 49(E) and for good cause shown, it is hereby

ORDERED that the defendant's Motion to Seal is granted, and it is

FURTHER ORDERED that portions of Defendant's Position on Sentencing and Exhibit 1 filed provisionally under seal with the Court on January 2, 2026, shall be maintained under seal and will remain under seal until unsealed by order of the Court, and it is

FURTHER ORDERED that the Clerk provide a copy of this Order to counsel of record.

ENTERED this ____ day of January 2026.

_____

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA      )
                              )
v.                            )      No. 1:25-mj-568
                              )
ROBERT THOMAS PECK III        )
Defendant.                    )
_____     )

<u>POSITION ON SENTENCING</u>

Mr. Peck, through counsel, submits that a probationary sentence, which would allow him to maintain his employment, is a sentence that is sufficient, but not greater than necessary, to serve the goals of sentencing. In his early thirties, Mr. Peck has overcome a difficult childhood and ███████████████████████████████. He has full-time employment and owns a home with his wife, with whom he shares a three-year old daughter. A probationary sentence would allow ███████████████ ███████████████████████████████████████████████████████ *see* Exhibit 1 at 1, and continue to work to support his family, and pay the mortgage for the marital home, all while under the watchful eye of this Court. Probation is a form of punishment, and this Court can add additional punitive sanctions, such as intermittent confinement, to serve the goals of sentencing including just punishment, deterrence, and to promote respect for the law.

I.    *Despite early obstacles, Mr. Peck graduated from high school,* █████████
██████████████████████████████████████████

Born in the early 1990s in Winchester, Virginia, Mr. Peck was raised by his
mother Bess. Only twenty-one years old when she had her only son, Bess never
married Mr. Peck's father, with whom he shares a name. A decade older, Mr. Peck's
father separated from his mother before his birth. His father was absent for a
majority of Mr. Peck's childhood, in part because he was serving a federal sentence
for a drug conspiracy conviction. *See* 99-cr-30037-JCT-3 WDVA.  Mr. Peck's first
memory of his father was a meeting when he was twelve or thirteen years old. By
then Mr. Peck had already spent most of his childhood feeling the effects of an absent
father.

Mr. Peck was raised by his mother, along with his three sisters, one older and
two younger.  His mother, who raised four children on her own, worked as a nurse
and often worked overnight shifts. As a result, the kids were often shuffled around to
relatives' houses. Mr. Peck did not always have a bed to sleep in. And even though
his mother always worked, she could not always feed her children. At times extended
family stepped in to make sure that Mr. Peck and his three sisters were fed.  Growing
up with a single mother raising four children was hard. Mr. Peck recalls watching his
mother cry, struggling to provide for her family one his own. He remembers the hurt
he felt at school when other children spoke about their fathers. Mr. Peck's mother did
the best she could, trying to raise a boy by herself, but Mr. Peck needed a father-
figure. Mr. Peck recalls the first meeting with his father when he was a young
teenager. It was nice to know he had a father, but it was strange to meet a person of

such significance for the first time so late in life.  Mr. Peck knows the hardship attendant to an absent father, and he does not want to repeat the cycle for his own child.

Because of financial hardship, Mr. Peck moved often as a child and as a result attended three different elementary schools. Mr. Peck recalls the difficulty switching schools and having to make new friends as a young child. Mr. Peck graduated from elementary, middle, and high school. He was a good student, and excelled in sports, especially football. He was an all-state running back.  Mr. Peck lived with his mother until he was sixteen years old. At that time his mother met a new partner, got pregnant, and moved to Ohio.  Mr. Peck stayed behind and moved between family members' houses—his grandparents and cousins—so that he could finish school.

Mr. Peck was accepted to Virginia State University in Petersburgh, Virigina, where he was a member of the football team.  College was hard for Mr. Peck. He had no financial support from his family. So along with his commitment to the football team, he had to work. Whenever he could, Mr. Peck traveled to Middleburg, Virginia where he worked on Huntland Farm, a historic farm that used to be open to visitors,[1] as a groundskeeper and animal caretaker.   Though school was hard, Mr. Peck was determined to graduate.

███████████████████████████████████████

███████████████████████████████████████

---

[1] *See* Virginia Department of Historic Resources.  available at: https://www.dhr.virginia.gov/historic-registers/053-0487/

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██ ████████████████████████████████████████████████

████████████████████████████.

████████████████████████████████████████████

██████████████████████████████████. He reenrolled in college, from Columbus State University and later Laurel Ridge Community College where he got his certificate in environmental protection in 2017. Since then, he has worked steadily in the HVAC and refrigeration field. He has worked for a number of companies through the years, and for the past 6 months has worked for NexTech. Exhibit 1 at 2. His employer describes him as a hard worker with an excellent work ethic. *Id.* He makes anywhere from eight to ten thousand a month, and with that money is able to support his family, including paying the mortgage of the home he owns with his wife.

Mr. Peck and his wife have been together since 2018 and were married in 2023. They share a three-year-old daughter and bought a home together in 2024. The couple still owe a substantial amount on their mortgage. Mr. Peck's wife works as a nurse, often working overnight shifts. Mr. Peck cares for his daughter while his wife

works, and his salary is needed, along with his wife's income, to continue to pay the mortgage.

II.    *The Guidelines.*

The defense agrees that Mr. Peck is a criminal history category ("CHC") III, but objects to application of the bodily injury enhancement under section 2A2.3. Bodily injury is defined as "any significant injury, e.g. an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G 1B1.1 Note B.   While "significant injury" is not defined, the Guidelines commentary provides two non-exhaustive examples of qualifying injuries: "an injury that is painful and obvious," or an injury "of a type for which medical attention ordinarily would be sought." *United States v. Lewis*, 18 F.4th 743, 749 (4th Cir. 2021) (internal citations omitted). To apply the bodily injury enhancement, the government must show a significant injury and at the very least, "demonstrate that a victim's injuries lasted for a meaningful period and were more than wholly trivial." *Id*. at 750 (internal citations and quotations omitted).

While a "significant injury need not interfere completely with the injured person's life, it cannot be wholly trivial." *Id*. at 748-49.  To be significant, the injury "must last for some meaningful period[,]" and purely precautionary medical measures "are not the type of medical attention that the Guidelines contemplate as being sought after significant injuries." *Id* (internal citations and quotations omitted); *see also United States v. Harris*, 44 F.3d 1206, 1218 (3d Cir. 1995) ("If, as in *Lancaster*, medical attention would be sought by an ordinarily prudent person for the purpose of

diagnosis but no treatment ensues, that attention does not help to establish the significance of the injury.").

Here, the testimony at trial was that after the alleged bite on the plane, Mrs. Peck sought medical attention. There was no evidence or testimony that Mrs. Peck has suffered a long term disability.

In *Lewis*, where the record demonstrated that the defendant struck a store manager on the back of the head three times with a gun, had a red spot on the back of his head, felt dizzy, and was taken to the hospital, the Fourth Circuit held the application of the bodily injury enhancement was in error because "the Government presented nothing that would help the district court conclude that the manager received more-than-precautionary medical attention. Nor did it otherwise provide evidence of a necessary condition: that the manager's injuries lasted for a meaningful period." *Lewis*, 18 F.4th 743, 753 (4th Cir. 2021).

There is no evidence that Mrs. Peck suffered a long-term disability or that the medical attention sought was anything more than a precautionary measure. For this reason, the bodily injury enhancement should not apply. As a result, the total offense level is a seven, and with no further enhancements, and a CHC of III, the resulting guidelines yield a range of four to ten months.

III.    *A sentence of probation serves the goals of sentencing.*

Mr. Peck continues to work full-time, to support his family. Exhibit 1 at 2. He is attending church at the House of Jacob where he is seeking support and guidance.

████████████████████████████████████

███████████████████████████████

███████████████ Exhibit 1 at 1. Here, the defense submits that probationary

sentence is "sufficient, but not greater than necessary[.]" 18 U.S. Code § 3553.

 Mr. Peck is cognizant that this Court convicted him of serious offenses that

could incur lengthy prison terms. It is important to consider, however, that lengthy

periods of incarceration are not the only means to promote respect for the law and

provide just punishment. A sentence of probation (or supervised release), though also

rehabilitative, is a form of punishment. *See Gall v. United States*, 552 U.S. 38, 48

(2007) (while a custodial sentence is "qualitatively more severe" individuals "on

probation are nonetheless subject to several standard conditions that substantially

restrict their liberty."). So too is intermittent confinement and home detention. *See*

U.S.S.G. §5F1.2 (explaining home detention "may be imposed as a condition of

probation or supervised release, but only as a substitute for imprisonment."). Should

the Court deem a period of incarceration necessary, the defense requests that the

Court impose intermittent confinement—weekends—so that Mr. Peck can continue

to work and attend treatment.

███████████████████████████████

███████████████ *See* Exhibit 1 at 1.  Sending him to prison will work against this

goal. Specifically, in the context of treatment, social science has indicated that

"[c]ognitive behavioral skill-building is more effective in reducing future criminal

behavior than punishment even among persons at high-risk of reoffending." Patricia

Clark, Office of Justice Programs, National Institute of Justice, Preventing Future

Crime with Cognitive Behavioral Therapy, 265 Nat'l Instit. of Just. J 22 (2010). Nor are the goals of deterrence served by a lengthy prison term.

Deterrence is achieved by the credible threat of punishment, not by its severity. Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014). In fact, "studies repeatedly show that awareness of potentially severe sanctions does not produce less crime." *Id.* at 1203; *see also* National Institute of Justice, Five Things About Deterrence (Sept. 2014) ("The certainty of being caught is a vastly more powerful deterrent than the punishment."). In turn adding time to a prison sentence has "minimal or no benefit on whether offenders or potential offenders commit crimes." Brennan Center for Justice, *What Caused the Crime Decline?* (Feb. 2015).[2] Indeed, even among repeat offenders, like Mr. Peck, there is no evidence that tougher sanctions result in increased deterrence. *See* Daniel Mears & Joshua Cochran, *Progressively Tougher Sanctioning and Recidivism: Assessing the Effects of Different Types of Sanctions*, J. of Research in Crime & Delinquency 24 (2017) ("Put differently, little evidence exists that a 'recidivist sentencing premium' reduces recidivism.").

Finally, a sentence of eight to fourteen months incarceration, as sought by the government would create unwarranted sentencing disparities. For example, in *United States v. Hood*, 17-mj-423, where the defendant was convicted of five counts of simple assault of a child under sixteen, and one count of an assimilated charge of

---

[2] Available at: <u>What Caused the Crime Decline? | Brennan Center for Justice</u>

assault and battery of a family member, the court issued a one-year probationary sentence with a special condition to include thirty-days of intermittent confinement. ECF No. 30. There, the defendant in an intoxicated state yelled at his partner, and grabbed the steering wheel from her, causing a car crash, and resulting in concussions to two of his daughters. ECF No. 26. Even with a guideline range was from twelve to eighteen months, ECF No. 26, the court varied to a probationary sentence. ECF No. 30.

Another comparator is *United States v. Hernandez,* where the defendant was convicted of a felony, assault, resist, or impeding of a federal employee in violation of 18 U.S.C.111(b). 25-cr-92-AJT. With guidelines of six to twelve months, the defendant was sentenced to one year of probation. ECF No. 57. In that case it was alleged that the defendant struck a mailman in the head, chased him, and broke his equipment. ECF No. 51. The defendant had numerous prior convictions including weapons convictions and assault convictions, with a recent conviction for assault with significant bodily injury. *Id.* Even with an extensive criminal history, and prior and recent assault convictions, the Court issued a probationary sentence.

Finally, in *United States vs. Masidonio*, 22-mj-70, this Court imposed a four-month sentence, where the defendant was convicted of simple assault, after the defendant assaulted a six-year-old child breaking his arm. ECF No. 28. The child showed signs of previous abuse at the hands of the defendant and the defendant had prior convictions (including an assault conviction). ECF No. 33. In that case, the injury was significant, and the victim was a vulnerable underage child. The conduct

-9-

is more egregious than the conduct at issue in this case, and the Court imposed a sentence far below what the government seeks here.

Though no two cases are exactly alike, the comparators demonstrate that a sentence of eight to fourteen months would create unwarranted sentencing disparities.

IV.    *Conclusion.*

For all the above stated reasons, the defense submits that a sentence of probation with intermittent confinement as a special condition, if the Court deems incarceration necessary, is a sentence that is sufficient but not greater than necessary to serve the goals of sentencing.

Dated: January 2, 2026.

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

December 30, 2025

To whom it may concern,

██████████████████████████████████████

Thank you,

*Tracy Heironimus*

Tracy Heironimus

Office Manager



December 12, 2025

Your Honor,

I am writing this letter in support of Trae Peck III who is due to appear before you for simple assault, domestic violence. I have known Trae for several months and I would like to offer my personal perspective on their character and the positive impact they've had within my division.

I am Trae's direct supervisor with Nextech. I hired Trae several months ago, and since then he has been one of my division's top performers.

Throughout our relationship, I have found Trae to be hardworking and someone who possesses an excellent work ethic. He is a person I can count on and that I trust. In the time that I've known him, he has shown consistent dedication to Nextech and his family. Trae is always willing to take on extra work/shifts and constantly speaks of both his wife and daughter in our conversations. Trae truly loves and cares deeply for his family.

I believe that the circumstances leading to the current situation are not reflective of the person I know. The intent of this letter is not to mitigate the seriousness of Trae's charges. Since this incident Trae has taken it upon himself to actively engage in counseling for anger management and other interpersonal issues. He speaks of hoping both he and his wife will be able to attend these sessions together.

I have full faith that Trae will learn from this experience and continue to be a positive member of society. I respectfully ask that you take this information into account when considering your decision in this matter.

Thank you for your time and consideration.

Sincerely,
Chris Stallings
Nextech
Area Service Manager Div. 303

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:25-mj-568 |
| v. | ) | |
| | ) | |
| ROBERT PECK | ) | |
| Defendant. | ) | |

<u>SEALING ORDER</u>

This matter having come before the Court on the defendant's Motion to Seal

pursuant to Local Criminal Rule 49(E) and for good cause shown, it is hereby

ORDERED that the defendant's Motion to Seal is granted, and it is

FURTHER ORDERED that portions of Defendant's Position on Sentencing

and Exhibit 1 filed provisionally under seal with the Court on January 2, 2026, shall

be maintained under seal and will remain under seal until unsealed by order of the

Court, and it is

FURTHER ORDERED that the Clerk provide a copy of this Order to counsel

of record.

ENTERED this 2nd day of January 2026.

William E. Fitzpatrick
U. S. Magistrate Judge

| **Date:** 1/6/26 | **Case:** 1:25mj568 | **Time:** 11:14-11:52 a.m. |
|---|---|---|

**Judge:** William E. Fitzpatrick

**Tape/Courtroom:** FTR/500                    **Court Reporter:**

**Hearing:** Sentencing

<div align="center">

**Eastern District of Virginia**
**Alexandria Division**
**United States of America**
**v.**
Robert Thomas Peck III

</div>

**Participants**
**USA:** Allie McKnight

**Defense Counsel:** Lauren Rosen

**Court to appoint counsel:**                    **Interpreter:**                    ☐ Conflict

**Language:**

☐ Defendant did not appear          ☐ Warrant to be issued upon probable cause statement
☐ Government motion to continue hearing – GRANTED

**Advisement**
          Rule 5                ☐ Due Process Protections Act

**Dismissal**
☐ Case dismissed with prejudice          ☐ Case dismissed without prejudice

**Plea**
☐ Consent to trial before a USMJ          ☐ Plea entered, Court accepts plea
☐ Plea of Guilty to Count(s):          ☐ Dismissal of Count(s):

☐ Sentence:

☐ Order setting conditions of release
**Trial**
   Matter set for bench trial:          ☐ Matter set for jury trial
☐ Motions due :          ☐ Responses due:
   Govt adduced evidence and rests          ☒ Trial held and completed
☐ Not Guilty of Count(s):          ☒ Guilty of Count(s): Count 1 & Count 2
☐ Dismissal of Count(s):          ☐ Deft advised of appeal rights
 Sentence:  Deft sentenced to 45 days incarceration as to Count 1; and as to Count 2 (to run concurrent);
          followed by 1 year of supervised release with conditions (only as to Count 1).
**Future Proceedings**
Next hearing:

**Notes:**  Deft requests to self surrender in one week; USA does not object-DENIED; Deft remanded.

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Alexandria Division



1/7/2026

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| | ) | |
| v. | ) | Case Number: 1:25-MJ-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | USM Number: N/A |
| | ) | Lauren Rosen |
| | ) | Defendant's Attorney |
| | ) | |

The defendant was found guilty on Counts 1 & 2 after a plea of not guilty.

The defendant is adjudged guilty of:

| **Title and Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18 USC 113(a)(4) | Assault by beating, striking, or wounding | 9/29/2025 | 1 |
| 18 USC 113(a)(5) | Simple Assault | 9/29/2025 | 2 |

The defendant is sentenced as provided in pages 2 through 5 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

01/06/2026
Date of Imposition of Judgment

William E. Fitzpatrick
United States Magistrate Judge
Signature of Judge

William E. Fitzpatrick, United States Magistrate Judge
Name and Title of Judge

01/07/2026
Date

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
    Sheet 2 - Imprisonment

| | |
|---|---|
| **Case Number:** | 1:25-MJ-568 |
| **Defendant's Name:** | Robert Thomas Peck III |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
term of **FORTY FIVE (45) DAYS AS TO COUNT 1; AND 45 DAYS AS TO COUNT 2 (TO RUN CONCURRENT)**.

☐ The Court makes the following recommendations to the Bureau of Prisons:

    1.
    2.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on_____.

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on    .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to_____

at_____, with a certified copy of this Judgment.


_____

UNITED STATES MARSHAL

**By**      _____

DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 3

| Case Number: | 1:25-MJ-568 |
|---|---|
| Defendant's Name: | Robert Thomas Peck III |

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of ONE (1) YEAR **AS TO COUNT 1**.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter, as determined by the court.
4. ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
5. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
6. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
7. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
8. ☒ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions listed in this judgment as well as with any other special conditions listed in this judgment.

| Case Number: | 1:25-MJ-568 |
|---|---|
| Defendant's Name: | Robert Thomas Peck III |

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____     Date

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 3A

| Case Number: | 1:25-MJ-568 |
|---|---|
| Defendant's Name: | Robert Thomas Peck III |

## SPECIAL CONDITIONS OF SUPERVISION

1. The Defendant must enter and successfully complete Anger Management at the direction of the probation officer.

2. The Defendant shall undergo Mental Health Testing and Treatment at the direction of the probation officer.

3. The Defendant shall undergo Substance Abuse Testing and/or Treatment as required by the probation officer.

4. The Defendant may not possess a weapon or any other dangerous device.

5. The Defendant may not assault or threaten Ruth Peck (his wife) in any way.

6. The Defendant shall avoid all contact, directly or indirectly, with Ruth Peck (his wife) until the Court receives a Mental Health and Anger Management assessment as to the Defendant.

7. The Court imposes No Fine as to Counts 1 & 2. The Defendant shall pay a mandatory special assessment as to Count 1: $25.00 and Count 2: $10.00, to be paid within NINETY (90) DAYS.

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO CORRECT JUDGMENT

Robert T. Peck, through counsel, pursuant to Federal Rule of Criminal Procedure 35(a), moves the Court to correct the judgment issued on January 7, 2026, following his sentencing hearing on January 6, 2026. ECF No. 41 & 42. Specifically, Mr. Peck moves this Court to correct special condition 6 in the judgment that broadly bans "all contact, directly or indirectly, with Ruth Peck" until the Court receives an anger management and mental health assessment, as the written conditions fails to comport with the oral pronouncement of the sentence. ECF No. 42 at 5.

If a conflict exists between the judgment and the oral sentence, the oral pronouncement is controlling. *United States v. Morse*, 344 F.2d 27, 31 FN 1 (4th Cir. 1965). The proper remedy for such a conflict is for the "District Court to correct the written judgment so that it conforms with the sentencing court's oral pronouncements." *Id. (citing, Rakes v. United States*, 309 F.2d 686 (4th Cir. 1962), & Fed. R. Crim. P. 35(a)). Federal Rule of Criminal Procedure 35(a), that allows a

1

sentencing to Court to "correct a sentence that resulted from arithmetical, technical, or other clear error[,]" provides an avenue to rectify such an error.

At the sentencing hearing on January 6, 2026, this Court stated that Mr. Peck should not have any contact with Mrs. Peck "other than what has already been established through pretrial until the Court receives a mental health assessment from you or from probation. In other words, the manner in which you and Mrs. Peck are exchanging custody will stay in place..." Upon a query from counsel, after counsel noted that pretrial permitted the Peck's to communicate with a third party on the line, *see* ECF No 17, but that the Alexandria Detention Center ("ADC") did not permit 3-way calls, the Court granted Mr. Peck permission to speak directly with his wife while incarcerated at the ADC.

The judgement issued a day later does not comport with the oral pronouncement of sentence. *See* ECF No. 42. It broadly bans any direct or indirect contact with Mrs. Peck until the Court receives both a mental health evaluation and anger management assessment. *Id.* As pronounced by the Court at the sentencing hearing, the special condition should allow Mr. Peck to communicate with Mrs. Peck and exchange custody of their child consistent with the pretrial release conditions, ECF No. 17, with the caveat that Mr. Peck and Mrs. Peck are allowed to speak on the phone, directly, while he is incarcerated.

To that end, Mr. Peck moves this Court to correct the judgment and issue a new judgment modifying special condition 6 to conform with the Court's oral pronouncement of the special condition. *See United States v. Bullis,* 122 F.4th 107,

117 (4th Cir. 2024) ("a material discrepancy between written and orally articulated discretionary conditions of supervision violates a criminal defendant's right to be present for sentencing.").

Dated: January 15, 2026.

<div align="right">

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

</div>

IN THE UNITED STATES DISTRCT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-mj-568 |
| | ) | |
| ROBERT THOMAS PECK III | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>NOTICE OF APPEAL</u>

Comes now the defendant, Robert Peck, by counsel, pursuant to Fed. R. Crim.

P. 58(g)(2) and, following his conviction and sentencing on January 6, 2026, hereby

notes his appeal to a district judge of the Judgment entered on January 7, 2026. ECF

No. 42.


Dated: January 20, 2026.



Respectfully Submitted,

<u>/s/ Lauren E. S. Rosen</u>
Lauren E. S. Rosen
VA Bar No: 98540
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org